# EXHIBIT 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NEZ PERCE TRIBE<br><br>Plaintiff,<br><br>v.<br><br>DIRK KEMPTHORNE, JAMES E. CASON, and HENRY M. PAULSON<br><br>Defendant. | Civil Case No. 1:06-cv-00910-CFL<br><br>Judge Charles F. Lettow<br><br>**Electronically filed: July 8, 2008** |

**DEFENDANTS' RESPONSE IN SUPPORT OF ORDER TO SHOW CAUSE WHY CASE SHOULD BE DISMISSED PURSUANT TO 28 U.S.C. § 1500**

E. KENNETH STEGEBY
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Tel: (202) 616-4119
Fax: (202) 353-2021

Attorney for Defendant
UNITED STATES OF AMERICA

OF COUNSEL:

ANTHONY P. HOANG
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Tel: (202) 305-0241
Fax: (202) 353-2021

MICHAEL BIANCO
Office of the Solicitor
United States Department of the Interior
Washington, DC 20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. Because the District Court Complaint Was Filed on the Same Day as the CFC Complaint, § 1500 Deems it Simultaneously-Filed and, Thus, Pending. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1. *Brief history of § 1500's "pending" claim issue in the Federal Circuit and Supreme Court.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2. *The plain language of § 1500, the intent of § 1500, and relevant Federal Circuit decisions addressing same-day filings deem the District Court Complaint simultaneously-filed, and, therefore, pending at the time Plaintiff filed the CFC Complaint.* . . . . . . . . . . . . . . . 11

3. *A broad interpretation of the* Tecon *exception to include same-day filings would eviscerate the purpose of §1500* . . . . . . . . . . . . . . . . . . . . . 15

4. *Even if* Tecon *applied, Plaintiff has failed to meet its burden to establish jurisdiction.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B. Plaintiff's District Court and CFC Complaints are Based on the Same Operative Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C. Plaintiff's District Court and CFC Complaints Contain Overlapping Claims for Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1. *Both complaints indicate Plaintiff seeks an accounting.* . . . . . . . . . . . . . 24

2. *Both complaints indicate Plaintiff seeks monetary relief..* . . . . . . . . . . . 26

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305 (2008) . . . . . . . . . . . . . . . . 11, 13, 17, 21

*Breneman v. United States*, 57 Fed. Cl. 571 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*British Am. Tobacco Co. v. United States*, 89 Ct. Cl. 438 (1939)
*cert. denied*, 310 U.S. 627 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Christopher Village, L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . 27

*Corona Coal Co. v. United States*, 263 U.S. 537 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*d'Abrera v. United States*, 78 Fed. Cl. 51, 57 (Fed. Cl. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Eastern Shawnee Tribe*, 2008 U.S. Claims LEXIS 180, * 11-12, 2008 WL 2554942, *4
(Fed. Cl. Jun. 23, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20, 21, 23, 24, 25, 26

*Ervin & Assocs., Inc. v. United States*, 44 Fed. Cl. 646 (Fed. Cl. 1999) . . . . . . . . . . . . . . . . . . . . 2

*Gaubert v. United States*, 28 Fed. Cl. 597 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Harbuck v. United States*, 378 F.3d 1324 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hardwick Bros. Co. II v. United States*, 72 F.3d 883 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . 9, 15

*Hill v. United States*, 8 Cl. Ct. 382 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Hobbs v. United States*, 168 Ct. Cl. 646 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In re Markowitz*, 190 F.3d 455 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johns-Manville Corp. v. United States*, 855 F.2d 1556 (Fed. Cir. 1988) . . . . . . . . . . . . 19, 20, 27

*Keene Corp. v. United States*, 508 U.S. 200 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Klamath & Modoc Tribes v. United States*, 174 Ct. Cl. 483 (1966) . . . . . . . . . . . . . . . . . . . . . . 26

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) . . . . . . . . . . 19

*Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed. Cir. 1994) . . . . . . . . . . 9, 19, 20, 28

*Nat'l Cored Forgings Co. v. United States*, 132 Ct. Cl. 11, 132 F. Supp. 454 (Ct. Cl. 1955). . . . . . . . . . 12, 13

*Nat'l Union Fire Ins. Co. v. United States*, 19 Cl. Ct. 188 (1989) . . . . . . . . . . 10, 13

*Nez Perce Tribe v. Kempthorne*, 06-cv-02239-JR (D.D.C. Dec. 28, 2006) . . . . . . . . . . passim

*Northrop Corp. v. United States*, 27 Fed. Cl. 795 (1993) . . . . . . . . . . 28

*Pa. R.R. Co. v. United States*, 363 U.S. 202 (1960) . . . . . . . . . . 28

*Passamaquoddy Tribe v. United States*, 2008 U.S. Claims LEXIS 174, 2008 WL 2501195 (Fed. Cl. Jun. 19, 2008) . . . . . . . . . . 5, 11, 13, 15, 16, 21

*Preiser v. Newkirk*, 422 U.S. 395 (1975) . . . . . . . . . . 8

*Pueblo of Laguna v. United States*, 60 Fed. Cl. 133 (Fed. Cl. 2004) . . . . . . . . . . 27

*Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . 1, 3, 17, 18

*Salt River Pima-Maricopa Indian Community v. United* States, No. 06-943L, 2008 WL 1883170 (Fed. Cl. Apr. 24, 2008) . . . . . . . . . . 11, 13, 17

*Snyder v. United States*, 63 Fed. Cl. 762 (2005) . . . . . . . . . . 4

*Tecon Eng'rs, Inc. v. United States*, 170 Ct. Cl. 389, 343 F.2d 943 (1965) *cert. denied*, 382 U.S. 976 (1966) . . . . . . . . . . *passim*

*Tohono O'odham*, 79 Fed. Cl. 645 (Fed. Cl. 2007) . . . . . . . . . . 21, 24-26

*United States v. Brown*, 333 U.S. 18 (1948) . . . . . . . . . . 16

*United States v. County of Cook*, 170 F.3d 1084 (Fed. Cir. 1999) . . . . . . . . . . *passim*

*UNR Indus., Inc. v. United States*, 911 F.2d 654 (Fed. Cir. 1990) . . . . . . . . . . 1

*UNR Indus., Inc. v. United States*, 962 F.2d 1013 (Fed. Cir. 1992) (*en banc*) . . . . . . . . . . *passim*

**FEDERAL STATUTES AND RULES**

28 U.S.C. § 1446(d) . . . . . . . . . . . . 9

28 U.S.C. § 1500 . . . . . . . . . . . . *passim*

28 U.S.C. §1631 . . . . . . . . . . . . 10, 12-14

RCFC 12(b)(1) . . . . . . . . . . . . 4

RCFC 17(a) . . . . . . . . . . . . 4

**CONGRESSIONAL RECORDS AND OTHER REFERENCES**

81 Cong. Globe, 40th Cong., 2d Sess. 2769 (1868) . . . . . . . . . . . . 14-15

Brief of Respondent, *Keene Corp. v. United States*, No. 92-166 (U.S. Jan. 1993) . . . . . . . . . . . . 16

David Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 GEO. L.J. 578 (1967) . . . . . . . . . . . . 17

*Webster's Third New International Dictionary* 1934 (1986) . . . . . . . . . . . . 19

# I. INTRODUCTION

On December 28, 2006, Plaintiff filed complaints both in the U.S. District Court for the District of Columbia ("District Court") and in this Court. Complaint, *Nez Perce Tribe v. Kempthorne*, 06-cv-02239-JR (D.D.C. Dec. 28, 2006) (attached hereto as Exhibit 1); Complaint, *Nez Perce Tribe v. Kempthorne*, 06-cv-910-L (Fed. Cl. Dec. 28, 2006). 28 U.S.C. § 1500 divests this Court of jurisdiction if (1) a district court case is pending; (2) the two complaints allege the same operative facts; and (3) plaintiff seeks overlapping relief in both courts. *See*, *e.g.*, *United States v. County of Cook*, 170 F.3d 1084, 1091 (Fed. Cir. 1999); *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004). Plaintiff bears the burden of establishing that this Court has jurisdiction, *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988), and it has failed to carry that burden.

As explained in detail below, this case is jurisdictionally defective. Because Plaintiff filed both complaints on the same day, this Court should consider the District Court case pending for purposes of § 1500, and, on that basis, it should dismiss this case for lack fo jurisdiction. Even if the Court were to decide that the precise time (as opposed to merely the date) of filing mattered, however, Plaintiff has failed to prove that it filed its complaint in this Court first, as it must, in order to establish this Court's jurisdiction.

As for the second and third prongs under § 1500 analysis, the claims against Defendant[1/] in

---

[1/] We note that Plaintiff has named Kempthorne, Cason and Paulson as defendants. 28 U.S.C. § 1500 applies equally to lawsuits against agencies and officers of the United States, as well as lawsuits against the United States itself. *See UNR Indus., Inc. v. United States*, 911 F.2d 654, 660-61 (Fed. Cir. 1990) *overruled on other grounds by UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1018, 1021 (Fed. Cir. 1992) (*en banc*) ("*UNR*"). For that reason, § 1500 applies to named defendants.

this case and in the District Court case arise out of the same operative facts, and, in both cases, Plaintiff seeks overlapping relief in the form of an accounting and monetary damages. Specifically, Plaintiff seeks relief related to Defendant's management and administration of Plaintiff's trust funds and property (collectively, "trust assets").

Because all three prongs of § 1500 are satisfied, Plaintiff has not carried its burden to establish jurisdiction, and, therefore, § 1500 divests this Court of subject matter jurisdiction to consider Plaintiff's claims.

## II. RELEVANT FACTUAL BACKGROUND

On December 28, 2006, Plaintiff filed two complaints. It filed one complaint in the District Court against the Secretary of the Interior and the Secretary of the Treasury. *See* District Court Complaint, ¶¶ 71-75, 77-80, 82-86 (seeking declarative and injunctive relief).[2/] Also, on that same day, Plaintiff filed a complaint in this Court against the Secretary of the Interior and the Secretary of the Treasury, as well as the Assistant Secretary of the Interior for Indian Affairs and chief officer of the Bureau of Indian Affairs ("BIA"). *See* CFC Complaint, *Claim for Relief* ¶ 30 (requesting damages). On February 20, 2007, the parties filed a joint motion to stay this case to allow the parties to continue participating in the Tribal Trust Fund Settlement Project ("TTFSP"), and, on March 1, 2007, the Court ordered the case stayed until February 26, 2008. On February 26,

---

[2/] Plaintiff later filed an amended complaint. Amended Complaint, *Nez Perce Tribe v. Kempthorne*, No. 06-cv-02239-JR (D.D.C. April 2, 2007) (attached hereto as Exhibit 2). The amendments consist of (1) the addition of named plaintiffs; (2) a request that the Court order Defendant to preserve documents relevant to the lawsuit; and (3) the express exclusion of certain tribes from the purported class. The amended complaint is identical in substance to the original complaint and, therefore, it did not change the jurisdictional posture. *See Ervin & Assocs., Inc. v. United States*, 44 Fed. Cl. 646, 655 n.8 (Fed. Cl. 1999) (concluding that plaintiffs can cure defective *allegations* of jurisdiction with amended complaints, but cannot remedy *actual jurisdictional defects*).

2008, the parties requested that the Court continue the stay, but the Court instead ordered the parties to file a joint status report setting out their views as to whether, in light of § 1500, this case or the District Court case was filed first. On April 9, 2008, after a telephonic status conference with the parties, this Court issued an Order to Show Cause in which it directed Plaintiff "to show cause why the case should not be dismissed in light of the jurisdictional issue raised by 28 U.S.C. § 1500." *See* Dkt. 13. On May 23, 2008, Plaintiff filed a brief in opposition to the Order to Show Cause, arguing that § 1500 does not preclude the Court from exercising jurisdiction over its case. *See* Plaintiff's Opposition to Show Cause Order, Dkt. 15. Defendant hereby submits its response.

While the complaints may appear different at first blush, in substance, the two complaints , filed on the same day, seek overlapping relief based on the same operative facts. Therefore, § 1500 divests this Court of jurisdiction over the present suit, thereby promoting the significant purpose upon which § 1500 rests, namely "to 'force plaintiffs to choose between pursuing their claims in the Court of Claims or in another court' and to prevent the United States from having to litigate and defend against the same claim in both courts." *Harbuck*, 378 F.3d at 1328 (citing *Keene Corp. v. United States*, 508 U.S. 200, 206-07 (1993) and *UNR*, 962 F.2d at 1018, 1021).

## III. ARGUMENT

Determining whether this Court has subject matter jurisdiction to hear Plaintiff' claims is a question of law. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed. Cir. 2002) ("the existence of subject matter jurisdiction is a question of law."). Plaintiff must carry the burden of establishing jurisdiction. *Reynolds*, 846 F.2d at 748. Section 1500 provides as follows:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting

or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. This section divests this Court of jurisdiction over its claims if (1) a district court case is pending, (2) the two complaints allege the same facts, and (3) Plaintiff seeks overlapping relief in both courts. *Keene Corp.*, 508 U.S. at 208-09, 12*; Harbuck*, 378 F.3d at 1328-29. Congress enacted this provision to "force plaintiffs to choose between pursuing their claims in the Court of Claims or in another court" and to prevent the United States from having to litigate and defend against the same claim in both courts. *UNR*, 962 F.2d at 1018, 1021.

If § 1500 divests this Court of jurisdiction, the Court must dismiss the CFC Complaint. *See, e.g.*, *Snyder v. United States*, 63 Fed. Cl. 762 (2005) (granting government's motion to dismiss pursuant to RCFC 12(b)(1) for lack of jurisdiction under § 1500 and pursuant to RCFC 17(a)); *County of Cook*, 170 F.3d at 1091 (comparing claims in a district court complaint against claims in this Court's complaint claim-by-claim for purposes of § 1500). Plaintiff filed two complaints – both in this Court and in the District Court – on the same day. The relevant claims against the United States in both cases arise out of the same operative facts, and, in both cases, Plaintiff seeks overlapping relief from the United States in the form of a full and complete accounting and related monetary compensation.

Plaintiff argues that § 1500 "does not deprive this Court of jurisdiction over the Tribe's claims in this matter . . . ." Pl.'s Resp. to the Court's Apr. 9, 2008 Or. to Show Cause, at 7. Plaintiff's interpretation of 28 U.S.C. § 1500 is at odds with the long-recognized objective of § 1500 that the United States should not be compelled to defend two substantially related lawsuits in two different courts. Because Plaintiff filed the two cases on the same day, the District Court case should be deemed pending for purposes of § 1500. Moreover, on the face of the District Court

Complaint, Plaintiff seeks, among other things, a declaration that Defendant owes Plaintiff a fiduciary duty as a trustee; a declaration that it breached those duties by failing to provide a full, accurate, and timely accounting; a declaration that such failure caused Plaintiff irreparable injury; injunctive relief requiring Defendant to provide an accounting; and injunctive relief to force Defendant to correct Plaintiff's account balances. *See* District Court Complaint ¶¶ 1-2, 4-8, 26-58; *Counts I & II*; *Prayer for Relief*.

Similarly, on the face of the Court of Federal Claims Complaint ("CFC Complaint"), Plaintiff seeks, among other things, monetary damages for the government breaching its fiduciary duties to Plaintiff, including the duty to invest the trust funds to maximize returns. *See* CFC Complaint ¶¶ 7-28; *Claim for Relief*. Thus, Plaintiff's filing of the District Court case on the same day as the CFC Complaint divested this Court of jurisdiction under 28 U.S.C. § 1500, and the Court must therefore dismiss the present Complaint.

A. Because the District Court Complaint Was Filed on the Same Day as the CFC Complaint, § 1500 Deems it Simultaneously-Filed and, Thus, Pending.

Congress intended § 1500 to protect the United States from litigating the same claim in two courts. Thus, it would seem extraordinary for a plaintiff to frustrate Congress' intent merely by filing the district court case hours, minutes, or even seconds after filing the CFC Complaint. The plain language of § 1500 suggests nothing of that sort. Nevertheless, the Federal Circuit's jurisprudential turns have complicated the "pending claim" issue. *See Passamaquoddy Tribe v. United States*, 2008 U.S. Claims Lexis 174, *14-52, 2008 WL 2501195, #5-16 (Fed. Cl. Jun. 19, 2008) (describing the landmark precedents applying § 1500). As explained below, however, applicable precedents, § 1500's plain language, and § 1500's purpose indicate that complaints filed in this Court and another court on the same day are deemed to be "filed simultaneously" and

"pending" for purposes of § 1500.

*1. Brief history of § 1500's "pending" claim issue in the Federal Circuit and Supreme Court.*

The straightforward, plain language of § 1500 divests this Court of jurisdiction whenever a plaintiff attempts to maintain overlapping claims in this and another court, regardless of whether the plaintiff filed its complaint in the other court before, simultaneously, or after it filed its complaint in this Court. Indeed, the Court of Claims and the Supreme Court interpreted § 1500 in that very fashion by initially holding that § 1500 applied regardless of the order in which the plaintiff filed the complaints. *UNR*, 962 F.2d 1013, 1019 (Fed. Cir. 1992) (discussing the evolution of § 1500 jurisprudence); *see also Corona Coal Co. v. United States*, 263 U.S. 537, 540 (1924) (holding that the "words of [the prior version of § 1500] are plain, with nothing in the context to make their meaning doubtful; no room is left for construction, and we are not at liberty to add an exception in order to remove apparent hardship in particular cases . . . .").

