IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-cv-00936L<br>Judge Thomas C. Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF <u>SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1500</u>**

Plaintiff the United Keetoowah Band of Cherokee Indians in Oklahoma (the "Keetoowah Cherokees" or the "Tribe") herein responds to Defendant's Motion to Dismiss For Lack of Subject Matter Jurisdiction Under 28 U.S.C. §1500 [Docket No. 19].

Respectfully submitted this 18th day of August 2008.

James C. McMillin, OBA #17206
Michael D. McClintock, OBA #18105
McAFEE & TAFT
A PROFESSIONAL CORPORATION
10th Floor, Two Leadership Square
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439

COUNSEL FOR PLAINTIFF

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. STATEMENT OF THE CASE ..... 3

A. The Keetoowah Cherokees Filed this Action Before Filing the Complaint in District Court ..... 3

B. The CFC Complaint and the District Court Complaint Allege Different Claims Involving Different Operative Facts and Different Relief ..... 5

III. ARGUMENT ..... 7

A. Section 1500 Requires This Court to Determine Which Complaint Was First Filed ..... 7

B. The United States' Reliance on UNR and *Passamaquoddy* Is Misplaced ..... 9

C. Dismissal Under Section 1500 Is Improper Unless the CFC and District Court Complaints Present the "Same Claim" that Arises from the "Same Operative Facts" and Seeks the "Same Relief" ..... 12

1. "Operative Facts" Under Section 1500 do not Include Background Facts ..... 13

2. The Keetoowah Cherokees' Claims in the District Court for an Equitable Accounting Arise From Different Breach of Trust and Different Operative Facts Than Does its Claim for Monetary Damages as a Result of Mismanagement of Funds Brought in this Court ..... 14

3. The Keetoowah Cherokees Seek Different Relief in the District Court Than it does in This Court ..... 15

CONCLUSION ..... 19

CERTIFICATE OF SERVICE ..... 20

ATTACHMENTS

Exhibit "A", Email from Donna Hinkle to James McMillin, Michael McClintock, Vanessa Brown (12/29/2006) ..... 4

Exhibit "B", Email from Donna Hinkle to James McMillin (12/29/2006) ..... 4

Exhibit "C", Email from Donna Hinkle to Michael McClintock, Vanessa Brown (12/29/2006) ..... 4

Exhibit “D”, Mapquest directions from Oklahoma City to Muskogee, OK ....................................... 4

Exhibit “E”, Email from Donna Hinkle to James McMillin, Michael McClintock, Vanessa Brown (12/29/2006) ............................................................................................................................ 4

**TABLE OF AUTHORITIES**

d'Abrera v. United States, 78 Fed. Cl. 51 (2007) ....................7, 14

Am. Indians Residing on the Maricopa Ak-Chin Reservation v. United States, 229 Ct. Cl. 167, 667 F.2d 980 (1981).................... 7,8, 9, 17

Breneman v. United States, 57 Fed. Cl. 571 (2003) .................... 7,8, 9

Casman v. United States, 135 Ct. Cl. 647 (1956).................... 3, 16

Cherokee Nation v. United States, 21 Cl. Ct. 565 (1990).................... 17

Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001).................... 5

Cooke v. United States, 77 Fed. Cl. 173 (2007) ....................3, 14

Eastern Shawnee v. United States, 82 Fed. Cl. 322 (2008) ....................15

Fire-Trol Holdings, LLC v. United States, 65 Fed. Cl. 32 (2005)....................14

Harbuck v. United States, 378 F.3d 1324 (Fed. Cir. 2004) ....................8

Hardwick Bros. Co. II v. United States, 72 F.3d 883 (Fed. Cir. 1995) ....................7, 9

Heritage Minerals, Inc. v. United States, 71 Fed. Cl. 710 (2006)....................13, 14

Johns-Mannville Corp. v. United States, 855 F.2d 1556(Fed. Cir. 1988) ....................12, 15

Keene Corp. v. United States, 508 U.S. 200 (1993)....................7, 10, 13, 15

Kidwell v. Dep't of the Army, 56 F.3d 279 (D.C. Cir. 1995) ....................18

Klamath & Modoc Tribes & Yahooskin Band of Snake Indians v. United States, 174 Ct. Cl. 483 (1966)....................17

Loveladies Harbor v. United States, 27 F.3d 1545 (Fed. Cir. 1994) ............2, 7, 12, 13, 15, 16, 19

Lucas v. United States, 25 Cl. Ct. 298 (1992) ....................14

Manke Lunber Co. v. United States, 44 Fed. Cl. 219 (1999) ....................12

McIntosh v. Antonio, 71 F.3d 29 (1st Cir. 1995) ....................4

Osage Nation v. United States, 57 Fed. Cl. 392 (2003)....................16

Passamaquoddy Tribe v. United States, 82 Fed. Cl. 256 (2008) ....................................8, 9, 10, 11

The Salt River Pina-Maricopa Indian Community v. United States, 2008 WL 1883170 (Fed. Cl. Apr. 24, 2008) ....................................................................................................................8, 9