In *Tecon Eng'rs, Inc. v. United States*, 170 Ct. Cl. 389, 343 F.2d 943 (1965) (*Tecon*), *cert. denied*, 382 U.S. 976 (1966), the Court of Claims created an exception to the plain language by holding that § 1500 would not divest its jurisdiction when a plaintiff filed a complaint in another court because that complaint was not "pending." *Id.* at 399. In *Tecon*, the plaintiff intentionally sought to divest the Court of Claims of jurisdiction (1) by filing its complaint in district court after two years and extensive pretrial proceedings in the Court of Claims and (2) by subsequently moving to dismiss its own complaint in the Court of Claims under § 1500. The Court of Claims rejected that attempt by holding that the subsequently-filed district court complaint did not divest it of jurisdiction. *Id.* at 401-402. In creating this limited exception, however, the *Tecon* court explicitly distinguished its holding from situations in which complaints were simultaneously filed. *Id.* at 400-

01. It acknowledged that § 1500 applied to those simultaneous, or "same day," filings, citing cases that involved both same-day filings and even one in which the action was filed one day *after* filing in the Court of Claims. *Id.* at 401 n.4.

In *UNR v. United States*, 962 F.2d 1013 (Fed. Cir. 1992), *aff'd sub nom. Keene Corp. v. United States*, 508 U.S. 200 (1993) (*Keene*), the Court of Appeals for the Federal Circuit, sitting *en banc*, thoroughly reviewed the legislative and judicial history of § 1500 and concluded that the judicial exception created in cases such as *Tecon* violated the plain language and the purpose of §1500. *Id.* at 1019-1024. In *UNR*, plaintiff had filed its complaint in the CFC after filing the same claims in district court. While the case in the CFC was pending, the district court dismissed its related case. The *UNR* plaintiff argued that § 1500 did not require the CFC to dismiss its complaint because the district court case was no longer pending. In other words, the *UNR* plaintiff argued the subsequent dismissals of the district court cases had revived the CFC's jurisdiction. The Federal Circuit rejected that argument. It held that, "if the same claim is pending in another court at the time the complaint is filed in the Claims Court, the Claims Court has no jurisdiction, regardless of when an objection is raised or acted on . . . ." 962 F.2d 1013 at 1021. In reaching this conclusion, the Federal Circuit applied the "time of filing" axiom "that jurisdiction is established, if at all, at the time suit is filed." *Id.* at 1022.

In an effort to rectify what it viewed as multiple errors in §1500 jurisprudence, the Federal Circuit went on to examine *Tecon* and *Tecon*'s conclusion that a subsequently-filed district court case did not divest the Claims Court of jurisdiction. *See UNR*, 962 F.2d at 1021 ("As can now be seen, section 1500 is rife with judicially created exceptions and rationalizations to the point that it no longer serves its purposes: to force an election of forum and to prevent simultaneous dual

litigation against the government."). The Federal Circuit rejected *Tecon*'s conclusion and held that "*Tecon* is overruled." 962 F.2d at 1023. The proper rule, according to the Federal Circuit, was simply this: "[I]f the same claim is filed in another court after the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction . . . ." *Id.* at 1021. In explaining its decision to overrule *Tecon*, the Federal Circuit reasoned that any other interpretation would ignore the plain language of §1500 and eviscerate its meaning:

> Section 1500 states that the "[Court of Federal Claims] shall not have jurisdiction of any claim . . . in respect to which the plaintiff . . . has pending in any other court *any suit or process*." A case filed subsequent to a Claims Court complaint is clearly a "pending . . . suit or process." Thus, by the command that the Claim Court "shall not have jurisdiction," upon the occurrence of the triggering event, the filing of suit in another court, the Claims Court is automatically divested of jurisdiction. Congress wanted not to dictate the order in which a claimant files suits in the Claims Court and another court on the same claim, but to discourage him from doing so altogether. Otherwise the purpose of saving the government from defending the same claim in two courts at the same time would be defeated.

*UNR*, 962 F.2d at 1022-23.[3/]

When the Supreme Court reviewed the *UNR* decision in *Keene*, it upheld the Federal

---

[3/] The Federal Circuit explained that this conclusion did not violate the "time of filing" rule that it had just applied in the case because that rule applies to subsequent actions of the parties and not to subsequent operations of law: "Of course, it is axiomatic that once jurisdiction attaches, subsequent activities by the parties do not affect it. [Citation omitted] But the result here [to dismiss the complaint for lack of jurisdiction] occurs by operation of law." *UNR*, 962 F.2d at 1022-23. In many other situations, subsequent events divest courts of jurisdiction. Those situations include (1) mootness, *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 97 (1993); (2) dissolution of a case or controversy, *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citations omitted)); (3) appeals, *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance–it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.") *superceded by statute on other grounds as recognized in In re Markowitz*, 190 F.3d 455, 460 n.2 (6th Cir. 1999); and (4) removal, 28 U.S.C. § 1446(d) (divesting state courts of jurisdiction when removing cases to federal district courts).

Circuit's decision that jurisdiction of the CFC should be examined based on the time of filing and that a subsequent dismissal of the District Court case could not re-create jurisdiction. *See Keene*, 508 U.S. at 207-08. Nevertheless, the Supreme Court explicitly refused to consider whether the *Tecon* exception still remained valid law: "We do not decide whether the statute also continues to bar a plaintiff from prosecuting a claim in the Court of Federal Claims while he has pending a later-filed suit in another court 'for or in respect to' the same claim. *Cf.* [*Tecon*]. As the dissenting judge [in *UNR*] noted below, this case does not present that issue." *Keene*, 508 U.S. at 209 n.4 (citations omitted).

After the Supreme Court's decision in *Keene*, the Federal Circuit determined that its decision to overrule *Tecon* and four other cases in *UNR* should be considered nonbinding *dicta* in view of the Supreme Court's dispensation of the case. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1549 (Fed. Cir. 1994) (*en banc*). Then, in *Hardwick Brothers Co. II v. United States*, 72 F.3d 883 (Fed. Cir. 1995) (hereinafter *Hardwick*, 378 F.3d 1324), a panel of the Federal Circuit reinstated *Tecon* without significant analysis: "*Tecon Engineers* remains good law and binding on this court." *Id.* at 886. However, neither *Loveladies* nor *Hardwick* addressed the precise parameters of when the *Tecon* exception should apply, and, certainly, neither addressed the issue of same-day filings.[4/]

More recently, in the context of claims filed on the same date by operation of law, the Federal Circuit did not apply the *Tecon* exception and instead held that the claims would be considered "simultaneously" filed and the district court action deemed pending for purposes of §1500. In *County of Cook,* 170 F.3d at 1091, the court addressed the effect of the transfer statute,

---

[4/] Although Defendant continues to maintain that *Tecon* is wrongly decided and should be overruled, this Court does not need to reach that issue in this case because, as explained below, the *Tecon* exception does not apply to same-day filings.

28 U.S.C. §1631, on its jurisdiction. In that case, the district court had transferred some, but not all, of the claims before it to the CFC. Under the transfer statute, the transferred claims are deemed to be filed "on the date upon which it was actually filed in or noticed for the court from which it is transferred." 28 U.S.C. § 1631. The Federal Circuit held that the transferred claims should be considered "filed simultaneously" with the district court claims and that the district court claims, therefore, must be considered "pending" for purposes of §1500. *County of Cook*, 170 F.3d at 1090-91. *See Harbuck*, 378 F.3d at 1328 (transferred claim "was deemed filed in the Court of Federal Claims *on the same day* on which she originally filed that claim as one of the three counts of her district court complaint.") (emphasis added).

Although the Federal Circuit and Court of Claims have never applied the *Tecon* exception to same-day filings, the CFC decisions have been inconsistent. In *Hill v. United States*, 8 Cl. Ct. 382, 385-86 (1985), the court held that §1500 applied to claims filed on the same day, describing the claims as being filed "simultaneous," and dismissed the case. Similarly, in *Nat'l Union Fire Ins. Co. v. United States*, 19 Cl. Ct. 188 (1989), the court applied §1500 to complaints filed on the same day and dismissed the case because it observed that no one argued that "simultaneous filing of both suits" indicated that the District Court claim was "pending" within the meaning of §1500. *See id.* at 189. Then, in *Breneman v. United States*, 57 Fed. Cl. 571, 576-77 (2003) (J. Hewitt), the first case to apply the *Tecon* exception to same-day filings, the court declined to follow *County of Cook* and used affidavits to determine the order of filing within the day. Two other recent decisions from the CFC, *Salt River Pima-Maricopa Indian Community v. United* States, No. 06-943L, 2008 WL 1883170, *1 (Fed. Cl. 2008) (J. Baskir) and *Ak-Chin Indian Community v. United States*, 80 Fed. Cl. 305 (2008) (J. Hewitt), similarly applied the *Tecon* exception and held evidentiary hearings

to determine the order of filing for complaints filed the same day.

Most recently, however, in *Passamaquoddy*, the court conducted a very thorough review of the history of §1500 jurisprudence and correctly concluded as a matter of law that § 1500 applies to same-day filings, regardless of the precise order in which the plaintiff filed the cases on that day. *See* 2008 U.S. Claims Lexis 174, *24-34, *51.[5] As discussed below, this Court should follow the precedent of the Federal Circuit, and the persuasive reasoning of the court in *Passamaquoddy*, and hold that same-day filings are pending for purposes of §1500.

2. *The plain language of § 1500, the intent of § 1500, and relevant Federal Circuit decisions addressing same-day filings deem the District Court Complaint simultaneously-filed, and, therefore, pending at the time that Plaintiff filed the CFC Complaint.*

As discussed above, every decision from the Federal Circuit or its predecessor that has applied §1500 in the context of same day filings has reached the same result: the district court case has been deemed pending for purposes of §1500. *See County of Cook*, 170 F.3d at 1091 ("the 'filing' of the same claim in the district court and the Court of Federal Claims by operation of 28 U.S.C. § 1631 deprives the latter court of jurisdiction pursuant to § 1500."); *Harbuck*, 378 F.3d at 1328 (finding that the claim transferred under 28 U.S.C. § 1631 "was deemed filed in the Court of Federal Claims *on the same day* on which she originally filed that claim as one of the three counts of her district court complaint.") (emphasis added). Two earlier Court of Claims decisions reached the same result, but without the same level of analysis found in the *County of Cook* case. *See British American Tobacco Co. v. United States*, 89 Ct. Cl. 438 (1939) (dismissing petition filed in the Court

[5] In the alternative, "the [*Passamaquoddy*] court did not find [the plaintiff's witness's] testimony to be either persuasive or credible," so that it concluded that Plaintiff had not carried its evidentiary burden of establishing jurisdiction by proving plaintiff filed in the CFC first. *Id.* at *80-81.

of Claims under the statutory predecessor to section 1500 where the plaintiff had filed the same claim seeking the same relief on the same day in federal district court), *cert. denied*, 310 U.S. 627 (1940); *Nat'l Cored Forgings Co. v. United States*, 132 Ct. Cl. 11, 132 F. Supp. 454 (Ct. Cl. 1955) (dismissing complaint filed in the Court of Claims under § 1500, where the plaintiff had filed a complaint asserting the same claims in federal district court on the same day).

These cases are entirely consistent with the decision in *Tecon*, which, by its own terms, does not apply to claims filed on the same day. In *Tecon*, the Court of Claims established the category of "simultaneous" filings and quickly distinguished the facts in the case before it from the facts of the cases in that category. It recognized that

> [t]he cases cited by plaintiffs (and the other relevant cases) *are not particularly germane to our resolution of the correct interpretation of Section 1500, with respect to the facts of this case.* For the most part the cases involve situations where suit was filed in another court prior to, or simultaneous with,[4] the filing of the petition in this court. . . .
>
> [4] [*British Am. Tobacco Co.* and *Nat'l Cored Forgings Co.*]; also see *Hobbs v. United States*, 168 [Ct.] Cl. 646 (1964), which suit in the Fifth Circuit was filed one day after the petition was filed in this court.

170 Ct. Cl. at 400-01 (footnote omitted) (emphasis added). From *Tecon*'s footnote four, one can see that *Tecon* did not intend its rule to apply to complaints filed on the same day. First, although plaintiffs in *British Am. Tobacco Co.* and *Nat'l Cored Forgings Co.* filed their cases on the same day, but not at the same instant, the *Tecon* court categorized those cases as "simultaneous[ly]" filed. 170 Ct. Cl. at 400. Second, although the plaintiff in *Hobbs* filed a related action in another court one day later, *Tecon* approvingly cited *Hobbs* in support of applying § 1500 to divest jurisdiction over simultaneously-filed complaints. Thus, *Tecon*'s own language does not extend the exception that it created to claims filed on the same day in the CFC and in another court.

In *Passamaquoddy*, 2008 U.S. Claims Lexis 174, at *14-52, the court properly analyzed *Tecon* and the related precedent and concluded that same day filings must be considered "pending," for purposes of §1500 analysis. *Passamaquoddy*, 2008 U.S. Claims Lexis 174, at *14-52. Unlike *Passamaquoddy*, the other recent CFC cases that have applied the *Tecon* exception to same-day filings did not address the limitations placed on the exception by *Tecon* itself or the other post-*Tecon* cases that applied §1500 to same-day filings.[6] Instead, the decisions opined that the *County of Cook* and *Harbuck* decisions only apply to situations in which the cases are deemed filed simultaneously as a matter of law (*i.e.*, pursuant to the transfer statute).[7] But neither the language of the transfer statute nor the rationale used by the Federal Circuit in *County of Cook* supports this dismissive treatment of the cases.

First, the transfer statute does <u>*not*</u> direct that the transferred claims be deemed filed "simultaneously" with the district claims. Instead, it provides that the transferred claims are deemed filed "<u>*on the date*</u> upon which it was actually filed in or noticed for the court from which it is transferred." 28 U.S.C. § 1631 (emphasis added). In *County of Cook*, the Federal Circuit properly

---

[6] *See Nat'l Union Fire Ins. Co.*, 19 Cl. Ct. at 189 ("There is no argument that simultaneous filing of both suits resulted in a claim 'pending' within the meaning of § 1500. Nor is this a case in which the plaintiff filed its action in district court after commencing suit in the Claims Court, as [in *Tecon*]."); *Hill*, 8 Cl. Ct. at 385-86 (finding that plaintiff declared that, by filing its complaints on the same day, it filed them "[s]imultaneous[ly]," so the district court complaint was pending)

[7] In *Breneman*, 57 Fed. Cl. at 577 (Fed. Cl. 2003), the court reasoned that *County of Cook* applies only to situations in which § 1631 deems cases filed literally simultaneously as a matter of law. *See* 57 Fed. Cl. at 577 ("at the *time* . . ."); *see also Salt River Pima-Maricopa Indian Cmty.*, 2008 WL 1883170, *4-5 (relying on *Breneman* and *Ak-Chin Indian Cmty.* to conclude that a district court complaint filed the same day is not pending for purposes of § 1500); *Ak-Chin Indian Cmty.*, 80 Fed. Cl. at 308 n.4 ("Defendant argues, without precedential authority, that an action in another court should be deemed 'pending' if it was filed on the same day as a complaint in this court." (quotations omitted)).

interpreted this provision to mean that the claims should be considered "simultaneously" filed because they were deemed filed on the same date. Similarly, in *Harbuck* the Federal Circuit did not say that the complaints were filed on the same instant by operation of the transfer statute. Rather, its factual finding was that the CFC action was deemed filed "*on the same day* on which she originally filed that claim as one of the three counts of her district court complaint." 378 F.3d at 1328 (emphasis added). Based on this finding that the complaints were filed "on the same day," the Federal Circuit held that the claims were simultaneously filed and thus subject to dismissal under §1500.

Moreover, in deciding that claims submitted on the same date should be construed as falling within §1500, the Federal Circuit did not rely on the technicalities of the transfer statute but instead explained that its ruling was needed to effectuate the purpose of §1500, which is to protect the United States from having to defend two lawsuits simultaneously:

> [W]e endeavor to further the established policies of §1500, which are "to force plaintiffs to choose between pursuing their claims in the Court of [Federal] Claims or in another court," *UNR [Industries, Inc. v. United States]*, 962 F.2d [1013,] 1018 [(Fed. Cir. 1992)] (citing the legislative history of the original version of §1500, 81 Cong. Globe, 40th Cong., 2d Sess. 2769 (1868), and to "protect the United States from having to defend two lawsuits over the same matter simultaneously," id.. at 1019. . . . These policies are promoted by precluding jurisdiction in the Court of Federal Claims over claims which had been previously filed in the district courts, and nothing suggests that these policies would not similarly be promoted by precluding jurisdiction in the simultaneous filing context.

*County of Cook*, 170 F.3d at 1090-91 (emphasis supplied). Given this rationale, there is no valid reason to construe *County of Cook* and *Harbuck* narrowly and limiting them to cases involving the operation of the transfer statute. Accordingly, consistent with language and intent of §1500, and the decisions of the Federal Circuit in *County of Cook* and *Harbuck*, this Court should conclude – as did the court in *Passamaquoddy* – that a district court action filed the same day as the action in the

CFC must be deemed pending for purposes os §1500, regardless of the precise order of the filings within the day.