Stockton East Water Dist. v. United States, 62 Cl. Ct. 379 (2004) ................................................8

Tecon Eng'rs, Inc. v. United States, 343 F.2d 943 (Ct. Cl. 1965)...........................................9, 11

Tootle v. Sec'y of the Navy, 446 F.3d 167 (D.C. Cir. 2006).......................................................18

Torras Herreria y Construcciones v. M/V Timur Star, 803 F.2d 215 (6th Cir. 1986) .....................4

United States v. County of Cook, 170 F.3d 1084 (Fed. Cir. 1999) ................................................9

United States v. Mitchell, 463 U.S. 206 (1983)...............................................................6, 16

Williams v. United States, 71 Fed. Cl. 194.........................................................................14

**UNITED STATES CODE**

28 U.S.C. § 1631.............................................................................................................. 8, 9

28 U.S.C. § 1500.............................................................................................................. passim

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-cv-00936L Judge Thomas C. Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1500**

## I. Introduction

28 U.S.C. § 1500 ("Section 1500") is not a jurisdictional bar to this case, because no complaint was pending in another district court when the Complaint in this action was filed. The evidence clearly demonstrates that the Complaint in this Court was filed on December 29, 2006 via mail, having been mailed from the Keetoowah Cherokees' counsel's office in Oklahoma City on December 28, 2006 and received and filed in this Court the morning of December 29, 2006. Late that afternoon, the Keetoowah Cherokees filed a complaint in the Eastern District of Oklahoma. The courier service did not leave the Keetoowah Cherokees' counsel's office in Oklahoma City for the more than two-hour trek to Muskogee, Oklahoma to file the complaint in District Court until after confirmation had been received that the Complaint was filed in this Court. The timing issue is dispositive. Thus, this Court need not address the "same claim" or "same relief" issues.

In the event the Court considers the issues that go beyond the dispositive timing issue, the Motion to Dismiss still should be denied. The Federal Circuit has clearly instructed, "to be

precluded from hearing a claim under § 1500, the claim pending in another court must arise from the **same operative facts**, and must seek **the same relief**." Loveladies Harbor v. United States, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc). Both requirements must be satisfied to invoke Section 1500, yet neither are satisfied in this case.

First, the claims in the District Court arise from **different** operative facts involving the breach of a **different** trust duty from the claims raised in this Court. In the District Court, the Keetoowah Cherokees seek to compel the United States to provide a complete, accurate, and adequate accounting of all the property it holds in trust for the benefit of the Keetoowah Cherokees. The facts that will be operative to establishing that breach of trust include decades of inaction on the part of the United States to fulfill this core duty and the United States' failure to maintain adequate records of the Keetoowah Cherokees' trust assets so that the Tribe may ascertain the true state of its assets. In contrast, in this Court, the Keetoowah Cherokees will set out to prove distinct breaches of trust in the management of the Keetoowah Cherokees' trust funds and non-monetary trust assets. The operative facts in this suit, then, includes for example, loss of investment funds as a result of the United States' breach of its fiduciary duty to maximize trust income by prudent investment and the failure of the United States to obtain fair and reasonable compensation for the use of the Keetoowah Cherokee's assets. Certainly, background facts will overlap because the breaches of duties to be proved in each case arise from the trust relationship that the United States owes the Keetoowah Cherokees, but an overlap in background facts does not render the two claims the "same" for purposes of Section 1500. See, e.g., Cooke v. United States, 77 Fed. Cl. 173, 177-78 (2007); Casman v. United States, 135 Ct. Cl. 647 (1956).

Section 1500, likewise, does not bar this Court's jurisdiction for the independent reason that the Keetwooah Cherokees seeks **distinct** relief in the two actions and, as a matter of law, simply cannot obtain the same relief in both courts. The Keetoowah Cherokees seeks (and are entitled to) strictly equitable relief in the District Court and only money damages in this Court. In the District Court, the Keetoowah Cherokees ask for the equitable remedies available in that court for breach of a duty to account (i.e., a declaration that the United States has failed to fulfill its trust duties and an injunction directing the United States to fulfill said duties). It cannot, however, obtain money damages from District Court to compensate the Keetoowah Cherokees for losses resulting from imprudent investment or mismanagement of trust assets. Monetary damages is only available in this Court.

In sum, Section 1500 is not a bar to the Keetoowah Cherokees' claims herein because the Tribe did not have a claim pending in the District Court at the time that it filed this action and, in any event, Keetoowah Cherokees' claims in District Court neither arise from the same operative facts nor entitle it to the same relief as is sought in this Court. For these reasons, the Court should deny the United States' Motion to Dismiss.