3. *A broad interpretation of the* Tecon *exception to include same-day filings would eviscerate the purpose of §1500*

The exception created in *Tecon*, if applied sweepingly, would completely eviscerate the purpose of §1500, which is to prevent the United States from having to defend against the same claims simultaneously in two courts. The Federal Circuit explicitly recognized that fact when it originally overturned *Tecon* in *UNR*. Since that time, even though the Federal Circuit applied the *Tecon* exception in a case that had gone to trial in the CFC before the district court action was filed and opined in *gratis dictum* not to limit *Tecon* to its facts, *Hardwick*, 72 F.3d at 886,[8] no rationale exists for extending *Tecon* to same-day filings.

As discussed previously, *Tecon*, by its own terms, does not extend to same-day filings, and there is no valid rationale for extending the *Tecon* exception. As the Federal Circuit stated in *UNR*, *Tecon* is an "aberrational case" that does not comport with the plain language and purpose of §1500.[9] *UNR*, 962 F.2d at 1023. Nothing in § 1500 suggests that this Court's jurisdiction depends

---

[8] In *Hardwick*, the plaintiff had filed the district court case after the action in this Court was all but complete. After conducting an eight-week trial, the trial judge fell ill, so that he was not able to issue a decision even after eighteen months. *See Hardwick*, 72 F.3d at 884. Hence, the plaintiff there did not file the district court action to evade this Court's jurisdiction, but to avoid the statute of limitations barring its potential district court claims. *Id.* Under those circumstances, the Federal Circuit applied the *Tecon* rule and held that the subsequent filing of the district court case did not divest this Court of jurisdiction. *Id.* at 886.

[9] The Federal Circuit in *UNR* also recognized that the *Tecon* exception was created to address egregious conduct of the plaintiff. 962 F.2d at 1020. In *Tecon*, the plaintiff intentionally sought to extinguish CFC jurisdiction after lengthy pretrial proceedings had been completed and a trial date set. As explained by the Federal Circuit, "[A]n exasperated Court of Claims retained jurisdiction so it could dismiss the case with prejudice for failure to prosecute." *Id.* In fact, the

(continued...)

on the precise instant at which a plaintiff files its complaints in two courts, and Congress cannot have intended the absurd effect of forcing the parties and this Court to spend time and money on evidentiary proceedings to investigate the precise moments a plaintiff filed each complaint. *See Passamaquoddy*, 2008 U.S. Claims LEXIS 174, *52 ("construing § 1500 to require the taking of live testimony from paralegals and filing clerks borders on the absurd."); *United States v. Brown*, 333 U.S. 18, 27 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences."). In *Passamaquoddy*, the court determined the order of filing by examining, *inter alia*, testimony of paralegals and court clerks, emails, affidavits, interrogatories, transcripts, receipts, and docket numbers. *Id.* at *7, 54-81. That court expressed incredulity that the courts in *Ak-Chin Indian Cmty.* and *Salt River Pima-Maricopa Indian Cmty.* "ordered discovery, briefing, a formal evidentiary hearing for receiving the testimony of plaintiff's paralegal, . . . an informal hearing regarding filing procedures in this court, and post-hearing briefing." *Id.* at *10-11, 52 (footnotes omitted).

Separate and apart from the context of same-day filings, the exception created by *Tecon* frustrates the Congressional purpose behind §1500, by requiring the United States to litigate in two fora simultaneously, even when the district court case is filed before substantial proceedings have taken place in the CFC. Because the *Tecon* exception is not supported by the purpose or language

---

[9/](...continued)
plaintiff's conduct in *Tecon* was so outrageous that the United States advocated for the limited exception created by the Court of Claims in that case. When *Keene*, 508 U.S. 200, was decided, however, the United States recognized that the *Tecon* rule did not comport with either the language or purpose of § 1500, and it argued to the Supreme Court that the Federal Circuit was correct in overruling *Tecon* because the order of filing is irrelevant for the purposes of § 1500. Br. of Resp. at 36-37, *Keene Corp. v. United States*, No. 92-166 (U.S. Jan. 1993).

of §1500, Defendant maintains that *Tecon* is wrongly decided and should be overruled. At the very least, *Tecon* should not be extended beyond its own stated confines and applied to same-day filings. Otherwise, as stated by a leading commentator, "Section 1500 does not belong on the books if, as the result in *Tecon* would indicate, it may readily be evaded by the informed, and remains a trap only for those unfamiliar." David Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 GEO. L.J. 578, 597 (1967).

4. *Even if* Tecon *were to apply, Plaintiff has failed to meet its burden to establish jurisdiction.*

Even if *Tecon* were to apply to complaints filed the same day, Plaintiff has failed to carry its burden to establish jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Eastern Shawnee Tribe v. United States*, No. 1:06-cv-00917-CFL, 2008 U.S. Claims Lexis 180, *11-12, 2008 WL 2554943, *4 (Fed. Cl. Jun. 23, 2008) ("*Eastern Shawnee*") ("As plaintiff, Eastern Shawnee bears the burden of establishing that the court has subject matter jurisdiction to consider its claims by a preponderance of evidence."). In this case, for purposes of § 1500, Plaintiff has to establish that its District Court case was not pending at the time that it filed its Complaint in this Court. *See Reynolds*, 846 F.2d at 748; *Eastern Shawnee*, at Lexis *12, WL *5 ("However, any jurisdictional grant under the Indian Tucker Act is circumscribed by the bar of Section 1500."); *d'Abrera v. United States*, 78 Fed. Cl. 51, 57 (Fed. Cl. 2007).

Plaintiff opposes the Court's Show Cause Order on the grounds that "FedEx proof-of-delivery records establish that: the damages complaint in this [CFC] case was delivered to this Court at 9:00 a.m. (Doc. No. 12-2, ¶¶ 4, 5); and the class action complaint for an accounting was later delivered to the Federal District Court at 10:28 a.m. (Doc. No. 12-3, ¶ 4)." Pl's Opp. at 2, 6. Plaintiff also asserts that a check for the filing fee was not included with the District Court

Complaint, but was delivered to the District Court at approximately 2:00 p.m. on December 28, 2006. *See id*. at 3, 6-7.[10]

Plaintiff's "evidence" is circumstantial at best, and it does not rise to the level of sufficiency to establish the order in which the two complaints were delivered or filed in this Court and the district court. There are no time stamps on the two complaints because neither court uses such stamps to evidence the time of filing. Plaintiff simply has not established that this Complaint was filed before the District Court Complaint was filed. Accordingly, Plaintiff has failed to carry its burden to show that this Court has jurisdiction over the present complaint. This Court would have to hold an evidentiary hearing to determine whether the facts support Plaintiff's contentions before ruling on the applicability of § 1500.

B. Plaintiff's District Court and CFC Complaints are Based on the Same Operative Facts.

After establishing that the District Court Complaint is pending, this Court has to analyze whether the claims are for or "in respect to" claims "the plaintiff . . . has pending in any other court . . . ." 28 U.S.C. § 1500. A claim is one "for . . . which" a plaintiff has a suit or process pending in another court if the claims are identical. By using the phrase "for or in respect to which," Congress intended § 1500 to apply both to identical claims and more broadly to claims "in respect to" the suit or process. A claim is "in respect to" a suit or process if it "relate[s] to" or is "concerned with" the suit or "ha[s] regard or reference to the suit. *Webster's Third New International Dictionary* 1934 (1986). *Cf. Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971) (discussing meaning of the word

---

[10] Plaintiff's assertion is hearsay. Also hearsay are the statements that Plaintiff attributed to Mr. Greg Hughes, Chief Deputy Clerk of the District Court. Therefore, none of Plaintiff's assertions or attributions can be or should be considered by the Court for purposes of determining whether § 1500 precludes jurisdiction in this case.

"respecting" in the Establishment Clause of the First Amendment). *See Keene*, 508 U.S. at 212-14 ("Congress did not intend the statute to be rendered useless by a narrow concept of identi[cal claims] providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation.").

Accordingly, the language of § 1500 bars this Court from assuming jurisdiction over a claim if plaintiff has a *related* claim pending in another court. Determining whether claims are related "'requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit.'" *See Harbuck*, 378 F.3d at 1329 (quoting *Loveladies*, 27 F.3d at 1549). Such a comparison involves evaluating the complaints filed in each court. *See Loveladies*, 27 F.3d at 1553-54 (comparing district court and CFC complaints).

The Court of Claims and the CFC have consistently defined the term "claim" for purposes of a § 1500 analysis to turn on operative facts, rather than on legal theories. *See, e.g.*, *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1562 (Fed. Cir. 1988); *Eastern Shawnee*, No. 1:06-cv-00917-CFL, 2008 U.S. Claims Lexis 180, *12, 2008 WL 2554943, *4 (Fed. Cl. Jun. 23, 2008) ("Eastern Shawnee asserts that the basis of the district court complaint is the failure to provide an adequate accounting, while the complaint in this court addresses the failure of the government properly to manage monetary and non-monetary trust assets. This proffered distinction is not persuasive in light of prior precedents.") (citation omitted). Further, Plaintiff need not plead identical operative facts. It is sufficient that they are substantially the same. "To pursue a case against the United States in the Court of Federal Claims and another federal court is to pursue simultaneous, dual litigation of a single claim disallowed under section 1500 . . . ." *Gaubert*, 28 Fed. Cl. at 600.

In the words of this Court in *Eastern Shawnee*, a comparative reading of the District Court and CFC Complaints confirms that they are both based on substantially the same facts,

> [T]he claims in the case in the district court and in the instant action are basically different manifestations of the same underlying claim that the government failed properly to administer and manage [Plaintiff's] trust land and assets. The two claims involve the same parties, the same trust corpus, and the same breach of the same trust duties over the same time period. The only apparent factual difference is a narrower focus on the accounting aspects of the alleged breaches of trust duties in the district court complaint. . . .
>
> The government's role here is essentially the same, properly to manage and account for the tribe's trusts and assets. The conduct alleged in the district court case of failing to provide a full and accurate accounting is encompassed within the averments of the instant case, which addresses "the failure of the CFC defendants to properly manage monetary and non-monetary trust assets." Both actions turn on the government's past actions related to its management and administration of [Plaintiff's] same tribal trust lands and assets. Indeed, both suits specify that [Plaintiff] seeks an accounting to determine whether, and to what extent, the Tribe has suffered losses as a result of the government's breaches of trust.

*Eastern Shawnee*, Lexis at *13-14, 15-16; WL at *5(citations omitted); *see also Loveladies*, 27 F.3d at 1551-52; *Keene Corp.*, 508 U.S. at 212-14; *Tohono O'odham*, 79 Fed. Cl. at 657. Four courts have previously considered cases on similar facts and complaints; all found that plaintiffs demanded substantially the same relief on the same operative facts. *See Ak-Chin Indian Cmty.*, 80 Fed. Cl. 305 (Fed. Cl. 2008); *Tohono O'odham*, 79 Fed. Cl. 645 (Fed. Cl. 2007); *Eastern Shawnee*,; *Passamaquoddy*, 2008 U.S. Claims Lexis 174, *1.

Both complaints are based on essentially identical factual allegations, namely, that the United States, as trustee, breached fiduciary duties owed to Plaintiff, as trustee beneficiary, by failing properly to account for and manage Plaintiff's trust assets. *Compare* District Court Complaint ¶¶ 1, 4-6, 26-42, 48-49, 51, 56-57 *with* CFC Complaint ¶¶ 4, 12-22, 27-28. *See Tohono O'odham*, 79 Fed. Cl. at 652, 656 (concluding that the complaints were based on the same operative facts, where

"[t]he two complaints clearly involve the same parties, the same trust corpus, the same asserted trust obligations, and the same asserted breaches of trust over the same period of time"). The court in *Ak-Chin* analyzed similar facts as follows:

> The court will be required to review the government's alleged failure to maintain records and account for plaintiff's trust property by considering any existing records related to the government's collection, handling, and investment of the Community's trust funds and property. The nature of Indian trust cases and the government's trust responsibility owed to Indian tribes does not lend itself to a simple delineation or separation of operative facts as they pertain to the government's various duties owed to Indian tribes. It is not apparent to the court how it could address facts related to the government's duty to invest and deposit plaintiff's trust funds without considering the facts related to the government's overall trust obligations owed to plaintiff, including its duty to account. It is simply not the case that there are two different and separate sets of trust duties described in plaintiff's District Court complaint and its Court of Federal Claims complaint.

80 Fed. Cl. at 319-20.

In this case, the facts underlying the allegations raised by Plaintiff in its CFC Complaint are substantially the same as those raised by Plaintiff in its District Court Complaint. Both complaints relate to the same trust assets. Plaintiff alleges the Defendant mismanaged the very same resources and property (*e.g.*, land and natural resources, including timber, minerals, grazing and agriculture, leases and easements), and Plaintiff requests that both courts review Defendants' management of the same trust assets. *Compare* District Court Complaint ¶¶ 26-28, 31-33, 57, *with* CFC Complaint, ¶¶ 11-19.

Both complaints are also based on the same trust obligations for Defendant. Plaintiff alleges in both complaints that Defendants's trust obligations include, but are not limited to, (1) collecting compensation for conveyances or uses, *compare* District Court Complaint ¶¶ 31, 33 *with* CFC Complaint ¶¶ 12, 16; (2) protecting, preserving, managing, and investing trust assets, including trust funds and trust property (*compare* District Court Complaint ¶¶ 31, 34 *with* CFC Complaint ¶¶ 12-

14, 16, 18); (3) maintaining accurate records (*compare* District Court Complaint ¶¶ 43, 79, 85 *with* CFC Complaint ¶¶ 18, 21); and (5) providing accurate and timely reports to account holders (*compare* District Court Complaint ¶¶ 35, 39-41 *with* CFC Complaint ¶¶ 22-23).

Moreover, Plaintiff has sued the same defendants in both cases (*compare* District Court Complaint ¶¶ 21, 22 *with* CFC Complaint ¶¶ 2, 4), and it bases its claims in both cases on the fact that it is the beneficial owners of land and natural resources held in trust by the United States (*compare* District Court Complaint ¶¶ 1, 4, 26-28, 33, 39 *with* CFC Complaint ¶¶ 11, 17).

As the preceding comparisons have shown, the same operative facts underlie both complaints.

C. Plaintiff's District Court and CFC Complaints Contain Overlapping Claims for Relief.

Just as the operative facts need not be identical for a claim to be the same, the relief sought also does not need to be identical. *See Harbuck*, 378 F.3d at 1329; *see also Eastern Shawnee*, Lexis at *17, WL at *6 ("Thus, the inclusion of other and different requested relief does not bar application of Section 1500"). As in *Eastern Shawnee*, the relief in substance in this case and Plaintiff's District Court case will be the same. The complaints in the District Court and the CFC contain overlapping claims for relief related to the alleged breach of fiduciary duties owed to Plaintiff by the government. *See Eastern Shawnee*, Lexis at *17-18, WL at *6 ("Accordingly, while Eastern Shawnee correctly asserts that it does not specifically make a request for money damages in district court, in substance the requested relief overlaps with the request for money damages in this court."); *Keene*, 508 U.S. at 212.

In its District Court Complaint, Plaintiff expressly seeks several different forms of relief, District Court Complaint, *Prayer for Relief* ¶¶ 4-13 (requesting monetary relief on basis of

declarations that Defendant owed Plaintiff certain fiduciary duties that Defendant has breached and continues to breach those duties, and that Defendant has never provided Plaintiff with a full and complete accounting), and in its CFC Complaint, Plaintiff expressly impliedly seeks the same relief. *See* CFC Complaint, *Claim for Relief* ¶ 30 (requesting award of damages on basis of Defendant's breaches causing financial losses to Plaintiff, which necessitates an accounting in aid of judgment).

As shown earlier, the text of § 1500 requires only that the relief sought here is "related to" or is "concerned with" the claims in the District Court. The relief must merely be the same in nature, such as monetary or injunctive. *Harbuck*, 58 Fed. Cl. at 269. This Court recently found unpersuasive a distinction by plaintiff between a request for equitable and monetary relief:

> Eastern Shawnee contends that it does not seek the same relief in the actions because the relief sought in district court is solely equitable and the relief sought here is solely monetary. However, in substance the relief sought in the two complaints, an accounting and reimbursement for losses resulting from mismanagement, is overlapping. As explained below, if Eastern Shawnee were to establish liability for breaches of trust in this proceeding, an accounting would be required, and that accounting would overlap with the accounting available in equitable proceedings such as the case brought in district court.

*Eastern Shawnee*, No. 1:06-cv-00917-CFL, at 8 (citations omitted). As the court stated in *Tohono O'odham*, "the inquiry is whether there is meaningful overlap both in the underlying facts and in the relief sought in the two actions. A perfect symmetry of demands for relief is not necessary." 79 Fed. Cl. at 657; *see also Keene*, 508 U.S. at 212-14.

Under the foregoing circumstances, § 1500 divests this Court of jurisdiction because Plaintiff seeks overlapping claims in more than one forum. *See Harbuck*, 378 F.3d at 1329. For § 1500 purposes, "the legal theory behind the allegations or the characterizations of the requests for relief are not controlling." *Tohono O'odham*, 79 Fed. Cl. at 656. Here, there is no doubt that the same facts are relevant, namely, Defendant's management of Plaintiff's trust assets, and that the relief that

Plaintiff seeks overlap, *i.e.*, both cases are based on Defendant's alleged breach of the same fiduciary duties, Plaintiff's request for an accounting, and Plaintiff's desire or reimbursement for losses caused as a result of Defendant's alleged breaches of its trust duties.