## II. Statement of the Case

### A. The Keetoowah Cherokees Filed this Action Before Filing the Complaint in District Court.

On December 29, 2006, the Keetoowah Cherokees filed two different complaints: one in this Court (the "CFC Complaint") and, later, one in the District Court for the Eastern District of Oklahoma (the "District Court Complaint"), both against the United States and the Secretaries of the Interior and Treasury. Emails exchanged between the paralegal and the attorneys working on preparation and filing of the two complaints clearly demonstrate that the CFC Complaint was first filed and, particularly demonstrate as follows:

- **<u>Exhibit "A"</u>** – Email from Donna Hinkle (the paralegal) to three attorneys, dated December 29, 2006 at 12:01 PM (CST), demonstrates that the CFC Complaint was sent via Federal Express from the Oklahoma City office of the Keetoowah Cherokees' counsel on December 28, 2006 and was **<u>confirmed received and filed in this Court no later than 12:01 PM (CST)</u>**.

- **<u>Exhibit "B"</u>** – Email from the paralegal to James McMillin (the partner in charge of this matter), dated December 29, 2006 at 9:19 AM (CST), asking: "Are we filing another case in the Eastern District today? If so, please remember **<u>I need to get a courier service lined up to hand-deliver it and they must leave from here no later than 1pm</u>**.

- **<u>Exhibit "C"</u>** – Email from the paralegal to two attorneys working on the matter, dated December 29, 2006 at 9:54 AM (CST), advising them to put the "correct name" of the Keetoowah Cherokees on the pleading. This demonstrates that the Complaint was not completed for filing as of 9:54 AM (CST).

- **<u>Exhibit "D"</u>** – Mapquest direction showing distance and travel time from the Oklahoma City office of the Keetoowah Cherokees' counsel to the office of the Clerk of the District Court in Muskogee, Oklahoma, showing that it takes approximately 2 hours and 15 minutes to travel the route.

- **<u>Exhibit "E"</u>** – Email from the paralegal to the three attorneys working on the matter, dated December 29, 2006 at 4:09 PM (CST), advising: "**<u>I just confirmed that our complaint was filed in the Eastern District today</u>**."

The Complaint was filed in this Court by having sent the Complaint via Federal Express. When sent via a mail service, filing occurs upon receipt by the clerk, and is deemed to have occurred when the document is placed in the post office box of the clerk. <u>McIntosh v. Antonio</u>, 71 F.3d 29, 36 (1st Cir. 1995); <u>Torras Herreria y Construcciones v. M/V Timur Star</u>, 803 F.2d 215, 216 (6th Cir. 1986). Thus, the CFC Complaint is deemed filed prior to 12:01 PM (CST).

The evidence set forth above clearly demonstrates that the District Court Complaint could not have been filed prior to the CFC Complaint. The CFC Complaint was confirmed filed no later than 12:01 PM (CST) and would have been deemed filed prior thereto upon receipt in the clerk's mailbox; the paralegal did not have in her hand at 9:54 AM (CST) the completed District Court Complaint (let alone having made all requisite copies thereof); it takes in excess of two

hours to travel from counsel's Oklahoma City office to the clerk's office in Muskogee, Oklahoma; and the District Court Complaint was not confirmed filed until 4:09 PM (CST). Thus, the CFC Complaint was first filed.

**B. The CFC Complaint and the District Court Complaint Allege Different Claims Involving Different Operative Facts and Different Relief.**

Although both the CFC Complaint and the District Court Complaint arise from the trust relationship between the Keetoowah Cherokees and the United States and the failure of the United States to fulfill various trust obligations, the two complaints allege different claims that will involve different operative facts relating to different breaches of trust and entitle the Keetoowah Cherokees to different forms of relief.

The District Court Complaint involves the equitable jurisdiction of the District Court to request a complete, accurate and adequate accounting of all property held in trust by the United States for a tribe's benefit.[1] See Cobell v. Norton, 240 F.3d 1081, 1103 (D.C. Cir. 2001) (Cobell VI) (the accounting obligation requires, inter alia, an accounting report that "contain[s] sufficient information for [a tribe] readily to ascertain whether the trust has been fully carried out") (citation omitted). The United States' repeated breaches of its fiduciary obligations with respect to Indian trust assets, now widely recognized by the courts and Congress, make an accounting necessary to ascertain the true state of the Keetoowah Cherokees' trust assets.

[1] Unfortunately, the Keetoowah Cherokees must admit that the two complaints as filed on December 29, 2006, are not as "clean" as they would desire them to be today. Given that they, in large part, were cut and pasted from the same document, language carries from one complaint to another that, in hindsight, should not appear therein. For instance, the District Court Complaint includes references to monetary damages that should not appear therein. Dist. Ct. Comp. at ¶¶ 1, 23, and Prayer ¶4. The district court is unable to grant monetary relief on the claims asserted in the District Court Complaint, thus the references thereto should not have appeared therein. For the Complaint filed herein, any references to equitable relief, including declaratory and injunctive relief should have been omitted. CFC Compl. at ¶ 1. The issue herein, however, should not be the now-realized inartful pleading, but should focus instead on the relief each court is empowered to grant.

Count One of the District Court Complaint request a declaration that (a) "the United States owes the Keetoowah Cherokees the duties of a trustee at common law, including the duty to provide the Keetoowah Cherokees with an accounting of trust assets at regular intervals"; and (b) "the United States has failed to fulfill its common law duties of trustee, including the duty to provide the Keetoowah Cherokees with an accounting of trust assets at regular intervals." See Dist. Ct. Compl. at ¶ 22. Count Two seeks an injunction "requiring the United States to fulfill its trust responsibilities to the Keetoowah Cherokees, including providing the Keetoowah Cherokees with historical accounting of all Keetoowah Cherokees' tribal trust assets." Id. at ¶ 26.