*1. Both complaints indicate that Plaintiff seeks an accounting.*

In the District Court, Plaintiff seeks an accounting. District Court Complaint ¶¶ 1, 80, *Prayer for Relief* ¶ 7. It also seeks an accounting in this Court. *See* CFC Complaint, ¶ 28 ("The extent of [the Tribe's financial] losses is unknown to the Tribe because the United States has failed to maintain accurate books and accounting records and has failed to provide the Tribe with an accurate accounting of its trust property."). *See Eastern Shawnee*, Lexis at *18-19, WL at *7 ("In short, once liability has been established, the equitable 'relief' of an accounting is a necessary precursor to an award of damages. Moreover, this is not a situation where jurisdiction over an equitable accounting rests with district courts while this court is barred from undertaking an accounting. Instead, this court has the authority 'to require an accounting in aid of its jurisdiction to render a money judgment.'"); *Tohono O'odham*, 79 Fed. Cl. at 647, *supra*, n.6.

Plaintiff asks the District Court to compel Defendant to provide a full and complete accounting of the trust assets, *see* District Court Complaint, *Prayer for Relief* ¶ 7, and to review the methods by which Defendant invested the trust funds. *See id.*, *Prayer for Relief* ¶¶ 10-11. The District Court Complaint anticipates that the accounting sought by Plaintiff in the District Court will provide the factual predicate for the alleged breaches of fiduciary duty committed by Defendants.

Plaintiff anticipates achieving the same accounting result in the CFC Complaint by claiming that it has "suffered financial losses including, but not necessarily limited to, losses of income from the Tribe's land, natural resources, and trust funds." CFC Complaint, *Claim for Relief* ¶ 30.

Further, Plaintiff asks for "damages in an amount to be proved at trial . . . and such other relief as the court may find just *or necessary*." *Id*. (emphasis added). In this Court, Plaintiff seeks "damages in an amount to be proved at trial," CFC Complaint, *Claim for Relief* ¶ 30, which this Court would have to provide through an accounting in aid of judgment.[11/] *See Eastern Shawnee*, Lexis at *19, WL at *7 (citing *Klamath & Modoc Tribes v. United States*, 174 Ct. Cl. 483, 490-91 (1966); *Tohono O'odham*, 79 Fed. Cl. at 647, *supra*, n.6.; see also CFC Complaint, ¶¶ 27-28.

Plaintiff did not limit its CFC Complaint to a request for monetary relief because it also seeks "such *other relief* as the court may find just *or necessary*." CFC Complaint, *Claim for Relief* ¶ 30 (emphasis added). The plain language of Plaintiff's CFC Complaint belies any notion that its own terms limit it exclusively to a request for damages. *See* CFC Complaint ¶¶ 19-20, 27. The Court need not assess whether it is empowered to grant such relief as Plaintiff is requesting here under the Tucker Act or Indian Tucker Act, but only to confirm that Plaintiff, when it filed its complaint, sought such relief. *Tohono O'odham*, 79 Fed. Cl. at 654-55.

Labels are not dispositive, and courts will look, instead, to the substance of the relief that the plaintiffs request. *See Tohono O'odham*, 79 Fed. Cl. at 659 (holding that plaintiff's complaints in the CFC and the District Court had an overlap of relief in the request for an accounting). Whether Plaintiff requests damages necessitating an accounting in aid of judgment in this Court, or a full and complete accounting in the District Court, Plaintiff's requested relief overlap and thereby implicate § 1500. *See Eastern Shawnee*, Lexis at *22-23, WL at *8 ("Here, in contrast, because the

---

[11/]In *Tohono O'odham*, the court noted that "although a pre-liability, stand-alone general accounting is unavailable in [the CFC], after a presentation of sufficient evidence, an accounting is unavoidable here and will be coextensive with all the plaintiff's claims of breach. The accounting will be necessary to establish the quantum of damages." 79 Fed. Cl. at 659.

accounting does not have considerable value independent of monetary recovery, the accounting sought is 'in essence' a claim for money damages"); *Harbuck*, 378 F.3d at 1329 (citing *Keene*, 508 U.S. at 212).

*2. Both complaints indicate that Plaintiff seeks monetary relief.*

Both complaints indicate that Plaintiff seeks monetary relief arising from the same fiduciary duty breach that Plaintiff hopes the courts will find. *Compare* District Court Complaint ¶ 80, *Prayer for Relief* ¶ 9 (requesting relief requiring "a mandatory injunction compelling Defendants to correct Plaintiffs' trust fund account balances make the accounts whole as if there had been no breaches of trust, negligence or wrongdoing by Defendants . . . .") *with* CFC Complaint, *Claim for Relief* ¶ 30.

Plaintiff has asked the District Court for certain declaratory relief, but, at bottom, Plaintiff is seeking a correction to its trust fund account balances and to make its accounts whole. *See* District Court Complaint, ¶ 80, *Prayer for Relief* ¶ 9. Similarly, Plaintiff seeks damages in the CFC. *See* CFC Complaint, ¶¶ 27-28, *Claim for Relief* ¶¶ 29-30 ("[T]he Tribe has suffered financial losses . . . . [P]laintiff prays for damages in an amount to be proved at trial . . . and such other relief as the court may find just or *necessary*") (emphasis added).

Plaintiff's requests for relief based on the alleged breach of trust in both of its cases certainly overlap. The District Court and CFC complaints ask the respective courts to determine Plaintiff's rights as a trust beneficiary and Defendants' duties (and alleged breaches of trust) as trustee. District Court Complaint ¶¶ 73, 75, 77, *Prayer for Relief* ¶¶ 4-7; CFC Complaint ¶¶ 27-28, *Claim for Relief* ¶ 30.

Indeed, the relief sought in this action might be the same as in the District Court, and the claims may overlap each other. *See, e.g., Christopher Village, L.P. v. United States*, 360 F.3d 1319

(Fed. Cir. 2004) (concluding the district court lacked jurisdiction to issue declaratory judgment concerning government's liability for breach of contract so as to create predicate for suit for damages under the Tucker Act); *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 139 n.10 (Fed. Cl. 2004). Because Plaintiff seeks the same finding of breach of trust, especially as regards an accounting, and resulting loss in both cases, the relief sought in both cases sufficiently overlaps, and, therefore, § 1500 requires that this Court dismiss Plaintiff's claims here. *See Johns-Manville*, 855 F.2d at 1565.

If this court awards Plaintiff damages for Defendant's alleged failure to maintain the accounts properly, that award will subsume Plaintiff's requests in the District Court for declarations that Defendant has breached its fiduciary duties. If this Court awards damages, it necessarily has concluded that Defendant has breached its fiduciary duties. Without that breach, Defendant must have performed with fidelity, and this Court would have no damages to award. Therefore, Plaintiff's request for damages in this Court subsumes Plaintiff's request for declaratory relief in the District Court. *A fortiori*, those claims for relief overlap.

## IV. CONCLUSION

28 U.S.C. § 1500 divests this Court of jurisdiction if the following conditions are met: (1) a district court case is pending, (2) the two complaints involve the same facts, and (3) Plaintiff is seeking overlapping relief in both courts. *See Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004). Those conditions are present herein. Therefore, § 1500 requires this Court to dismiss this case.[12/]

---

[12/] In the alternative, assuming arguendo that Plaintiff's complaints seek "distinctively different types of relief" from the two courts such that its CFC case may not be dismissed under

(continued...)

Respectfully submitted this 8th day of July 2008.

RONALD J. TENPAS
Assistant Attorney General

*s/E. Kenneth Stegeby*
E. KENNETH STEGEBY
United States Department of Justice
Environment and Natural Resources
DivisionNatural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Tel: (202) 844-1369
Fax: (202) 844-1350

Attorney for Defendant

OF COUNSEL:

ANTHONY P. HOANG
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Tel: (202) 305-0241
Fax: (202) 353-2021

MICHAEL BIANCO
Office of the Solicitor
United States Department of the Interior
Washington, DC 20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227

[12/](...continued)
§ 1500, the fact that the cases still are based on the same operative facts provides an appropriate basis for staying the CFC case. *See Loveladies*, 27 F.3d at 1554; *Pa. R.R. Co. v. United States*, 363 U.S. 202 (1960); *Northrop Corp. v. United States*, 27 Fed. Cl. 795, 804 n.5 (1993).

# EXHIBIT 3

OK to file
RAL
1/25/93

No. 92-166

# In the Supreme Court of the United States

OCTOBER TERM, 1992

---

KEENE CORPORATION, PETITIONER

*v.*

UNITED STATES OF AMERICA

---

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT*

---

## BRIEF FOR THE UNITED STATES

---

WILLIAM C. BRYSON
*Acting Solicitor General*

STUART M. GERSON
*Assistant Attorney General*

MAUREEN E. MAHONEY
*Deputy Solicitor General*

ROBERT A. LONG, JR.
*Assistant to the Solicitor General*

BARBARA C. BIDDLE
ROBERT M. LOEB
*Attorneys*

*Department of Justice*
*Washington, D.C. 20530*
*(202) 514-2217*

## QUESTIONS PRESENTED

Under 28 U.S.C. 1500, the Court of Federal Claims lacks subject matter jurisdiction over "any claim for or in respect to which the plaintiff * * * has pending in any other court any suit or process against the United States" or its agents. The questions presented are:

1. Whether Section 1500 applies if a plaintiff is unable to pursue all its legal theories in a single action.

2. Whether Section 1500 applies if the plaintiff simultaneously litigates a dispute in the Court of Federal Claims and another court, but terminates the other action before the Court of Federal Claims rules on a motion to dismiss for lack of jurisdiction.

3. Whether the decision in this case should apply to petitioner.

## TABLE OF CONTENTS

| | Page |
|---|---|
| Opinions below | 1 |
| Jurisdiction | 2 |
| Statutory provision involved | 2 |
| Statement: | |
| 1. District Court litigation | 3 |
| a. Pennsylvania | 3 |
| b. New York | 3 |
| c. District of Columbia | 4 |
| 2. Court of Federal Claims litigation | 4 |
| a. Keene I | 4 |
| b. Keene II | 4 |
| 3. The Section 1500 motions | 5 |
| 4. The court of appeals' decisions | 6 |
| a. The panel decision | 6 |
| b. The en banc decision | 7 |
| Summary of argument | 10 |
| Argument: | |
| I. Section 1500 bars simultaneous litigation of a dispute in the Court of Federal Claims and another court | 14 |
| A. Section 1500 provides that the Court of Federal Claims lacks jurisdiction if the plaintiff has a related action pending in another court | 14 |
| B. The purpose of Section 1500 is to bar plaintiffs from suing the United States or its agents in the Court of Federal Claims and another court | 17 |
| C. Section 1500 is not limited to legal theories that must be litigated in a single action under principles of claim preclusion | 21 |

Argument—Continued: Page

D. Section 1500 does not permit a plaintiff to engage in simultaneous litigation against the United States as long as the second action is terminated before the Court of Federal Claims rules on a motion to dismiss ..... 29

E. The jurisdictional bar of Section 1500 does not depend on the order in which a plaintiff's actions are filed ..... 36

F. The courts are not free to disregard clear statutory language to avoid harsh results, and Section 1500 is not as harsh as petitioner and its amici suggest ..... 39

II. The doctrines of non-retroactivity and equitable tolling do not apply in this case ..... 41

A. Non-retroactivity is inappropriate in this case ..... 41

B. Equitable tolling is inappropriate in this case ..... 43

Conclusion ..... 46

## TABLE OF AUTHORITIES

Cases:

*Allied Materials & Equipment Co.* v. *United States*, 210 Ct. Cl. 714 (1976) ..... 27
*Boston Five Cents Savings Bank* v. *United States*, 864 F.2d 137 (Fed. Cir. 1988) ..... 27
*British American Tobacco Co.*, 89 Ct. Cl. 438 (1931), cert. denied, 310 U.S. 627 (1940) ..... 25, 34
*Brown* v. *United States*, 358 F.2d 1002 (Ct. Cl. 1966) ..... 8, 34, 35, 36, 40
*Budinich* v. *Becton Dickinson & Co.*, 486 U.S. 196 (1988) ..... 41, 42
*Casman* v. *United States*, 135 Ct. Cl. 647 (1956) ..... 8, 26, 27, 28, 36, 40
*Catawba Indian Tribe of South Carolina* v. *United States*, No. 92-5018 (Fed. Cir. Jan. 6, 1993) ..... 44
*Chevron Oil Co.* v. *Huson*, 404 U.S. 97 (1971) ..... 43



Cases—Continued: Page

*Christianson* v. *Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ..... 32
*Corona Coal Co.* v. *United States*, 263 U.S. 537 (1924) ..... 8, 12, 15, 16, 28, 38, 39
*De La Rama S.S. Co.* v. *United States*, 344 U.S. 386 (1953) ..... 32
*Estate of Cowart* v. *Nicklos Drilling Co.*, 112 S.Ct. 2589 (1992) ..... 15
*Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368 (1981) ..... 9, 13, 41, 42
*Fourco Glass Co.* v. *Transmirra Prods. Corp.*, 353 U.S. 222 (1957) ..... 30
*Frantz Equip. Co.* v. *United States*, 120 Cl. Ct. 314 (1951) ..... 35
*GAF Corp.* v. *United States*:
818 F.2d 901 (D.C. Cir. 1987) ..... 4
19 Cl. Ct. 490 (1990) ..... 6
923 F.2d 947 (Fed. Cir. 1991), cert. denied, 112 S. Ct. 965 (1992) ..... 6
*Griffith* v. *Kentucky*, 479 U.S. 314 (1987) ..... 42
*Hallstrom* v. *Tillamook County*, 493 U.S. 20 (1989) ..... 33
*Hill* v. *United States*, 8 Cl. Ct. 382 (1985) ..... 16, 27
*Hossein* v. *United States*, 218 Ct. Cl. 727 (1978) ..... 34
*Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ..... 32
*Irwin* v. *Veterans Admin.*, 111 S. Ct. 453 (1990) .. 33, 43, 44
*James B. Beam Distilling Co.* v. *Georgia*, 111 S. Ct. 2439 (1991) ..... 42-43
*Japanese War Notes Claimants Ass'n* v. *United States*, 373 F.2d 356 (Ct. Cl.), cert. denied, 389 U.S. 971 (1967) ..... 44
*Johns-Manville Corp.* v. *United States*, 855 F.2d 1556 (Fed. Cir. 1988), cert. denied, 489 U.S. 1066 (1989) ..... 5, 15, 23, 24, 25, 26, 44
*Keene Corp.* v. *United States*:
700 F.2d 836 (2d Cir. 1983), cert. denied, 464 U.S. 864 (1983) ..... 4

Cases—Continued: Page


591 F. Supp. 1340 (D.D.C. 1984) .......... 4
12 Cl. Ct. 197 (1987) .......... 5
*King* v. *St. Vincent's Hospital*, 112 S. Ct. 570 (1991) .......... 15
*Lemon* v. *Kurtzman*, 403 U.S. 602 (1971) .......... 15
*Lorillard* v. *Pons*, 434 U.S. 575 (1978) .......... 25
*Los Angeles Shipbuilding & Drydock Corp.* v. *United States*, 138 Ct. Cl. 648 (1957) .......... 25, 34
*Maher* v. *Gagne*, 448 U.S. 122 (1980) .......... 26
*Mansfield, Coldwater & Lake Michigan Ry.* v. *Swan*, 111 U.S. 379 (1884) .......... 32
*Mathews* v. *Eldridge*, 424 U.S. 319 (1976) .......... 33
*Matson Navigation Co.* v. *United States*, 284 U.S. 352 (1932) .......... 17
*Mitchell* v. *Clark*, 110 U.S. 633 (1884) .......... 44
*National Cored Forgings Co.* v. *United States*, 132 Ct. Cl. 11 (1955) .......... 25
*Nevada* v. *United States*, 463 U.S. 110 (1983) .......... 25
*Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U.S. 826 (1989) .......... 29, 33
*Nonella* v. *United States*, 16 Cl. Ct. 290 (1989) .......... 27
*Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982) .......... 41
*Pennsylvania R.R.* v. *United States*, 363 U.S. 202 (1960) .......... 35
*Pitt River Home & Agricultural Coop. Assoc.*, 215 Ct. Cl. 959 (1977) .......... 27
*Prillman* v. *United States*, 220 Ct. Cl. 677 (1979) .......... 27
*Russello* v. *United States*, 464 U.S. 16 (1983) .......... 31
*Skinner & Eddy Corp., Ex parte*, 265 U.S. 86 (1924) .......... 16, 30
*Smith* v. *Sperling*, 354 U.S. 91 (1957) .......... 29
*Tecon Engineers, Inc.* v. *United States*, 343 F.2d 943 (Ct. Cl. 1965), cert. denied, 382 U.S. 976 (1966) .......... 6, 9, 36, 37, 38, 39
*Torres* v. *Oakland Scavenger Co.*, 487 U.S. 312 (1988) .......... 33, 41
*United Mine Workers* v. *Gibbs*, 383 U.S. 715 (1966) .......... 26




Cases—Continued: Page


*Weinberger* v. *Salfi*, 422 U.S. 749 (1975) .......... 33
*Wessel, Duval & Co.* v. *United States*, 129 Ct. Cl. 464 (1954) .......... 32, 34

Constitution, statutes and rules:

U.S. Const.:
Art. III .......... 13, 42
§ 2 .......... 42
Amend. I (Establishment Clause) .......... 15
Amend. V .......... 3
Act of Dec. 1, 1873, tit. 13, ch. 21, § 1067, 18 Stat. 197 (Rev. Stat. § 1067 (1874)) .......... 19
Act of June 25, 1868, ch. 71, 15 Stat. 75 .......... 17
§ 8, 15 Stat. 77 .......... 12, 17-18, 19, 20-21, 30, 37
Act of Mar. 3, 1911 (Judicial Code), ch. 231, 36 Stat. 1135 .......... 19
§ 154, 36 Stat. 1138 .......... 16, 17, 19
Act of June 25, 1948, ch. 646, § 1500, 62 Stat. 942 .......... 16, 17, 19
Captured and Abandoned Property Act of 1863, ch. 120, 12 Stat. 820 .......... 17
§ 3, 12 Stat. 820 .......... 17
Court of Federal Claims Technical and Procedural Improvement Act of 1992, Pub. L. No. 102-572, 106 Stat. 4506:
§ 902, 106 Stat. 4516 .......... 1
§§ 901-911, 106 Stat. 4516-4520 .......... 20
§ 911, 106 Stat. 4520 .......... 1
Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, § 133(e)(1) .......... 20
Federal Employees Compensation Act, 5 U.S.C. 1500 .......... 3
Federal Tort Claims Act:
28 U.S.C. 1346(b) .......... 35
28 U.S.C. 2675(a) .......... 3
Little Tucker Act, 28 U.S.C. 1346(a)(2) .......... 40

Statutes and rules—Continued: Page

Tucker Act:
28 U.S.C. 1346(a) ... 24, 34
28 U.S.C. 1491 ... 4, 24, 34
28 U.S.C. 1491(a)(1) ... 30
28 U.S.C. 1491(a)(2) ... 28, 40
28 U.S.C. 1496 ... 30
28 U.S.C. 1501 ... 30
28 U.S.C. 1503 ... 30
28 U.S.C. 2501 ... 40
Rev. Stat. § 1067 (1874) ... 19
28 U.S.C. 1492 ... 44
28 U.S.C. 1497 ... 30
28 U.S.C. 1499 ... 30
28 U.S.C. 1500 ... *passim*
Reviser's notes (28 U.S.C. at 1862 (1948)) ... 30
28 U.S.C. 1502 ... 30
28 U.S.C. 1508 ... 31
28 U.S.C. 1631 ... 36, 40
28 U.S.C. 1927 ... 39
28 U.S.C. 2509(c) ... 44
42 U.S.C. 405(g) ... 34
42 U.S.C. 1988 ... 26
Fed. R. Civ. P.:
Rule 11 ... 39
Rule 21 ... 33
Sup. Ct. R. 24.1(a) ... 21

Miscellaneous:
Cong. Globe, 40th Cong., 2d Sess. (1868) ... 11, 18, 19, 38
2 Cong. Rec. 129 (1873) ... 19
138 Cong. Rec. S4830-S4832 (daily ed. Apr. 2, 1992) ... 20
138 Cong. Rec. D465 (daily ed. Apr. 29, 1992) ... 20
H.R. Rep. No. 308, 80th Cong., 1st Sess. (1947) ... 30
Journal of the Senate, 40th Cong., 2d Sess. (1868) ... 18



Miscellaneous—Continued: Page
Note, *Private Bills in Congress*, 79 Harv. L. Rev. 1684 (1966) ... 44
Restatement (Second) of Judgments (1982) ... 22, 23, 26, 42
Robert L. Stern, Eugene Gressman, Stephen M. Shapiro, *Supreme Court Practice* (6th ed. (1986) ... 36
S. 2521, 102d Cong., 2d Sess. (1992) ... 20
David Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 Geo. L.J. 573 (1967) ... 17, 28, 38
*Webster's Third New International Dictionary* (1986) ... 15

# In the Supreme Court of the United States

OCTOBER TERM, 1992

---

No. 92-166

KEENE CORPORATION, PETITIONER

*v.*

UNITED STATES OF AMERICA

---

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT*

---

## BRIEF FOR THE UNITED STATES

---

### OPINIONS BELOW

The en banc opinion of the court of appeals (Pet. App. A1-A34) is reported at 962 F.2d 1013. The opinion of the Court of Federal Claims [1] (Pet. App. E1-E27) is reported at 17 Cl. Ct. 146.

[1] Effective October 29, 1992, Congress renamed the United States Claims Court the "United States Court of Federal Claims." See Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub. L. No. 102-572, §§ 902, 911, 106 Stat. 4516, 4520. Throughout this brief, we refer to the court by its new name.

## JURISDICTION

The judgment of the court of appeals was entered on April 23, 1992. The petition for a writ of certiorari was filed on July 22, 1992, and was granted on October 19, 1992. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

## STATUTORY PROVISION INVOLVED

Section 1500 of Title 28, U.S. Code, provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

## STATEMENT

Petitioner manufactured and sold products containing asbestos. From 1979 to 1987, petitioner litigated separate civil actions against the United States in three district courts and in the Court of Federal Claims. In each action, petitioner sought reimbursement for its liability to workers injured as a result of exposure to asbestos while working at naval shipyards or for private companies under contract to the United States Navy.[2]

[2] Petitioner's lawsuits were part of massive litigation against the United States over asbestos claims. At its height, the government was being sued in some 3,000 cases and faced potential liability in excess of $40 billion. The Department of Justice created a special 35-lawyer section within its Civil Division solely to defend this litigation.



### 1. *District Court Litigation*

a. *Pennsylvania.* In June 1979, petitioner filed a third-party complaint against the United States in *Miller* v. *Johns-Manville Prods. Corp.*, No. 78-1283E (W.D. Pa.). Petitioner sought indemnification or contribution for any tort liability that it might incur for injuries caused by the plaintiff's exposure to asbestos while working for a private company that performed work for the United States Navy pursuant to a government contract. Pet. App. I1-I3. In May 1980, the court granted petitioner's motion to dismiss its third-party complaint without prejudice. Pet. App. E15.

b. *New York.* In January 1980, petitioner filed an omnibus tort action against the United States in the United States District Court for the Southern District of New York. *Keene Corp.* v. *United States*, No. 80-Civ.-0401GLG. Petitioner sought to recover from the United States amounts that it had paid or expected to pay to some 14,000 asbestos tort claimants who were exposed to asbestos while working at naval shipyards or for private companies acting under contract for the United States Navy. In addition, petitioner asserted that the federal government's recoupment of payments under the Federal Employees Compensation Act, 5 U.S.C. 1500 (FECA), was a taking of petitioner's property without just compensation in violation of the Fifth Amendment. See J.A. 6-39.

On September 30, 1981, the district court dismissed the action, primarily on the ground that petitioner's administrative tort claims against the United States failed to satisfy the requirements of the Federal Tort Claims Act (FTCA), 28 U.S.C. 2675(a). The court also held that it lacked jurisdiction to decide petitioner's takings claims. J.A. 41-57. The court of

appeals affirmed the district court's ruling, *Keene Corp.* v. *United States*, 700 F.2d 836 (2d Cir.), and this Court denied certiorari, 464 U.S. 864 (1983).

c. *District of Columbia.* In July 1982, after the district court in the Southern District of New York had rejected petitioner's tort claims, petitioner brought a second omnibus tort action against the United States in the United States District Court for the District of Columbia. In July 1984, the district court held that petitioner was attempting to relitigate issues decided in the New York litigation, and that consequently principles of issue preclusion required dismissal of the action. *Keene Corp.* v. *United States*, 591 F. Supp. 1340, 1345-1349 (D.D.C. 1984). The court of appeals affirmed the district court's ruling. *GAF Corp.* v. *United States*, 818 F.2d 901, 912-916 (D.C. Cir. 1987).

**2. *Court of Federal Claims Litigation***

a. *Keene I.* In December 1979—while petitioner's third-party complaint in *Miller* was pending—petitioner filed an action against the United States in the Court of Federal Claims under the Tucker Act, 28 U.S.C. 1491. *Keene Corp.* v. *United States*, No. 579-79C. Petitioner sought indemnity from the United States for any amounts paid by petitioner to asbestos tort claimants exposed to asbestos while working at naval shipyards or for companies under contract to the United States Navy. Pet. App. H1-H20.

b. *Keene II.* On September 25, 1981—while petitioner's omnibus tort action was pending in New York—petitioner filed a second action in the Court of Federal Claims under the Tucker Act. *Keene Corp.* v. *United States*, No. 585-81C. In that action, petitioner reiterated its claim that the government's recoupment of payments under FECA was a taking of property without just compensation. Pet. App. F1-F12.



**3. *The Section 1500 Motions***

a. In February 1987, the United States filed a motion in the Court of Federal Claims pursuant to 28 U.S.C. 1500 to dismiss petitioner's Tucker Act complaints, and similar complaints brought by several other asbestos manufacturers, for lack of subject matter jurisdiction. The government contended that the Court of Federal Claims lacked jurisdiction because petitioner and the other claimants had district court suits involving the same dispute pending at the same time they were litigating their actions in the Court of Federal Claims.

In April 1987, the Court of Federal Claims granted the government's motion as to one claimant, Johns-Manville Corporation. *Keene Corp.* v. *United States*, 12 Cl. Ct. 197 (1987). The court did not rule on the motion with respect to petitioner or the other manufacturers, but noted that their claims likely would be dismissed under Section 1500 for want of jurisdiction. *Id.* at 198-199 n.1. The court of appeals affirmed, *Johns-Manville Corp.* v. *United States*, 855 F.2d 1556 (Fed. Cir. 1988), and this Court denied certiorari, 489 U.S. 1066 (1989).

b. In November 1988, the government filed a second motion to dismiss petitioner's claims under 28 U.S.C. 1500. The Court of Federal Claims granted the government's motion as to all plaintiffs except

GAF Corporation.[3] The court held that Section 1500 required dismissal of the other asbestos manufacturers' claims because, at the time the actions were filed in the Court of Federal Claims, the plaintiffs had other actions involving the same dispute pending in other courts against the United States. The Court of Federal Claims rejected petitioner's argument that the subsequent termination of the district court actions vested it with jurisdiction over the complaints. Pet. App. E1-E27.

#### 4. *The Court of Appeals' Decisions*

a. *The Panel Decision.* A panel of the court of appeals reversed. Pet. App. D1-D25. The panel held that "when an earlier-filed district court case is finally dismissed before the Claims Court entertains and acts on a § 1500 motion to dismiss, § 1500 does not bar Claims Court jurisdiction even though the dismissal may have occurred after the filing of the Claims Court action." Pet. App. D22. The panel acknowledged that a "not * * * unreasonable reading of the statute" would bar the Court of Federal Claims from exercising jurisdiction if the plaintiff had a related action pending in another court when it filed an action in the Claims Court. *Id.* at D23. But the

[3] The Court of Federal Claims, relying on *Tecon Engineers, Inc.* v. *United States,* 343 F.2d 943 (Ct. Cl. 1965), cert. denied, 382 U.S. 976 (1966), held that Section 1500 did not apply to GAF because GAF filed its district court action one day after it filed suit in the Court of Federal Claims. Pet. App. E25-E26. The Court of Federal Claims subsequently rejected GAF's claims on the merits. *GAF Corp.* v. *United States,* 19 Cl. Ct. 490 (1990). The court of appeals affirmed that ruling, 923 F.2d 947 (Fed. Cir. 1991), and this Court denied certiorari, 112 S. Ct. 965 (1992).



court found that the statutory language was ambiguous, and that "policy and legislative history support a different reading." *Ibid.*

Judge Mayer dissented. He concluded that the panel's holding was "contrary to the unambiguous language of the statute, its purpose and history." Pet. App. D26. Judge Mayer reasoned that the jurisdiction of the Court of Federal Claims "should not depend on when a motion to dismiss under section 1500 is filed or is considered by this court." *Ibid.*

b. *The En Banc Decision.* The court of appeals granted rehearing en banc and affirmed the decision of the Court of Federal Claims in an opinion joined by nine of the ten judges on the court. Pet. App. A1-A24.

i. The court of appeals comprehensively reexamined prior judicial decisions construing Section 1500 and concluded that "section 1500 is rife with judicially created exceptions and rationalizations to the point that it no longer serves its purposes: to force an election of forum and to prevent simultaneous dual litigation against the government." Pet. App. A14. The court observed that "[i]t is a rare plaintiff who could not find an exception to his liking if he tried hard enough." *Id.* at A14-A15. The court declined petitioner's invitation to continue "the charade." *Id.* at A15.

The court of appeals concluded that the plain meaning of the statute and its purpose mandate a bright-line rule that the Court of Federal Claims lacks jurisdiction over a claim if the same claim is pending in another court. Accordingly, the court held:

1) if the same claim is pending in another court at the time the complaint is filed in the Claims

> Court, the Claims Court has no jurisdiction, regardless of when an objection is raised or acted on; 2) if the same claim is filed in another court after the complaint is filed in the Claims Court, the Claims Court is by that action divested of jurisdiction regardless of when the Court memorializes the fact by order of dismissal; and 3) if the same claim has been finally disposed of by another court before the complaint is filed in the Claims Court, ordinary rules of res judicata and available defenses apply.

Pet. App. A15.

The court of appeals declined to construe Section 1500 as permitting "a plaintiff to maintain cases in both courts until the government moves to dismiss the Claims Court suit or until a judge addresses the motion." Pet. App. A16. The court explained that such a rule would be "contrary to th[e] recognized purpose of section 1500," because it would "compel the government to defend two suits simultaneously." *Ibid.*

ii. The court of appeals reexamined several of its prior decisions that created exceptions to the jurisdictional bar of Section 1500 in order to ameliorate its perceived harshness. Adhering to this Court's decision in *Corona Coal Co.* v. *United States*, 263 U.S. 537, 540 (1924), the court of appeals held that possible hardship to a plaintiff "does not justify rewriting the statute." Pet. App. A17. Accordingly, the court overruled *Brown* v. *United States*, 358 F.2d 1002 (Ct. Cl. 1966), and *Casman* v. *United States*, 135 Ct. Cl. 647 (1956). Pet. App. A17 & n.3. *Brown* and *Casman* had both construed Section 1500 to allow plaintiffs to maintain simultaneous actions concerning the same dispute in the Court of Federal Claims



and another court. Pet. App. A13-A14, A17. The court also overruled *Tecon Engineers, Inc.* v. *United States*, 343 F.2d 943 (Ct. Cl. 1965), cert. denied, 382 U.S. 976 (1966), which had held that Section 1500 did not apply if the plaintiff first filed an action in the Court of Federal Claims and thereafter filed an action concerning the same dispute in another court. Pet. App. A18-A19.

iii. The court reaffirmed the principle that two actions involve the same "claim" for the purposes of Section 1500 if they are based on the same operative facts. The court rejected the contention that a "claim" refers to actions based on the same legal theory. The court explained that such a narrow construction of the term "claim" would render the statute ineffective against the very abuse it was intended to prevent. Pet. App. A19-A20.

iv. Finally, the court of appeals rejected the petitioner's argument that its decision should not be given retroactive effect. The court explained that, because a federal court "lacks discretion to consider the merits of a case over which it is without jurisdiction, * * * a jurisdictional ruling may never be made prospective only." Pet. App. A22-A23, quoting *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368, 379 (1981).

v. Chief Judge Nies joined the court's opinion, but also filed a separate opinion suggesting that, in some circumstances when a party is barred by Section 1500 from litigating simultaneous actions against the United States, equitable tolling of the statute of limitations may be appropriate. Pet. App. A24-A25.

vi. Judge Plager dissented. Pet. App. A25-A34. Judge Plager would have ruled that "when an earlier-filed district court case is finally dismissed before the

Claims Court entertains and acts on a § 1500 motion to dismiss, § 1500 does not bar Claims Court jurisdiction." *Id.* at A31.

**SUMMARY OF ARGUMENT**

1. a. Section 1500 provides that the Court of Federal Claims "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States" or its agents. Congress hardly could have chosen more sweeping and definitive language to bar plaintiffs from litigating a dispute against the government simultaneously in the Court of Federal Claims and another court. Section 1500 applies to any claim "in respect to which" the plaintiff has pending another action—that is, any claim that "relates to" or is "concerned with" a pending action. Because Section 1500 applies only if the plaintiff "has pending" another action, it does not bar a plaintiff from bringing an action in the Court of Federal Claims if a related action in another court is no longer pending. But the Court of Federal Claims plainly lacks jurisdiction while a related action is pending in another court, and the termination of the related action does not confer jurisdiction retroactively on the Court of Federal Claims.

b. The legislative history of Section 1500 confirms that Congress intended to bar a plaintiff from engaging in simultaneous litigation of a dispute in the Court of Federal Claims and another court. The statute was specifically intended to apply to the so-called "cotton claimants," a group of plaintiffs who brought actions against the United States in the Court of Claims and parallel actions against federal officials in other courts. The stated purpose of the statute was "to put that class of persons to their election either to leave the Court of Claims or to leave the other courts." Cong. Globe, 40th Cong., 2d Sess. 2769 (1868).



c. Petitioner is incorrect in contending that Section 1500 applies only if principles of claim preclusion would require the plaintiff to pursue all its legal theories in a single action. By its terms, Section 1500 applies if a claim is "in respect to"—*i.e.*, related to—a pending action in another court. A claim that is based on the same set of facts as a pending action plainly is related to the action. Moreover, petitioner's proposed construction would foster the very type of simultaneous litigation that Section 1500 was designed to stop. The Court of Federal Claims has no jurisdiction to hear claims under the Federal Tort Claims Act; the district courts have no jurisdiction to hear claims under the Tucker Act for more than $10,000. Consequently, petitioner's proposal would allow plaintiffs to engage in simultaneous litigation of a dispute in the Court of Federal Claims (on a contract theory) and in the district court (on a tort theory). Indeed, petitioner's construction of the statute would have allowed the cotton claimants to continue to maintain simultaneous actions against the United States and federal officials.

d. Petitioner is also incorrect in contending that Section 1500 allows a plaintiff to engage in simultaneous litigation against the United States as long as the other actions are terminated before the Court of Federal Claims rules on a motion to dismiss for lack of jurisdiction. Section 1500 plainly provides that the Court of Federal Claims "shall not have jurisdiction" if the plaintiff "has pending" a related

action against the United States in another court. The Court of Federal Claims does not acquire jurisdiction merely because the government fails to learn of the existence of a related action or the Court of Federal Claims fails to rule on a motion to dismiss. That reading of Section 1500 is confirmed by the original statutory language, which provided that "no person shall file or prosecute any claim * * * for or in respect to which he * * * has pending any suit or process." 15 Stat. 77. When Congress replaced that phrase in 1948, it did not intend to alter the meaning of the statute.