The equitable relief sought in district court is designed to address the United States' trust obligations to account for the Keetoowah Cherokees' trust assets, but it cannot remedy the past breaches of duty prudently to invest money held in trust funds or to obtain the highest and best use of trust assets. Establishing the breach of those latter duties involves different operative facts and leads to but one remedy: monetary damages.

For this reason, the Keetoowah Cherokees filed a Complaint for money damages in this Court to redress specific breaches of statutory, regulatory, and fiduciary duties in the management of the Keetoowah Cherokees' trust funds and non-monetary trust assets. These duties, as the Supreme Court has recognized, are "money-mandating" and their breach may be remedied by an award of money damages in the Court of Federal Claims. See United States v. Mitchell, 463 U.S. 206, 228 (1983) ("Mitchell II").

The CFC Complaint alleges one count for breach of the trust duties owed the Keetoowah Cherokees. That count specifically alleges, "The United States has failed to fulfill its trust duties by failing, among other things, to provide the Keetoowah Cherokees with an accounting of the

tribal trust assets at regular intervals [and] . . . also failed to fulfill its trust duties . . . by failing to properly collect, deposit, and invest funds deriving from such tribal assets." CFC Comp. ¶ 21. The only relief requested from this Court is monetary damages as a result of "the United States' breach of its fiduciary duties to the tribe." Id. at ¶ 22 and Prayer ¶ 1.

## III. Argument

### A. Section 1500 Requires This Court to Determine Which Complaint Was First Filed.

Section 1500 provides that this Court shall not have jurisdiction "of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit . . . against the United States." 28 U.S.C. § 1500. The Court's jurisdiction is established at the time a complaint is filed. Keene Corp. v. United States, 508 U.S. 200, 207 (1993) (quoting Mollan v. Torrance, 9 Wheat. 537, 539 (1924) (Marshall, C.J.)); Hardwick Bros. Co. II v. United States, 72 F.3d 883, 886 (Fed. Cir. 1995); Loveladies, 27 F.3d at 1548; Breneman v. United States, 57 Fed. Cl. 571, 577 (2003), aff'd 97 Fed. Appx. 329 (Fed. Cir. 2004), cert. denied 543 U.S. 1021 (2004). Where, as here, a complaint was filed in this Court on the same day that a complaint was filed in another court, this Court must determine which of the two cases was first filed. Breneman, 57 Fed. Cl. at 575; Ak-Chin Indian Community v. United States, 80 F3d. Cl. 305, 308 (2008). In the event this Court finds this case first filed, the United States' Motion to Dismiss should be denied on that ground alone (d'Abrera v. United States, 78 Fed. Cl. 51, 56 n.9 (2007)) and "the court need not address the 'same claim' issue because the timing issue is dispositive of this court's jurisdiction." Breneman, 57 Fed. Cl. at 575; Accord Ak-Chin, 80 Fed. Cl. at 313.

The United States argues that the Keetoowah Cherokees' December 29, 2006 filings in this Court and in the District Court should be treated as per se simultaneous for purposes of Section 1500 regardless of which was actually first filed. This interpretation disregards the

express language of the statute, which applies only if another action was "pending" at the time the Complaint in this action was filed.

The United States contends that the intent of Section 1500 is "to protect the United States from litigating the same claim in two courts" such that "it would seem extraordinary for a plaintiff to frustrate Congress' intent merely by filing the District Court case hours, minutes, or even seconds, after the CFC Complaint was filed." M. to Dis. at 8. This argument, however, ignores at least 40 years of legal precedent and urges the court to adopt a per se rule that same-day filings automatically deprive this Court of jurisdiction under Section 1500. Notwithstanding the June 19, 2008 decision in Passamaquoddy Tribe v. United States, 82 Fed. Cl. 256 (2008), this Court consistently has ruled that the United States' same-day argument is without legal support. Breneman, 57 Fed. C. at 577; Ak-Chin, 80 Fed. Cl. at 308 n. 4; The Salt River Pina-Maricopa Indian Community v. United States, 2008 WL 1883170, *18 (Fed. Cl. Apr. 24, 2008).

In support of its argument for a per se rule that this Court lacks jurisdiction over same-day filings, the United States cites two cases involving transfers to this Court from a federal district court pursuant to 28 U.S.C. § 1631. United States v. County of Cook, 170 F.3d 1084 (Fed. Cir. 1999); Harbuck v. United States, 378 F.3d 1324 (Fed. Cir. 2004). Both cases, however, are simply inapposite here because Section 1631 is intended to cure a lack of jurisdiction in the transferor court and to avoid a statute-of-limitation dismissal in the transferee court. See, e.g., Stockton East Water Dist. v. United States, 62 Cl. Ct. 379, 389 (2004) ("no question is present that the filing date for the purposes of Tucker Act's six-year statute of limitations, is the date on which the action was filed in district court") (citing Henke v. United States, 60 F.3d 795, 800 (Fed. Cir. 1995)). To accomplish those ends, Section 1631 provides that the transferred case "shall proceed as if it had been filed in or noticed for the court to which

it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred." 28 U.S.C. § 1631. The only reason for a same-day provision in Section 1631 is to avoid what might otherwise be a jurisdictional defect in the transferee court.