Petitioner's proposed construction would not prevent dual simultaneous litigation. Given the minimal requirements of notice pleading, and the difficulties of coordinating the government's numerous litigating components, a plaintiff could often litigate against the government on two fronts at the same time. If plaintiffs understand that the Court of Federal Claims will be required to dismiss their action if they litigate simultaneously in another forum, Section 1500 will be largely self-policing.

Petitioner's construction also ignores the fundamental rule that limitations on a court's subject matter jurisdiction cannot be waived by the parties or the court. There is no source of authority that would permit a court to overlook the defect in its subject matter jurisdiction.

e. Although petitioner contends that Section 1500 is out of harmony with the legal landscape and produces harsh results, this Court has already declined a litigant's invitation to "add an exception [to Section 1500] to remove apparent hardship." *Corona Coal Co.* v. *United States*, 263 U.S. 537, 540 (1924). In any event, a rule barring litigation of the same dispute in two courts at once discourages



wasteful and duplicative litigation and conserves public resources. Those policies are hardly out of keeping with the current legal landscape. Moreover, petitioner and its amici greatly exaggerate the harsh results that will flow from interpreting Section 1500 as it is written. In many cases, plaintiffs will be able to obtain complete relief in a single action. Where that is not possible, the generous six-year period of limitations applicable to Tucker Act claims affords plaintiffs an opportunity to bring a second action in all but the most protracted cases. If a plaintiff has acted diligently and refrained from engaging in simultaneous litigation, equitable tolling of a statute of limitations may be available in appropriate circumstances.

2. a. The court of appeals correctly concluded that it was required to give its decision retroactive effect. Because the federal courts have no authority to expand their subject matter jurisdiction, "a jurisdictional ruling may never be made prospective only." *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368, 379 (1981). In any event, there is no basis for petitioner's suggestion that the Court's decision should not apply to petitioner. Apart from the Article III concerns that petitioner's argument raises, petitioner is not entitled to a prospective ruling because it is not relying on clear past precedent, but rather on arguments that prior judicial exceptions to Section 1500 should be expanded.

b. Petitioner did not seek equitable tolling of the statute of limitations in the courts below, and those courts did not consider that issue. Accordingly, this Court should not address it either. In any event, equitable tolling is not appropriate in the circumstances of this case. Petitioner did precisely what

Section 1500 forbids. It pursued multiple actions in multiple courts seeking essentially the same relief against the United States based on essentially the same facts—the government's alleged responsibility for injuries to workers exposed to asbestos while working in naval shipyards or on federal contracts. Indeed, petitioner litigated precisely the same takings claim simultaneously in the Court of Federal Claims and the district court. None of the established judicial exceptions to Section 1500 authorized petitioner's extraordinary seven-year campaign of simultaneous litigation. Accordingly, petitioner is not entitled to equitable relief.

## ARGUMENT

### I. SECTION 1500 BARS SIMULTANEOUS LITIGATION OF A DISPUTE IN THE COURT OF FEDERAL CLAIMS AND ANOTHER COURT

#### A. Section 1500 Provides That The Court Of Federal Claims Lacks Jurisdiction If The Plaintiff Has A Related Action Pending In Another Court

Section 1500 of Title 28 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

As the Court observed in construing the predecessor of Section 1500, "the words of the statute are plain, with nothing in the context to make their meaning doubtful; no room is left for construction, and we



are not at liberty to add an exception in order to remove apparent hardship." *Corona Coal Co.* v. *United States*, 263 U.S. 537, 540 (1924). See generally *Estate of Cowart* v. *Nicklos Drilling Co.*, 112 S. Ct. 2589, 2594 (1992); *King* v. *St. Vincent's Hospital*, 112 S. Ct. 570, 575 n.14 (1991). Section 1500 speaks in the language of subject matter jurisdiction. It provides in absolute and sweeping terms that the Court of Federal Claims "*shall not* have jurisdiction of *any* claim for *or in respect to which* the plaintiff * * * has pending in *any* other court *any* suit or process" against the United States or "*any* person * * * acting *or professing to act*, directly *or indirectly* under the authority of the United States" (emphasis added). Congress hardly could have chosen more definitive and emphatic language to bar plaintiffs from litigating a dispute with the government simultaneously in the Court of Federal Claims and in another court.

As petitioner observes (Pet. Br. 18), the word "claim" lacks a single "plain" meaning. See *Johns-Manville Corp.* v. *United States*, 855 F.2d 1556, 1560 (Fed. Cir. 1988), cert. denied, 489 U.S. 1066 (1989). But Congress eliminated any ambiguity that attaches to the term "claim" by providing that the Court of Federal Claims lacks "jurisdiction of any claim for *or in respect to which* the plaintiff * * * has pending * * * any other suit or process" against the United States or its agents. A claim is "in respect to" a suit if it "relate[s] to" the suit, or is "concerned with" the suit, or "ha[s] regard or reference to the suit. *Webster's Third New International Dictionary* 1934 (1986). Cf. *Lemon* v. *Kurtzman*, 403 U.S. 602, 612 (1971) (discussing meaning of the word "respecting" in the Establishment Clause of the First Amendment).

Accordingly, the language of Section 1500 bars the Court of Federal Claims from assuming jurisdiction over a claim if the plaintiff has a related action pending in another court.

By its terms, Section 1500 deprives the Court of Federal Claims of jurisdiction if the plaintiff "has pending" a related suit in another court. If the related action is no longer pending, the statutory language does not prevent the plaintiff from bringing a subsequent action in the Court of Federal Claims. But a "pending" action does not become a "non-pending" action merely because the parties fail to bring it to the attention of the Court of Federal Claims, or that court fails to rule on a motion to dismiss. See *Hill* v. *United States*, 8 Cl. Ct. 382, 385-386 (1985) ("words 'shall not' are an absolute bar depriving this court of any discretion, whatsoever, when duplicative claims are filed").[4]

---

[4] This Court's prior decisions construing the predecessor of 28 U.S.C. 1500, Section 154 of the Judicial Code, consistently have adhered to the plain language of the statute. In *Corona Coal Co.* v. *United States*, 263 U.S. 537 (1924), the Court of Claims dismissed the plaintiff's action, and the plaintiff took an appeal to this Court. After the Court of Claims entered judgment, the plaintiff brought separate actions in the district court "because [the actions] were about to become barred by expiration of the statutory period of limitation." 263 U.S. at 540. This Court held that Section 154 required dismissal of the appeal. It concluded that "the words of the statute are plain," and therefore the Court is "not at liberty to add an exception in order to remove apparent hardship in particular cases." *Ibid.* See also *Ex parte Skinner & Eddy Corp.*, 265 U.S. 86, 95 (1924) (where the Court of Claims grants the plaintiff's motion to dismiss, and the plaintiff then brings a suit in state court "on substantially the same causes of action," Section 154 "necessarily prevent[s] the [plaintiff] from suing on those claims in the Court of Claims, and exclude[s] its jurisdiction of them"); *Matson Navigation Co.* v. *United States*, 284 U.S. 352 (1932) (plain language of Section 154 inapplicable if simultaneous action is against the United States rather than a federal official). In 1948, Section 154 was amended to apply to multiple actions against the United States. See p. 20, *infra*.



**B. The Purpose Of Section 1500 Is To Bar Plaintiffs From Suing The United States Or Its Agents In The Court Of Federal Claims And Another Court**

1. The legislative history of 28 U.S.C. 1500 confirms that Congress intended to bar simultaneous litigation of a dispute in the Court of Federal Claims and another court. During the Civil War, the government seized property in the Confederate States pursuant to the Captured and Abandoned Property Act of 1863, ch. 120, 12 Stat. 820. Persons claiming ownership of property seized under that Act were permitted to bring an action against the United States in the Court of Claims to recover any proceeds from the sale of the property, but were required to prove that they had not given any aid or comfort to the rebellion. § 3, 12 Stat. 820. The "cotton claimants" (so called because most of the claims were for seized cotton) not only brought a large number of actions against the United States in the Court of Claims, but also brought parallel tort actions against federal officials in other courts. See Pet. App. A7; David Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 Geo. L.J. 573, 575-576 (1967).

Congress enacted the original version of Section 1500, Section 8 of the Act of June 25, 1868, ch. 71, 15 Stat. 77, to put an end to this dual litigation. Section 8 provided:

> *And be it further enacted*, That no person shall file or prosecute any claim or suit in the court of claims, or an appeal therefrom, for or in respect to which he or any assignee of his shall have commenced and has pending any suit or process in any other court against any officer or person who, at the time of the cause of action * * * arose, was in respect thereto acting or professing to act, mediately or immediately, under the authority of the United States, unless such suit or process, if now pending in such other court, shall be withdrawn or dismissed within thirty days after the passage of this act.

Act of June 25, 1868, ch. 71, § 8, 15 Stat. 77.[5]

Senator Edmunds, the sponsor of the legislation, explained its purpose:

> The object of this amendment is to put to their election that large class of persons having cotton claims particularly, who have sued the Secretary of the Treasury and the other agents of the Government in more than a hundred suits that are now pending, scattered over the country here and there, and who are here at the same time endeavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims. The object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts. I am sure everybody will agree to that.

Cong. Globe, 40th Cong., 2d Sess. 2769 (1868). The stated purpose of Section 8 was thus to require plaintiffs to make an election between a suit in the Court of Claims and one brought in another court against an agent of the government. *Ibid.*

Section 8 was incorporated into the Revised Statutes of 1874 with minor changes that were not intended to alter its meaning. See 2 Cong. Rec. 129 (1873) (statement of Rep. Butler).[6] It was later reenacted without change as Section 154 of the Judicial Code of 1911. Act of Mar. 3, 1911, ch. 231, § 154, 36 Stat. 1138. Congress reenacted the statute as Section 1500 of the Judicial Code of 1948. See Act of June 25, 1948, ch. 646, 62 Stat. 942. The 1948 legislation (1) deleted the phrase "or in the Supreme

[5] The text of Section 8, as passed by both the Senate and the House of Representatives, provided that "no person shall file or prosecute any claim or suit in the Court of Claims, or on appeal therefrom, for or in respect to which he * * * shall have commenced and has pending, *or shall commence and have pending*, any suit or process in any other court" against a federal official. Cong. Globe, 40th Cong., 2d Sess. 2769 (1868) (statement of Sen. Edmunds); *id.* at 3269 (emphasis added); Journal of the Senate, 40th Cong., 2d Sess. 445 (1868). The enrolled version of the bill omitted the highlighted clause. There is no recorded explanation of the omission. Pet. App. A8-A9 n.1, A19.



[6] The 1874 statute provided:

> No person shall file or prosecute in the Court of Claims, or in the Supreme Court on appeal therefrom, any claim for or in respect to which he or any assignee of his has pending in any other court any suit or process against any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, mediately or immediately, under the authority of the United States.

Revised Statutes, Title 13, ch. 21, § 1067, 18 Stat. 197 (1874).

Court on appeal therefrom" as unnecessary; (2) added the phrase "against the United States" in order to bar simultaneous actions against the United States as well as actions against federal officials; and (3) replaced the phrase "No person shall file or prosecute" with "The Court of Claims shall not have jurisdiction of" to make clear that Section 1500 is a jurisdictional statute. See Reviser's Notes, 28 U.S.C. 1500, at 1862 (1948).

2. We do not contend that Section 1500 must be interpreted to bar successive litigation—only simultaneous litigation. It is true, as petitioner recognizes (Pet. Br. 31), that Senator Edmunds' statement indicates that Section 8 was intended to advance not only "a general policy seeking to protect the Government against the burdens of multiple

[7] In 1982, Congress passed legislation substituting the new Claims Court for the old Court of Claims. See Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 96 Stat. 40. Most recently, in 1992, Congress passed legislation substituting "Court of Federal Claims" for "Claims Court." See note 1, *supra*.

A bill entitled the "Court of Federal Claims Technical and Procedural Improvements Act of 1992," introduced by Senator Heflin on April 2, 1992, would have repealed Section 1500. See S. 2521, 102d Cong., 2d Sess. § 10(c) (1992); 138 Cong. Rec. S4830-S4832 (daily ed. Apr. 2, 1992). On April 29, 1992, six days after the court of appeals issued its en banc decision in this case, the Senate Committee on the Judiciary held hearings on the proposed legislation. See 138 Cong. Rec. D465 (daily ed. Apr. 29, 1992). As ultimately enacted, the Court of Federal Claims Technical and Procedural Improvements Act of 1992 amended Section 1500 by substituting the "Court of Federal Claims" for the "Claims Court," but did not repeal or otherwise modify the statute. See Pub. L. No. 102-572, §§ 901-911, 106 Stat. 4516-4520.



simultaneous litigation," but also to "preclud[e] * * * a second adjudication after a first decision on the merits." By its terms, however, the statute applies only if the plaintiff "*has pending* any suit or process in any other court." 15 Stat. 77 (emphasis added). The language of the statute thus does not preclude a second adjudication if the first action is no longer "pending." See p. 16, *supra*.

**C. Section 1500 Is Not Limited To Legal Theories That Must Be Litigated In A Single Action Under Principles Of Claim Preclusion**

1. In its brief on the merits, petitioner argues (Pet. Br. 18-32) that Section 1500 applies only if principles of claim preclusion would require the plaintiff to present all its legal theories in a single action. Petitioner contends (Pet. Br. 18-19) that the word "claim" in Section 1500 is "naturally read as referring to the law of claim preclusion," and that "[t]he statute should be read to deem a claim in one case 'for or in respect to [the claim]' in another only when ordinary claim-splitting preclusion principles would say that they should (and, therefore, could) be brought together if they were both brought against the United States." That argument was not presented to the courts below or in the petition for certiorari.[8] In any event, it is incorrect.

[8] The questions presented in the petition for certiorari (which focused on the meaning of the statutory phrase "has pending" rather than the definition of the term "claim") bear little resemblance to the questions presented in petitioner's brief on the merits. Compare Pet. i with Pet. Br. i. A brief on the merits "may not raise additional questions or change the substance of the questions already presented in [the petition]." Sup. Ct. R. 24.1(a).

Contrary to petitioner's contention, the term "any claim" in Section 1500 is most naturally read not as a veiled reference to the law of claim preclusion, but simply as a reference to any claim for relief in the Court of Federal Claims. Moreover, petitioner's argument ignores the statutory language that immediately follows the term "any claim." Under Section 1500, the Court of Federal Claims lacks jurisdiction over "any claim for *or in respect to which* the plaintiff * * * has pending any suit or process in any other court" (emphasis added). As we have explained, see pp. 15-16, *supra*, a claim is "in respect to" a suit or process if it "relates to" or is "concerned with" the suit. Accordingly, the proper jurisdictional inquiry under Section 1500 is not whether the plaintiff is pursuing one or several legal theories—let alone whether principles of claim preclusion would permit or require him to pursue all his theories in a single action—but simply whether the plaintiff's claim is *related* to other litigation that he has pending in another court. The court of appeals' definition of a claim as including all legal "theories that arise from the same operative facts," Pet. App. A20, is consistent with this statutory language.

Even if petitioner were justified in looking to principles of claim preclusion, a "claim" for preclusion purposes consists of "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1) (1982). A "transaction" refers to "a natural grouping or common nucleus of operative fact. * * * That a number of different legal theories casting liability



on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories * * * would call for different measures of liability or different kinds of relief." *Id.* comments b and c. That is precisely the approach followed by the court of appeals in *Johns-Manville Corp.* v. *United States*, 855 F.2d 1563 (Fed. Cir. 1988), and reaffirmed in this case. See Pet. App. A19. Applying that definition of "claim," petitioner's tort actions were not only actions "respecting" petitioner's claims in the Court of Federal Claims, but were actions on the very same claim.[9]

2. Petitioner relies not on the definition of "claim" for purposes of claim preclusion, but on an exception to the general rule of preclusion that applies if "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts." Restatement (Second) of Judgments § 26(1)(c) & comment c (1982). There is no basis in the language or history of Section 1500 for applying that exception to permit simultaneous litigation in the Court of Federal Claims and other courts.