Under Section 1500, even when the complaints at issue were filed on the same day, this Court must first determine which was filed first in order to determine whether there is a jurisdictional bar. Breneman, 57 Fed. Cl. at 575; Ak-Chin, 80 Fed Cl. at 308; Salt River, 2008 WL 1883170, at *5. The former appellate division of this Court analyzed the language and legislative history of Section 1500 and concluded: "[T]he statute . . . **serves to deprive this court of jurisdiction . . . only when the suit shall have been commenced in the other court before the claim was filed in this court.**" Tecon Eng'rs, Inc. v. United States, 343 F.2d 943, 949 (Ct. Cl. 1965), cert. denied 382 U.S. 976 (1966) (emphasis added). The United States acknowledges that Tecon is still good law. M. to Dis. at 12 (citing Hardwick, 72 F.3d at 886).

Thus, in determining whether Section 1500 applies, this Court must first determine which complaint was first filed. The timing issue is dispositive; if the Court of Federal Claims complaint was filed first, this Court need not address the same-claim issue. Breneman, 57 Fed. Cl. at 575; Accord Ak-Chin, 80 Fed. Cl. at 313.

### B. The United States' Reliance on *UNR* and *Passamaquoddy* Is Misplaced.

Despite acknowledging that "the Federal Circuit and the Court of Claims have never applied the Tecon exception to same-day filings" (M. to Dis. at 13), the United States goes to great length to argue that same-day filings automatically deprive this Court of jurisdiction pursuant to Section 1500. M. to Dis. at 14 - 19. The United States relies on Passamaquoddy to support its argument for a per se rule that same-day filings are barred by Section 1500, and it relies on UNR for its argument that even later-filed cases in another court bar this Court's jurisdiction. The United States' arguments are misplaced. UNR was immediately overruled by

the United States Supreme Court in Keene, and the Passamaquoddy court acknowledged that "the Federal Circuit has ruled that this court must not engage in a de novo interpretation of § 1500; rather, it should carefully follow the binding precedent in this circuit as to the meaning of the relevant statutory terms." Passamaquoddy, 82 Fed. Cl. at 261-62. It nonetheless engaged in a de novo interpretation of Section 1500 and held contrary to binding precedent.

The United States argues in this regard that "Congress cannot have intended the absurd effect of forcing the parties and this Court to spend time and money on evidentiary proceedings to investigate the precise moments a plaintiff filed each complaint." M. to Dis. at 18-19. The United States is able to make this argument only by ignoring the facts of this case. This is not a case that will take considerable time and money to uncover the order of the filings. The documentary evidence presented herein, consisting of email communications on the day the complaints were filed, clearly establishes that the CFC Complaint was filed prior to the District Court Complaint. Indeed, it is likely that the CFC Complaint in this action was filed before the District Court Complaint even left counsel's Oklahoma City office to be filed in Muskogee, Oklahoma (a 2-hour distance drive). In addition, even when complaints are filed on different days, some amount of evidence, such as copies of the file-stamped complaints, is necessary to establish the respective filing dates. In this case, the evidence on the timing issue is no more complicated than that.

This is a clear distinction from the questionable evidence the court in Passamaquoddy faced. Passamaquoddy, 82 Fed. Cl. at 278 (noting "self-contradictory versions" of paralegal's testimony and that much of her testimony "is supposition as to what could have happened, and not refreshed memory" and "much of what she now remembers is quite likely her recreation of what could have happened, rather than a recitation of vividly remembered details of what

happened months before"). Because the court in Passamaquoddy could not determine with certainty which complaint was first filed, it deemed the complaints simultaneous filings. In contrast, the Keetoowah Cherokees can establish with certainty that the CFC Complaint was first filed, approximately four hours prior to the District Court Complaint.

The United States argues that the "straightforward, plain language of § 1500 divests this Court of jurisdiction whenever a plaintiff attempts to maintain overlapping claims in this and another court, regardless of whether the plaintiff filed its complaint in the other court before, simultaneously, or after it filed its complaint in this Court." M. to Dis. at 8. The only way that the "has pending" language of Section 1500 makes any legal, or logical, sense is to construe it as the Tecon Court did. In other words, Section 1500 deprives this Court of jurisdiction "only when the suit shall have been commenced in the other court before the claim was filed in this court." Tecon, 343 F.2d at 949.