Petitioner's proposed construction of Section 1500 would almost never prevent a plaintiff from litigat-

[9] Petitioner's attempt to link Section 1500 to principles of claim preclusion is misguided for another reason as well. The law of claim and issue preclusion governs the preclusive effect of judgments. See Restatement (Second) of Judgments ch. 1, at 1 (1982). In the absence of a judgment, principles of claim and issue preclusion are not concerned with simultaneous litigation of a dispute in different courts.

ing a dispute with the United States in two courts at once. The Court of Federal Claims has no jurisdiction to decide claims under the Federal Tort Claims Act, and the district courts have no jurisdiction to decide claims under the Tucker Act if the amount sought by the plaintiff is greater than $10,000. See 28 U.S.C. 1346(a), 1491. Consequently, petitioner's construction of Section 1500 would allow any plaintiff seeking more than $10,000 to litigate against the United States in district court under a tort theory while simultaneously litigating the very same set of facts, and seeking the very same relief, under a contract or taking theory in the Court of Federal Claims. Indeed, petitioner's construction of the statute would have allowed the cotton claimants to maintain simultaneous actions against the United States and federal officials. Because the cotton claimants themselves were pursuing different legal theories that could not be asserted together in one court, Section 1500 should not be read to reach only actions involving identical legal theories, or actions that can all be brought in the same court.[10]

[10] Petitioner's contention (Pet. Br. 32) that its interpretation of Section 1500 would have prevented the cotton claimants from suing in two courts at once is unconvincing. No court had jurisdiction to decide both the cotton claimants' statutory claims against the United States and their tort claims against federal officials. See *Johns-Manville*, 855 F.2d at 1561. Petitioner asserts that principles of claim preclusion would have required plaintiffs to bring statutory claims and tort claims *against the United States* in a single suit. But as petitioner recognizes (Pet. Br. 32), *no* court had jurisdiction to entertain tort claims against the United States in 1868. Petitioner's assertion thus rests on an unsupported assumption that *if* the cotton claimants had been permitted to pursue tort claims against the United States in



3. Petitioner is wrong in asserting (Pet. Br. 22) that "it was the clear law in the Court of Claims that Section 1500 did not apply where two claims could not both be brought in the same court." In fact, petitioner's proposed construction of Section 1500 goes well beyond any of the judicial exceptions to the statute that were overruled by the court of appeals.

a. The court of appeals reaffirmed the principle that Section 1500 applies when two actions arise out of a single "set of underlying facts." Pet. App. A19. See *Johns-Manville Corp.*, 855 F.2d at 1563 (for purposes of Section 1500, "claim" is "defined by the operative facts alleged, not the legal theories raised"); *Los Angeles Shipbuilding & Drydock Corp.* v. *United States*, 138 Ct. Cl. 648, 652 (1957); *National Cored Forgings Co.* v. *United States*, 132 Ct. Cl. 11, 19-20 (1955); *British American Tobacco Co.* v. *United States*, 89 Ct. Cl. 438, 440 (1931), cert. denied, 310 U.S. 627 (1940). Because petitioner's proposed construction of Section 1500 was not settled law—and, indeed, is contrary to it—it does not "deserve respect under the doctrine of *stare decisis*." Pet. Br. 22.[11]

1868, they would have been permitted to do so in the Court of Claims. Even assuming that such claims could have been brought together, it is far from clear that principles of claim preclusion would have barred separate actions. "Although the 'same evidence' standard was '[o]ne of the tests' used at the time, *The Haytian Republic*, 154 U.S. 118, 125 (1894), it was not the only one." See *Nevada* v. *United States*, 463 U.S. 110, 130-131 n.12 (1983).

[11] For the same reason, there is no basis for presuming that Congress was aware of petitioner's proposed construction or intended to adopt it when it amended Section 1500 in 1982 to substitute the Claims Court for the Court of Claims. See *Lorillard* v. *Pons*, 434 U.S. 575, 580-581 (1978). Indeed,

There is also no basis for petitioner's suggestion (Pet. Br. 24) that the court of appeals' definition of "claim" should be rejected because it is too vague or difficult to apply. The court of appeals' definition applies not only in the context of Section 1500, but in a variety of other contexts as well. See, *e.g.*, *United Mine Workers* v. *Gibbs*, 383 U.S. 715, 725 (1966) (pendent jurisdiction over nonfederal claims that "derive from a common nucleus of operative fact"); *Maher* v. *Gagne*, 448 U.S. 122, 132-133 n.15 (1980) (attorney's fees available under 42 U.S.C. 1988 for claims arising out of a "common nucleus of operative fact"); Restatement (Second) of Judgments § 24(1) (1982) (claim preclusion).

b. In *Casman* v. *United States*, 135 Ct. Cl. 647 (1956), the court created an exception to Section 1500 that applied when a plaintiff sought damages in the Court of Federal Claims and equitable relief in another court. The plaintiff in *Casman* was a former federal employee who sought reinstatement in the district court and back pay in the Court of Claims. The Court of Claims concluded that Section 1500 should not be construed to bar simultaneous litigation when (1) the remedy sought in the district court is "entirely different" from that sought in the Court of Claims, and (2) the Court of Claims has no judisdiction to award the type of relief sought in the district court. 135 Ct. Cl. at 649-650. See also *Johns-Manville*, 855 F.2d at 1566-1567 (*Casman* exception

to the extent that such arguments have weight, Congress's recent amendment of Section 1500 following the court of appeals' en banc decision, and its failure to enact a proposal to repeal Section 1500, undermines petitioner's position. See note 7, *supra*.



does not apply where plaintiff is seeking monetary relief from both courts); *Boston Five Cents Savings Bank* v. *United States*, 864 F.2d 137, 139 (Fed. Cir. 1988) (*Casman* limited to situations where "different types of relief are sought"); *Pitt River Home & Agricultural Coop. Assoc.*, 215 Ct. Cl. 959, 961 (1977) (inquiry under *Casman* is whether the plaintiff is "seeking the same relief" in the Court of Claims as in the district court); *Nonella* v. *United States*, 16 Cl. Ct. 290, 293 (1989) (*Casman* exception is "limited" to "where the plaintiff seeks substantially different relief in each forum"); *Hill* v. *United States*, 8 Cl. Ct. at 387-388 (the *Casman* exception does not apply where plaintiff seeks monetary relief in both the district court and the Claims Court, even if she also seeks declaratory relief in the district court).[12]

The *Casman* exception does not apply in this case. See Pet. App. D20; Alaska Br. 23; Cheyenne-Arapaho Tribes Br. 6. The relief sought in petitioner's district court actions was not "entirely different" from

[12] In addition to *Casman*, petitioner cites two brief orders of the Court of Claims in support of its assertion that it was "clear law" that Section 1500 did not apply whenever two claims could not be brought in the same court. Pet. Br. 22 (citing *Allied Materials & Equipment Co.* v. *United States*, 210 Ct. Cl. 714 (1976), and *Prillman* v. *United States*, 220 Ct. Cl. 677 (1979)). The facts of *Prillman* were similar to those of *Casman*—a discharged federal employee sought both reinstatement and back pay in excess of $10,000. And although *Allied Materials* read *Casman* to apply when a plaintiff cannot "combine all its claims" in a single court, 210 Ct. Cl. at 716, that reading is contrary to the overwhelming weight of authority limiting *Casman* to situations in which the plaintiff sought different forms of relief.

the relief it sought in the Court of Federal Claims. 135 Ct. Cl. at 650. On the contrary, petitioners' actions in the district courts and its actions in the Court of Federal Claims sought precisely the same type of relief—damages for injuries caused by workers' exposure to asbestos. Consequently, the Court need not address the validity of the *Casman* exception in this case.

In any event, the court of appeals correctly concluded that *Casman* is inconsistent with the language and purpose of Section 1500. A suit seeking equitable relief rather than damages is nevertheless a "suit or process." And a claim for damages plainly is a claim "with respect to" a suit for injunctive relief based on the same set of facts. As a leading commentator has observed, "*Casman* is one of several major decisions under section 1500 in which the Court of Claims has overridden the words of the section in favor of a result it deemed desirable." See Schwartz, 55 Geo. L.J. at 587-588. But where "the words of the statute are plain," the courts are "not at liberty to add an exception in order to remove apparent hardship." *Corona Coal*, 263 U.S. at 540.[13]

[13] In 1982, Congress eliminated the problem that concerned the court in *Casman*. Federal employees are now permitted to seek both back pay and reinstatement in a single action in the Court of Federal Claims. See 28 U.S.C. 1491(a)(2).



**D. Section 1500 Does Not Permit A Plaintiff To Engage In Simultaneous Litigation Against the United States As Long As The Second Action Is Terminated Before The Court Of Federal Claims Rules On A Motion To Dismiss**

Petitioner also contends (Pet. Br. 33-42) that Section 1500 does not prevent a plaintiff from maintaining simultaneous actions in the Court of Federal Claims and another court as long as the plaintiff dismisses (or otherwise terminates) the second action before the Court of Federal Claims rules on a motion to dismiss for want of jurisdiction. As petitioner concedes (Pet. Br. 33), its position is contrary to the rule that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) (citing *Smith* v. *Sperling*, 354 U.S. 91, 93 n.1 (1957)). It is also inconsistent with the language and purpose of Section 1500.

1. By its terms, Section 1500 deprives the Court of Federal Claims of subject matter jurisdiction if the plaintiff "has pending" another action. Pet. App. A16. A "pending" action is not transformed into a "non-pending" action merely because the parties fail to bring the existence of the action to the attention of the Court of Federal Claims, or that court fails to rule on a motion to dismiss. If the related action is no longer pending, Section 1500 does not prevent the plaintiff from bringing an action in the Court of Federal Claims. But the fact that an action in another court has ended does not imply that the Court of Federal Claims had jurisdiction while the other action was pending.

Our reading of Section 1500 is confirmed by the original statutory language, which provided that "no person shall file or prosecute any claim * * * for or in respect to which he * * * has pending any suit or process in any other court." 15 Stat. 77. That language plainly barred a plaintiff from filing or litigating an action in the Court of Claims while a related action was pending. In 1948, Congress replaced the phrase "no person shall file or prosecute" with the phrase "[t]he United States Court of Claims shall not have jurisdiction of." That change of "phraseology," see Reviser's Notes, 28 U.S.C. 1500, at 1862 (1948); H.R. Rep. No. 308, 80th Cong., 1st Sess. A140 (1947), merely recognized that the statute is jurisdictional in nature. See *Ex parte Skinner & Eddy Corp.*, 265 U.S. at 95. There is thus no basis for concluding that the 1948 amendments authorized plaintiffs to engage in simultaneous litigation. See *Fourco Glass Co.* v. *Transmirra Prods. Corp.*, 353 U.S. 222, 227 (1957) (no change in the law should be presumed from the 1948 revision of the Judicial Code "unless an intent to make such changes is clearly expressed").[14]

[14] There is no merit to petitioner's argument (Pet. Br. 34) that the phrase "shall not have jurisdiction" in Section 1500 should be construed to mean "shall not have jurisdiction to render judgment." To be sure, other provisions of Title 28 that *confer* jurisdiction on the Court of Federal Claims use the phrase "shall have jurisdiction to render judgment." See, *e.g.*, 28 U.S.C. 1491(a)(1), 1496, 1497, 1499, 1503. But Congress used the phrase "shall not have jurisdiction" in other provisions that *limit* the jurisdiction of the Court of Federal Claims. See 28 U.S.C. 1501, 1502. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally assumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello* v. *United States*, 464 U.S. 16, 23 (1983). The obvious meaning of the phrase "shall not have jurisdiction" is that the Court of Federal Claims lacks jurisdiction to hear or render judgment on the claim. Cf. 28 U.S.C. 1508 ("The Court of Federal Claims shall have jurisdiction to hear and to render judgment upon any petition under section 6226 or 6228(a) of the Internal Revenue Code of 1954.").



2. Petitioner's proposed construction would permit plaintiffs to litigate simultaneously in the Court of Federal Claims and a district court as long as they were careful to terminate the district court litigation before the Court of Federal Claims ruled on a motion to dismiss for lack of jurisdiction. That rule would not prevent—and, indeed, would encourage—dual simultaneous litigation against the government. Because of the minimal requirements of notice pleading under the Federal Rules of Civil Procedure, the government might not learn until well into the litigation that a complaint filed in a district court involved the same dispute as a complaint filed in the Court of Federal Claims. The government's ability to identify related actions would be further limited by the sheer volume of civil litigation against the United States, and by the difficulties of coordinating the government's many litigating components, including the various divisions of the Department of Justice, the 94 United States Attorneys' Offices, and numerous federal agencies.

Petitioner's proposed rule "would foster just the type of occurrence which section 1500 was enacted to prevent, i.e., the maintaining of two suits against the

United States on the same claims and at the same time in two different courts." *Wessel, Duval & Co.* v. *United States*, 129 Ct. Cl. 464, 465 (1954). In contrast, the court of appeals' construction furthers the statutory purpose of preventing dual simultaneous litigation. The plaintiff is in the best position to determine whether it is litigating the same dispute in two different forums. If plaintiffs know that the Court of Federal Claims will be required to dismiss their action if they pursue simultaneous litigation in another court, Section 1500 will be largely self-policing.

3. Section 1500 imposes a limitation on the subject matter jurisdiction of the Court of Federal Claims. It is well established that such limitations cannot be waived by the parties or the court; it is the court's duty to police its own jurisdictional boundaries. See *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Mansfield, Coldwater & Lake Michigan Ry.* v. *Swan*, 111 U.S. 379, 383 (1884). Petitioner would disregard that fundamental principle by treating Section 1500 as a "free floating jurisdictional bar that attaches only when the government files a motion to dismiss or, worse, when the court gets around to acting on it." Pet. App. A16. See also *id.* at D26. Similarly, petitioner's contention (Pet. Br. 35-36) that the Court of Federal Claims should be permitted to overlook defects in its subject matter jurisdiction is inconsistent with the principle that a federal court has no discretion to empower itself to act where Congress has chosen to deprive it of subject matter jurisdiction. See *Christianson* v. *Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988); *De La Rama S.S. Co.* v. *United States*, 344 U.S. 386, 390 (1953). See also



*Torres* v. *Oakland Scavenger Co.*, 487 U.S. 312, 317 n.3 (1988) ("litigant's failure to clear a jurisdictional hurdle can never be 'harmless' or waived by a court").

*Newman-Green* v. *Alfonzo-Larrain*, 490 U.S. 826 (1989), does not support petitioner's argument. In that diversity case, the Court held that a court of appeals has authority to grant a motion to dismiss a dispensable nondiverse party without remanding to the district court. The Court found a "source of authority" for that action in Fed. R. Civ. P. 21. 490 U.S. at 832. There is no analogous source of authority that would permit the Court of Federal Claims to disregard the jurisdictional bar of Section 1500. In *Newman-Green*, moreover, the Court emphasized that the authority to dismiss a nondiverse party should be exercised only after careful consideration of whether dismissal "will prejudice any of the parties in the litigation." 490 U.S. at 837-838. When a plaintiff disregards the clear command of Section 1500, the government is prejudiced by having to defend itself in two courts at the same time. Cf. *Hallstrom* v. *Tillamook County*, 493 U.S. 20, 26-31 (1989) (declining to give "flexible" construction to clear statutory precondition to suit).[15]

---

[15] Petitioner also contends (Pet. Br. 37) that its proposed construction of Section 1500 is analogous to the rule that equitable tolling of statutes of limitations is available in suits against the United States unless Congress has expressed a contrary intent. See *Irwin* v. *Veterans Admin.*, 111 S. Ct. 453, 457 (1990). In Section 1500, however, Congress clearly provided that the Court of Federal claims "shall not have jurisdiction of any claim * * * in respect to which" the plaintiff has another action pending.

*Weinberger* v. *Salfi*, 422 U.S. 749 (1975), and *Mathews* v. *Eldridge*, 424 U.S. 319 (1976), are inapposite. Those cases

4. Petitioner contends (Pet. Br. 38-39) that its construction was adopted in *Brown* v. *United States*, 358 F.2d 1002 (Ct. Cl. 1966), and therefore is entitled to respect under principles of *stare decisis*. But the holding of *Brown* is more circumscribed than petitioner suggests; has no application to the facts at issue; and is, in any event, inconsistent with Section 1500.

a. In *Brown*, a widow and her children pursued takings claims for more than $10,000 simultaneously in the Court of Claims and a district court. *Brown*, 358 F.2d at 1004-1005. The district court dismissed the action for want of jurisdiction. See 28 U.S.C. 1346(a)(2), 1491. The Court of Claims concluded that Section 1500 did not require it to dismiss plaintiff's action. The court expressly distinguished several of its prior decisions holding that Section 1500 barred the Claims Court action on the ground that the district court clearly had jurisdiction of the claims in those cases. 358 F.2d at 1005 (citing *British American Tobacco*, 89 Ct. Cl. at 441; *Wessel, Duval & Co.*, 129 Ct. Cl. at 465; *Los Angeles Shipbuilding & Drydock Corp.* v. *United States*, 138 Ct. Cl. at 652 (1957)). See also *Hossein* v. *United States*, 218 Ct. Cl. 727, 729 (1978) (declining to dismiss contract claim for $250,000 because district court lacked subject matter jurisdiction). The *Brown* exception

concerned "the requirement of a 'final decision' contained in [42 U.S.C.] 405(g)," a requirement that "is not precisely analogous to * * * more classical jurisdictional requirements" because "[t]he term 'final decision' is not only left undefined by the Act but its meaning is left to the Secretary to flesh out by regulation." 422 U.S. at 766. Here, in contrast, the language of Section 1500 is clear.



therefore applied only when a plaintiff filed its claims in a court that clearly lacked subject matter jurisdiction.[16]

Petitioner, accordingly, cannot excuse its simultaneous litigation in multiple forums by invoking the *Brown* exception. The district courts clearly had jurisdiction over petitioner's tort claims. See 28 U.S.C. 1346(b) (vesting the district courts with exclusive jurisdiction over tort claims against the United States). Petitioner does not contend otherwise.

b. In any event, the court of appeals correctly held that *Brown* fundamentally misconstrued the language and purpose of Section 1500. The jurisdictional bar of Section 1500 "is not conditioned upon the question of whether the District Court had jurisdiction of the claim asserted by plaintiff therein." See *Frantz Equip. Co.* v. *United States*, 120 Ct. Cl. 312, 314 (1951). Rather, the language of Section 1500 provides that the Court of Federal Claims shall not have jurisdiction if there is a related "suit or process" in

[16] It follows that petitioner's proposed construction is not entitled to *stare decisis* effect, and there is no basis for its argument that Congress may be presumed to have implicitly enacted it into law when it amended Section 1500 in 1982. See p. 25 & note 11, *supra*.