In addition, the Tecon construction is consistent with standard English grammar. The verb "has pending" is a present participle, which "conveys the same meaning" as the present perfect tense and "indicates action that was started in the past and has recently been completed or is continuing up to the present time." William A. Sabin, The Gregg Reference Manual, §§ 1033, 1034, pp. 221-22 (7th Ed. 1994). The Tecon construction also is consistent with the definition of the verb "to file" which means to "deliver a legal document to the court clerk or record custodian for placement into the official record." Black's Law Dictionary, (7th Ed. 1999).

The Court must determine whether a claim is pending in another court at the time a complaint is filed here, even if the complaints are filed on the same day. The tortured interpretation that the United States urges this Court to adopt is not consistent with more than 40 years of controlling legal precedent, nor is it consistent with standard English grammar.

### C. Dismissal Under Section 1500 Is Improper Unless the CFC and District Court Complaints Present the "Same Claim" that Arises from the "Same Operative Facts" and Seeks the "Same Relief."

Section 1500's purpose is to "prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." Johns-Mannville Corp. v. United States, 855 F.2d 1556, 1562 (Fed. Cir. 1988). It is well-settled in the Federal Circuit that "[f]or the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from **the same operative facts** and must seek **the same relief**." Loveladies, 27 F.3d at 1551 (emphasis in original). Simply put, "if either is missing, § 1500 does not apply." Manke Lunber Co. v. United States, 44 Fed. Cl. 219, 222 (1999). Here, both requirements are missing and, therefore, dismissal is improper.

The Federal Circuit has warned that the jurisdictional bar of Section 1500 must be construed narrowly in order to guarantee litigants an opportunity to vindicate all of their claims and to avoid being forced to forgo some claims in favor of others:

> Because this nation relies in significant degree on litigation to control the excesses to which Government may from time to time be prone, it would not be sound policy to force plaintiffs to forego monetary claims in order to challenge the validity of Government action, or to preclude challenges to the validity of Government action in order to protect a Constitutional claim for compensation.

Loveladies, 27 F.3d at 1555-56. The en banc Federal Circuit noted that Section 1500 was enacted to protect the United States from duplicate claims for money damages "at a time when res judicata principles did not provide the Governmnet with protection against such 'duplicative lawsuits.'" Id. at 1566 (quoting Keene, 508 U.S. at 206). Recognizing that Section 1500 has outlived the narrow purpose for which it was enacted, the en banc court cautioned that "[w]hatever the viability remains in § 1500, absent a clear expression of Congressional intent we

ought not extend the statute to allow the Government to foreclose non-duplicative suits, and to deny remedies the Constitution and statutes otherwise provide." Id.

Accordingly, Section 1500 should not be extended to foreclose the Keetoowah Cherokees' statutory right to money damages arising from breaches of money-mandating duties merely because it also seeks in the District Court the separate relief of an equitable accounting based upon different operative facts and involving different trust duties.

**1. "Operative facts" under Section 1500 do not include background facts.**

The term "operative facts" does not include every fact alleged in a complaint and, instead, requires some link between the fact and the elements of the claim to be proven:

> Despite its lineage, it can be argued that there is a basic epistemological difficulty with the notion of legally operative facts independent of a legal theory. Insofar as a fact is 'operative' – i.e., relevant to a judicially imposed remedy – it is necessarily associated with an underlying legal theory, that is, the cause of action. For example, without legal underpinning, words in a contract are no different from casual correspondence.

Loveladies, 27 F.3d at 1551 n. 17.

It is settled that "claims involving the same general factual circumstances, but distinct material facts can fail to trigger section 1500." Heritage Minerals, Inc. v. United States, 71 Fed. Cl. 710, 716 (2006) (quoting Branch v. United States, 29 Fed. Cl. 606, 609 (1993)). "While claims may be supported by some common operative facts, § 1500 is not implicated where the material facts supporting each claim [are] characterized as largely dissimilar." Id. Thus, the "fact that two claims share the same factual background is insufficient to divest this Court of jurisdiction when there is a material difference between the operative facts relevant to each claim." Cooke, 77 Fed. Cl. at 178; see also Fire-Trol Holdings, LLC v. United States, 65 Fed.

Cl. 32, 34 (2005) ("merely background" facts are "not operative facts directly giving rise to the claims pled").

Under this legal standard, this Court has repeatedly and consistently concluded that claims involving similar background facts, but different operative facts, did not implicate Section 1500's bar. See, e.g., d'Abrera, 78 Fed. Cl. at 58 (claims did not arise from same operative facts despite shared general factual background); Cooke, 77 Fed. Cl. at 177-78 (same); Fire-Trol, 65 Fed. Cl. at 34-35 ("merely background"); Heritage Minerals, 71 Fed. Cl. at 715; Williams v. United States, 71 Fed. Cl. 194, 199-200 (though "[m]any of the factual allegations . . . match," found claims arose from different operative facts); Lucas v. United States, 25 Cl. Ct. 298, 305 (1992) (claims involved different operative facts though they had some common general facts).