Petitioner also relies (Pet. Br. 35 n.18) on this Court's decision in *Pennsylvania R.R.* v. *United States*, 363 U.S. 202 (1960), for the proposition that the jurisdictional bar of Section 1500 may be waived. In that case, the Court simply noted that the Court of Claims had denied a motion to dismiss under 28 U.S.C. 1500, and "its action * * * is not challenged here." 363 U.S. at 204. That remark hardly can be read as a considered determination that the parties may waive the requirements of Section 1500.

another court. A suit or process in which it is determined that the court lacks jurisdiction is nevertheless a "suit or process." [17]

### E. The Jurisdictional Bar Of Section 1500 Does Not Depend On The Order In Which A Plaintiff's Actions Are Filed

In its petition for certiorari, petitioners' principal argument (Pet. 9-12) was that the court of appeals erred in overruling *Tecon Engineers, Inc.* v. *United States*, 343 F.2d 943 (Ct. Cl. 1965), cert. denied, 382 U.S. 976 (1966). *Tecon* held that Section 1500 does not apply if the plaintiff files an action in the Court of Federal Claims before it files a related action in another court. See 343 F.2d at 946, 949. In its brief on the merits, petitioner appears to abandon its *Tecon* argument.[18] In any event, *Tecon* does not provide a basis for jurisdiction over petitioner's claims.

1. The *Tecon* exception, like the *Casman* and *Brown* exceptions, would not apply in this case. When petitioner filed its first action in the Court of

[17] In 1982, Congress solved the problem addressed in *Brown* by enacting 28 U.S.C. 1631. Section 1631 provides that whenever a federal court finds that it lacks jurisdiction in a civil action, it may transfer the action to any other court in which the action could have been brought, "and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." See Pet. App. A17 (recognizing that *Brown* exception is no longer necessary).

[18] See Robert L. Stern, Eugene Gressman & Stephen M. Shapiro, *Supreme Court Practice* § 13.8 (6th ed. 1986) ("A question set forth in a petition * * * will be considered abandoned if not reiterated and argued in the brief on the merits once review has been granted.").



Federal Claims, it had a third party complaint against the United States pending in the *Miller* litigation in Pennsylvania. And when petitioner filed its second action in the Court of Claims, it had an omnibus tort action against the United States pending in the Southern District of New York. See pp. 3-5, *supra*.

2. In any event, the court of appeals correctly rejected *Tecon*. Section 1500 provides that the Court of Federal Claims lacks jurisdiction over "any claim * * * in respect to which the plaintiff * * * has pending in any other court any suit or process." 28 U.S.C. 1500. Contrary to that clear statutory command, *Tecon* allowed the Court of Federal Claims to exercise jurisdiction even though a related action was pending in another court. As the court of appeals explained, "[a] case filed subsequent to a [Court of Federal Claims] complaint is clearly a 'pending * * * suit or process.'" Pet. App. A18.

That conclusion is confirmed by the original language of the statute, which provided that "no person shall file *or prosecute* any claim * * * for or in respect to which he * * * has pending any suit or process in any other court." 15 Stat. 77 (emphasis added). In addition, the original version of the statute allowed plaintiffs with actions pending in the Court of Claims 30 days to withdraw or dismiss suits "*now pending* in such other court." See 15 Stat. 77 (1868) (emphasis added). That provision was not limited to actions in other courts filed before the action in the Court of Claims.

The *Tecon* court erroneously relied on the fact that Senator Edmunds's bill barred litigation in the Court of Claims "for or in respect to" actions which the plaintiff "shall have commenced and has pending, *or*

*shall commence and have pending.*" Cong. Globe, 40th Cong., 2d Sess. 2769 (1868) (emphasis added). The court of appeals correctly declined to attribute any significance to the omission of the highlighted phrase from the statute. As the Court explained:

> Aside from the fact that there is no indication why section 8, as enacted, did not include this language, its deletion did not change the plain meaning of the statute.

Pet. App. A19. See note 5, *supra.*

3. *Tecon* allowed plaintiffs to engage in simultaneous litigation against the United States as long as the plaintiff took the simple precaution of filing first in the Court of Federal Claims. See 343 F.2d at 946, 949. The *Tecon* "exception" thus swallowed the rule of Section 1500. As a leading commentator has observed, "Section 1500 does not belong on the books if, as the result in *Tecon* would indicate, it may readily be evaded by the informed, and remains a trap only for those unfamiliar." Schwartz, *supra*, 55 Geo. L.J. at 597.

*Tecon* also conflicted with this Court's decision in *Corona Coal Co.* v. *United States.* In that case, the Court of Claims action was filed well before the district court action. See 263 U.S. at 539. The Court nevertheless held that the case "f[e]ll within the terms of the statute," and declined to create any exception that would remove the apparent hardship created by the statute of limitations. *Id.* at 540.[19]

[19] As the court of appeals noted, "[t]he facts underlying *Tecon* probably explain the court's desire to retain jurisdiction." Pet. App. A13. Tecon sued the United States in the Court of Claims seeking to recover taxes that it alleged had been erroneously collected. See *Tecon,* 343 F.2d at 944



**F. The Courts Are Not Free To Disregard Clear Statutory Language To Avoid Harsh Results, And Section 1500 Is Not As Harsh As Petitioner And Its Amici Suggest**

Petitioner contends (Pet. Br. 24-28) that the court of appeals' construction of 28 U.S.C. 1500 must be rejected because it is "out of harmony with the relevant legal landscape" and produces harsh results. Pet. Br. 25. The short answer to those contentions is that the courts "are not at liberty to add an exception [to clear statutory language] in order to remove apparent hardship." *Corona Coal Co.* v. *United States*, 263 U.S. at 540.

In any event, a statute barring simultaneous litigation of a single dispute with the government in multiple forums reflects a reasonable policy of discouraging wasteful and duplicative litigation in order to conserve public resources. That policy is far from outmoded. As the court of appeals observed:

> [A] prohibition against suing the government simultaneously in multiple forums, and the likely inability to sue the government twice successively, are even more salutary in this day of excessive litigation than they were back in the Civil War era whence section 1500 comes.

n.1. "After much discovery, several pretrial conferences, and several trial postponements, [Tecon] filed the same claims in a district court and then moved the Court of Claims to dismiss * * * under section 1500." Pet. App. A13. The government—and the Court of Claims—viewed plaintiff's effort to divest the Court of Claims of jurisdiction by filing a second suit as unacceptable conduct. Although the government supported the result in *Tecon* at the time, further experience with Section 1500 has led us to conclude that the conduct in *Tecon* should be addressed by imposing sanctions for abuse of process and vexatious litigation. See, *e.g.*, Fed. R. Civ. P. 11; 28 U.S.C. 1927.

Pet. App. A14-A15. Because it is easy to file a complaint in a civil lawsuit, and expensive to defend such suits, the court of appeals correctly observed that there is "no harm in requiring a party to carefully assess his claims before filing and choose the forum best suited to the merits of the claims and the applicable statute of limitations." *Id.* at A14.

Moreover, petitioner and its *amici* dramatically overstate the harshness of the statute. As an initial matter, many plaintiffs can obtain complete relief by bringing a single action against the United States.[20] If a plaintiff litigates what it perceives to be its best legal theory to a judgment on the merits and loses, it may well decide not to pursue its second-best legal theory in another court. If a plaintiff neverthelss wishes to pursue a second action, Congress has provided a relatively generous limitations period of six years for claims under the Tucker Act. See 28 U.S.C. 2501. In all but the most complex and protracted cases, it should be possible for a diligent plaintiff to complete litigation in another court and, if necessary, file an action in the Court of Federal Claims within the limitations period. We believe that these rules

[20] As noted above, Congress has eliminated certain specific hardships created by Section 1500. The hardship in *Brown* was eliminated by 28 U.S.C. 1631, which allows a federal court that lacks jurisdiction over a plaintiff's claims to transfer the claim to a court with jurisdiction. The case then proceeds as if it had been filed in the proper court. The hardship in *Casman* was eliminated by an amendment to 28 U.S.C. 1491 (a) (2) that permits a federal employee to seek both back pay and reinstatement in the Court of Federal Claims. In addition, Congress has provided that a plaintiff may bring certain contract and "takings" claims together with tort claims in the district court. See 28 U.S.C. 1346 (a) (2) (Little Tucker Act).



seldom will cause unwarranted hardship for plaintiffs. If such cases arise, however, equitable tolling of the statute of limitations may be available in some circumstances. See pp. 43-44, *infra*.

## II. THE DOCTRINES OF NON-RETROACTIVITY AND EQUITABLE TOLLING DO NOT APPLY IN THIS CASE

### A. Non-Retroactivity Is Inappropriate In This Case

Petitioner contends (Pet. Br. 43-45) that even if the court of appeals' decision is correct, it should be made "pure[ly] prospective." Pure prospectivity is inappropriate in this case, for several reasons.

1. Section 1500 limits the subject matter jurisdiction of the Court of Federal Claims. This Court has held on more than one occasion that "[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." *Budinich* v. *Becton Dickinson & Co.*, 486 U.S. 196, 203 (1988), quoting *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368, 379-380 (1981). See also *Torres* v. *Oakland Scavenger Co.*, 487 U.S. at 317 n.3 (a court has no authority to waive a jurisdictional defect).[21]

Petitioner asserts (Pet. Br. 44) that this principle is inapplicable because the Court of Federal Claims

[21] In *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 87-89 (1982), the Court held that its decision would apply only prospectively. In *Marathon*, the question was not whether the federal courts had exceeded a congressional grant of jurisdiction, but whether a congressional grant of jurisdiction was unconstitutional. The Court's opinion did not consider the argument that a jurisdictional holding cannot be made merely prospective.

has jurisdiction to decide "this type of case" (*i.e.*, Tucker Act claims), while cases such as *Budinich* and *Firestone* were "wholly outside any grant of power to the court" and therefore the court "was effectively acting *ultra vires*.." But there is no meaningful distinction between this case, on the one hand, and *Budinich* and *Firestone* on the other. *Budinich* and *Firestone* were diversity actions; there was no question that the court had jurisdiction to decide that "type" of case. In *Budinich*, the court lacked jurisdiction because the petitioner failed to file a timely notice of appeal. And in *Firestone*, the court lacked jurisdiction because there was no final order. If the court lacked discretion to overlook the jurisdictional defects in those cases, it plainly lacks discretion to overlook the jurisdictional bar of 28 U.S.C. 1500.[22]

2. In any event, there is no basis for petitioner's suggestion that the decision in this case should not apply *to petitioner*. As an initial matter, a judicial decision that does not apply to the parties before the Court is in considerable tension with the "settled principle that this Court adjudicates only 'cases' and 'controversies.'" *Griffith* v. *Kentucky*, 479 U.S. 314, 322 (1987), quoting U.S. Const. Art. III, § 2. See *James B. Beam Distilling Co.* v. *Georgia*, 111 S. Ct. 2439, 2448 (1991) (opinion of Souter, J.) (declining to "speculate as to the bounds or propriety of pure

[22] Petitioner's prospectivity argument is not supported by the rule that a final judgment in a contested action may not be collaterally attacked on the ground that the court lacked subject matter jurisdiction absent a "manifest abuse of authority" by the court. Restatement (Second) of Judgments § 12 (1982). That rule reflects principles of finality and repose in litigation that are not at issue here.



prospectivity"); see also *id.* at 2450 (opinion of Blackmun, J.) ("prospectivity, whether 'selective' or 'pure,' breaches [Court's] obligation to discharge [its] constitutional function"); *id.* at 2451 (opinion of Scalia, J.) ("both 'selective prospectivity' and 'pure prospectivity' [are] beyond [Court's] power").

Even if the three-part test of *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 106-107 (1971), were applicable in this case, petitioner would not be entitled to any relief. Although the court of appeals' decision overruled several judicial exceptions to Section 1500, none of those exceptions applied to petitioner's situation, let alone supplied a "clear past precedent" for petitioner's multiple simultaneous lawsuits against the United States. Indeed, the trial court dismissed petitioner's claims without breaking any new legal ground. Pet. App. E18-E26.

### B. Equitable Tolling Is Inappropriate In This Case

Finally, petitioner contends (Pet. Br. 45-47) that the doctrine of equitable tolling should be applied to permit the Court of Federal Claims to exercise jurisdiction over its claims. Petitioner did not raise that issue in the courts below, and it was not considered by those courts. Accordingly, the Court should adhere to its usual practice and decline to address an issue not properly raised or decided in the courts below.

In any event, petitioner is not entitled to equitable tolling of the statute of limitations. In *Irwin* v. *Veterans Admin.*, 111 S. Ct. 453, 457 (1990), the Court held that the rebuttable presumption that equitable tolling is permissible in suits against private defendants also applies to suits against the United States. The Court noted that Congress "may provide otherwise if it wishes to do so." *Ibid.* We do not

contend that Section 1500 precludes equitable tolling of a statute of limitations in all circumstances.[23]

In *Irwin*, the Court emphasized that "[f]ederal courts have typically extended equitable relief only sparingly," in cases "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 111 S. Ct. at 457-458. The Federal Circuit has been particularly reluctant to grant equitable tolling of the six-year limitations period under the Tucker Act. See *Catawaba Indian Tribe of South Carolina* v. *United States*, No. 92-5018 (Fed. Cir. Jan. 6, 1993), slip op. 15 ("[p]laintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence, or it must show that its injury was 'inherently unknowable' at the accrual date") (quoting *Japanese War Notes Claimants Ass'n* v. *United States*, 373 F.2d 356, 358-359 (Ct. Cl.), cert. denied, 389 U.S. 971 (1967)).[24]

[23] In practice, it is possible that the interaction between the original version of Section 1500 and statutes of limitations prevented the cotton claimants from pursuing a second adjudication on the merits. Their claims were subject to a two-year limitations period. See *Johns-Manville Corp.* v. *United States*, 855 F.2d at 1561 n.7; *Mitchell* v. *Clark*, 110 U.S. 633 (1884) (two-year limitations period applied to actions against federal officials for seizure of property during the Civil War). By the time a cotton claimant completed an adjudication on the merits in one court, the statute of limitations may have barred a second action.

[24] That judicial reluctance is warranted in part because Congress exercises authority to grant equitable relief by enacting private bills. Under its congressional reference authority, Congress refers proposed legislation to the Court of Federal Claims for findings of fact, "including facts bearing upon the question whether the bar of any statute of limitation should be removed." 28 U.S.C. 2509(c). See also 28 U.S.C. 1492. One of the categories of relief provided by private legislation is waivers of statutes of limitations. See Note, *Private Bills in Congress*, 79 Harv. L. Rev. 1684, 1695-1696 (1966). Because Congress has an established method for granting equitable relief from statutes of limitations, the Court of Federal Claims is properly reluctant to grant such relief on its own.



Here, petitioner has not contended that the government tricked it into allowing a filing deadline to pass. On the contrary, petitioner filed multiple actions prior to the filing deadline. Nor can petitioner argue that it is entitled to relief because it "actively pursued [its] judicial remedies" by filing not one but several lawsuits in different courts.[25] Equitable tolling certainly should not be available to a plaintiff—like petitioner—who consciously disregards Section 1500 by engaging in simultaneous litigation in the Court of Federal Claims and another court. Petitioner engaged in a campaign of simultaneous litigation seeking essentially identical relief based on essentially identical facts—the government's alleged responsibility for injuries to workers exposed to asbestos while working in naval shipyards or on government contracts. Indeed, petitioner litigated identical takings claims simultaneously in the district court and the Court of Federal Claims. See pp. 3-5, *supra*.

[25] As explained above, petitioner's simultaneous litigation would not have been permitted under any of the judicial exceptions to Section 1500 that were overruled by the court of appeals. Instead, petitioner is arguing for a dramatic expansion of those exceptions.

Petitioner chose to subject the government to multiple lawsuits despite a known risk that its actions in the Court of Federal Claims could be dismissed under Section 1500 as a result. Having made that choice, petitioner cannot convincingly maintain that equitable principles require relief in this Tucker Act case.

## CONCLUSION

The judgment of the court of appeals should be affirmed.

Respectfully submitted.

WILLIAM C. BRYSON
*Acting Solicitor General*

STUART M. GERSON
*Assistant Attorney General*

MAUREEN E. MAHONEY
*Deputy Solicitor General*

ROBERT A. LONG, JR.
*Assistant to the Solicitor General*

BARBARA C. BIDDLE
ROBERT M. LOEB
*Attorneys*

JANUARY 1993

☆ U. S. GOVERNMENT PRINTING OFFICE; 1993 342479 60145