**2. The Keetoowah Cherokees' claims in the District Court for an equitable accounting arise from different breach of trust and different operative facts than does its claim for monetary damages as a result of mismanagement of funds brought in this Court.**

The United States contends that "[n]early all of the factual allegations in the two Complaints are absolutely identical" with the "basic trust [sic] of these allegations [being] that the United States, as trustee, breached fiduciary duties owed to Plaintiff." M. to Dismiss at 23. Certainly, there are similarities between the two complaints, but that similarity is not the dispositive issue. Although each case involves the trust relationship between the United States and the Keetoowah Cherokees, what is legally controlling is that the duties specifically at issue in each and the facts underlying the breaches of those duties are distinct.

Section II.B., supra, draws the factual distinctions between the two cases and demonstrates that the same operative facts to not govern the two cases. In sum, the operative facts necessary to the claims for money damages sought in this Court are different from the facts needed to complete and present the equitable accounting claim in the District Court. This

reflects that the trust duties in the two cases are different – the accounting obligation and other duties at issue in the District Court are not the same trust duties as the money-mandating duties that support the Keetoowah Cherokees' claim her in this Court.

The United States relies heavily on the recent dismissal of the Complaint under Section 1500 in Eastern Shawnee v. United States, 82 Fed. Cl. 322 (2008), where the court there found that the two complains were "basically different manifestations of the same underlying claims. While it is true that if this court were to follow Eastern Shawnee, it likewise would find the Keetoowah Cherokees' claims in the two complaints overlap, the tribe in Eastern Shawnee has appealed the dismissal. The law on this point is not settled. Before blindly following Eastern Shawnee, the Keetoowah Cherokees would urge the Court to first consider the result on appeal.

**3. The Keetoowah Cherokees seek different relief in the District Court than it does in this Court.**

The Section 1500 Motion should further be denied because the District Court Complaint and the CFC Complaint seek "distinctly different types of relief in the two courts." Loveladies, 27 F.ed at 1554 (quoting Keene, 508 U.S. at 216); see also Johns-Manville, 855 F.2d at 1566 (Section 1500 does not apply where "a different type of relief is sought in the district court (equitable) from that sought in the Court of [Federal] Claims (money).").

In Loveladies, a plaintiff property owner sought complimentary, but different, relief in two different courts according to the jurisdiction of each court to award that relief. In the Court of Federal Claims, the plaintiff sought money damages for denial of a wetlands development permit; by contrast, in the district court, the plaintiff sought equitable relief in the form of a challenge to the denial of the permit itself. The Federal Circuit held that Section 1500 did not apply because the plaintiff sought different relief in each court. Loveladies, 27 F.3d 1545; see



3586034_1.DOC

also Casman, 135 Ct. Cl. at 647 (equitable relief for reinstatement found different from claim for back pay).

Like Loveladies, the Keetoowah Cherokees seeks strictly equitable relief in the District Court and strictly money damages from this Court. Thus, the Keetoowah Cherokees has tailored the relief it seeks in each court to the relief that the court has the jurisdictional power to award. As the en banc court in Loveladies noted: "using differing relief as a characteristic for distinguishing claims was especially appropriate here because the Court of Federal Claims and its predecessors . . . could not grant the kinds of general equitable relief the district courts could, even in cases over which they otherwise have subject-matter jurisdiction." 27 F.3d at 1550. This court has jurisdiction over the Keetoowah Cherokees' claim for money damages for past violations of the United States' trust obligations in the management of Indian property. See Mitchell II, 463 U.S. at 228.

The United States contends that the Keetoowah Cherokees' claim for monetary relief in this Court will require an accounting, creating an impermissible overlap with the Oklahoma district court action.[2] M. to Dis. at 26-28. The Keetoowah Cherokees, however, cannot obtain declaratory relief here or compel the United States to comply with its duty to provide a general accounting of its trust assets. See, e.g., Osage Nation v. United States, 57 Fed. Cl. 392, 393 n. 2 (2003) ("this court does not have jurisdiction over claims for a pre-liability accounting or for

[2] That United States' contention also belies the fact that the United States knows that it almost certainly would be impossible for the United States to provide such an accounting to the Keetoowah Cherokees as a result of this action in Federal Claims Court. In ruling on a request for an accounting of individual Indian trust accounts, a federal district court recently heard ten days of testimony regarding whether the United States was even capable of producing an accounting of those funds and, ultimately, concluded that "completion of the required accounting is an impossible task." Cordell v. Kempthorne, Case No. 1:96-cv-01285-JF, Findings of Fact and Conclusions of Law, entered Jan. 30, 2008, pp. 3, 161. In reaching that conclusion, the Corbell court found that "[a]fter decades of neglect, it is impossible to imagine that all documents necessary to perform a complete historical accounting are presently accessible to the Interior." Id. at 22, 156.

declaratory relief"); Cherokee Nation v. United States, 21 Cl. Ct. 565, 582 (1990) ("Until plaintiff establishes the liability of defendant, an accounting action takes the form of an independent equitable action beyond the jurisdiction of this court."); Am. Indians Residing on the Maricopa Ak-Chin Reservation v. United States, 229 Ct. Cl. 167, 667 F.2d 980, 983 (1981) ("this court has no equity jurisdiction to entertain a suit for an accounting); Klamath & Modoc Tribes & Yahooskin Band of Snake Indians v. United States, 174 Ct. Cl. 483, 487 (1966) ("It is fundamental that an action for accounting is an equitable claim and that courts have equity have original jurisdiction to compel an accounting. . . . Our general jurisdiction under the Tucker Act does not include actions in equity.").

The United States ignores the scope and nature of this Court's power to order an accounting in aid of its judgment. It is true that this Court may order the United States to render a limited accounting "for the purpose of enabling the court to [calculate damages]." Klamath & Modoc Tribes, 174 Ct. Cl. at 491; see also Maricopa Ak-Chin, 667 F.2d at 983. The scope of such accounting, however, is extremely narrow. It is limited only to the calculation of money damages. The accounting is also derivative of, and inextricably tied to, a determination of liability for breach of a money-mandating duty. Therefore, it may be conducted only "after a trial on the issue of liability" and a showing that the Keetoowah Cherokees is entitled to money damages in some, as yet, unidentified amount. Klamath & Modoc Tribes, 174 Ct. Cl. at 491. In essence, such an accounting is merely a tool, like discovery, to obtain information in aid of the judgment; it is not a remedy or relief itself.

By contrast, the complete historical accounting that the Keetoowah Cherokees seeks in District Court is far more comprehensive and exists irrespective of any showing of liability or entitlement to money damages. As trustee of lands, funds, and resources that are held in trust for



3586034_1.DOC

the Keetoowah Cherokees, the United States, like any trustee, owes the Keetoowah Cherokees a fiduciary duty to account for the assets. See Corbell VI, 240 F.3d at 1102. Sitting in equity, the District Court has the power to compel the United States to comply with its trust obligations by conducting a general accounting of all of the Keetoowah Cherokees' assets. This is a broad and complete accounting that will require the United States to produce a comprehensive, transaction-by-transaction report of all the assets it holds in trust for the Keetoowah Cherokees. See id. at 1103 ("It is black-letter trust law that 'an accounting necessarily requires a full disclosure and description of each item of property constituting the corpus of the trust at its inception").

Given the nature of this accounting, the Keetoowah Cherokees' demand that the United States perform an accounting does not constitute a request for money damages, even if, as the United States here contends, the accounting could provide a basis for future legal and equitable actions. That possibility does not transform the District Court suit from one in equity to one seeking money damages:

> A plaintiff does not 'in essence' seek monetary relief . . . merely because he or she hints at some interest in a monetary reward. . . . Even when a monetary claim may be waiting on the sidelines, as long as the plaintiff's complaint only requests non-monetary relief that has 'considerable value' independent of any future potential for monetary relief . . . we respect the plaintiff's choice of remedies and treat the complaint as something more than an artfully drafted effort to circumvent the jurisdiction of the Court of Federal Claims.

Kidwell v. Dep't of the Army, 56 F.3d 279 (D.C. Cir. 1995); See also Tootle v. Sec'y of the Navy, 446 F.3d 167, 176 (D.C. Cir. 2006) (reversing district court's ruling that, like the United States' argument here, a complaint "in essence" requests monetary relief simply because the "effect of a judgment in plaintiff's favor would be a significant financial gain for plaintiff"). The principal value of the comprehensive accounting available in District Court is information, as it will provide the Keetoowah Cherokees with important information about its assets and will

enable the Tribe to make considerable decisions about those assets that it otherwise would lack information to reach.

Given the distinct relief sought by the two Complaints, application of Section 1500 to bar the Keetoowah Cherokees' present claim for money damages in this Court would effectively force the Tribe to choose between requesting an equitable accounting in the District Court and obtaining money damages here. This is foreclosed by the Loveladies narrow rule of construction. As the Federal Circuit recognized, it is neither good law nor sound policy to require plaintiffs to forgo their monetary claims in favor of other equitable remedies against the United States and, thus, "deny remedies the Constitution and statues otherwise provide." 27 F.3d at 1556.

The Keetoowah Cherokees filed the complaint in Oklahoma district court seeking an accounting that would require the United States to account for the tribal trust funds over which it has had both control and a fiduciary management responsibility. The Keetoowah Cherokees filed the complaint in this Court for money damages resulting from the United States' mismanagement of the Keetoowah Cherokees' trust funds. The complaints are not sufficiently similar to trigger the jurisdictional bar in Section 1500, and this Court should reject the United States' invitation to depart from 40 years of Federal Circuit precedent.

## IV. Conclusion

WHEREFORE, the Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss For Lack of Subject Matter Jurisdiction Under 28 U.S.C. § 1500.

Respectfully submitted this 18th day of August, 2008.

*s/James C. McMillin*
JAMES C. MCMILLIN
Michael D. McClintock
McAfee & Taft
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone: (405) 235-9621
Facsimile: (405) 235-0439

*Attorneys for United Keetoowah Band of Cherokee Indians In Oklahoma*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James M. Upton
james.upton@usdoj.gov

Anthony P. Hoang
anthony.hoang@usdoj.gov

Ronald J. Tenpas
ronald.tenpas@usdoj.gov

*/s/ James C. McMillin*