# In the United States Court of Federal Claims

No. 06-936L

(Filed: March 27, 2012)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA, | 28 U.S.C. § 1500; Effect of Supreme Court's Recent Tohono O'odham Decision; Vitality of Tecon's Sequence of Filing Rule; Requirement that Supreme Court Dicta Be "Stated Clearly" to Supersede Controlling Federal Circuit Precedent. |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*James C. McMillin*, McAffee & Taft, Oklahoma City, Oklahoma, for Plaintiff.

*Stephen Finn*, with whom was *Ignacia S. Moreno*, Assistant Attorney General, United States Department of Justice, Environment and Natural Resources Division, for Defendant.

## OPINION AND ORDER ON
### DEFENDANT'S RENEWED MOTION TO DISMISS

WHEELER, Judge.

This case again is before the Court on the Government's renewed motion to dismiss the complaint of Plaintiff, the United Keetoowah Band of Cherokee Indians in Oklahoma ("United Keetoowah" or the "Band"), pursuant to 28 U.S.C. § 1500 (2006). The Court previously denied an identical motion from the Government three years ago, on March 20, 2009. United Keetoowah Band of Cherokee Indians in Okla. v. United States, 86 Fed. Cl. 183 (2009). It is undisputed that Plaintiff filed its complaint in this Court approximately four hours before filing in federal district court. The Government, however, argues that the sequence of filing no longer is pertinent to Section 1500's applicability in light of the U.S. Supreme Court's recent ruling in United States v.

Tohono O'odham Nation, ___ U.S. ___, 131 S. Ct. 1723 (2011). For the reasons explained below, this Court rejects the Government's reading of <u>Tohono O'odham</u> and DENIES the renewed motion to dismiss.

Background[1]

The United Keetoowah initiated a breach of fiduciary duty action in this Court on December 29, 2006, at 9:01 AM (EST) ("CFC Complaint"), pertaining to the Government's alleged mismanagement of the Band's trust account. At 1:09 PM (EST) on the same day, the Band initiated a second breach of fiduciary duty action in the U.S. District Court for the Eastern District of Oklahoma ("District Court Complaint").[2] <u>See</u> No. 08-cv-01087-TFH.

Plaintiff's two actions are dependent upon the treaty rights of the historic Cherokee Tribe (the "Historic Tribe") prior to the establishment of the State of Oklahoma. Compl. (Dec. 29, 2006), at ¶¶ 6-7. Judge Firestone presently is determining whether the United Keetoowah is a proper "successor-in-interest" to the Historic Tribe. <u>United Keetoowah Band of Cherokee Indians of Okla. v. United States</u> ("<u>United Keetoowah – NBF III</u>"), 78 Fed. Cl. 303 (2007) (denying the motion to intervene of a rival successor-in-interest, "The Cherokee Nation"); <u>see also</u> No. 03-cv-01433-NBF. That matter is subject to ongoing administrative proceedings before the Interior Board of Indian Appeals ("IBIA"). <u>See</u> No. 2011-0122.

On July 18, 2008, the Government interposed 28 U.S.C. § 1500 and moved to dismiss the United Keetoowah's CFC Complaint under Rule of the Court ("RCFC") 12(b)(1).[3] At issue was the applicability of the <u>Tecon</u> sequence of filing rule to

---

[1] Plaintiff presently has two separate but related proceedings before this Court, which to date have resulted in one published opinion by the undersigned, two published opinions by Judge Nancy B. Firestone, and one published opinion by the U.S. Court of Appeals for the Federal Circuit. The Federal Circuit's opinion arose on review of a ruling by Judge Firestone. <u>See United Keetoowah Band of Cherokee Indians of Okla. v. United States</u> ("<u>United Keetoowah – NBF II</u>"), 480 F.3d 1318 (Fed. Cir. 2007). For clarity, this opinion refers to the decisions of the Federal Circuit and Judge Firestone with the suffix "<u>United Keetoowah – NBF</u>," and to the opinion of the undersigned with the suffix "<u>United Keetoowah – TCW</u>." The facts stated in this opinion do not constitute findings of fact by the Court. Rather, the facts are taken from the parties' various filings and from the Court's March 20, 2009 ruling, denying Defendant's previous motion to dismiss. <u>United Keetoowah – TCW</u>, 86 Fed. Cl. at 185-87. The Court is satisfied that the relevant facts necessary to render its decision, as set forth in this opinion, are not in dispute.

[2] Upon the United Keetoowah's motion, the U.S. District Court for the Eastern District of Oklahoma ordered the transfer of the complaint to the U.S. District Court for the District of Columbia on June 19, 2008. Def.'s Mem. (Dec. 2, 2011), at 4.

[3] Section 1500 states:

complaints filed on the same day.  See Tecon Eng'rs, Inc. v. United States, 343 F.2d 943 (Ct. Cl. 1965).   A split of opinion exists among the judges of this Court on the applicability of Tecon when complaints are filed in two different courts on the same day. Compare Breneman v. United States, 57 Fed. Cl. 571 (2003) (Tecon applies), with Passamaquoddy Tribe v. United States, 82 Fed. Cl. 256 (2008), aff'd, 426 F. App'x 916 (2011) (non-precedential) (Tecon does not apply).

In the March 20, 2009 ruling in this case, this Court adopted the view that Tecon applies and, therefore, treated the sequence of filing as an evidentiary matter for the Court to assess.  See United Keetoowah – TCW I, 86 Fed. Cl. at 190-91.  By doing so, the Court rejected an alternative per se approach, which treats claims filed on the same day as "simultaneous" and, therefore, equivalent to claims transferred from district court by operation of 28 U.S.C. § 1631.  See id.  Under United States v. County of Cook and its progeny, 170 F.3d 1084 (Fed. Cir. 1999), claims transferred from district court by operation of Section 1631 fall outside of Tecon's sequence of filing safe harbor.[4]  170 F.3d at 1091; see also Harbuck v. United States, 378 F.3d 1324, 1328 (Fed. Cir. 2004).

After denying the Government's 2008 motion to dismiss, the undersigned stayed the instant proceedings at the parties' request, pending Judge Firestone's ruling on the successor-in-interest issue.  See Order (Apr. 20, 2009).  In the interim, on April 26, 2011, the U.S. Supreme Court issued its opinion in Tohono O'odham, directly addressing Section 1500's "claim prong."  In a Joint Status Report ("JSR") filed on October 31, 2011, the parties notified the Court that the Government intended to file a renewed motion to dismiss pursuant to its post-Tohono O'odham reading of Section 1500's

---

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (2006).  In other words, the "CFC has no jurisdiction over a claim if the plaintiff has another suit [1] for or in respect to that claim [2] pending against the United States or its agents."  Tohono O'odham, 131 S. Ct. at 1727.  Thus, Section 1500 can be broken into a "claim prong" and a "pending prong."  Craig A. Schwartz, Footloose: How to Tame the Tucker Act Shuffle After United States v. Tohono O'odham Nation, 59 UCLA L. REV. DISC. 2, 10 (2011).  Tohono O'odham directly addressed the statute's claim prong, explaining that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit."  131 S. Ct. at 1731.  Under longstanding Federal Circuit precedent, hereinafter referred to as the "Tecon sequence of filing" rule, Section 1500's pending prong "serves to deprive this [C]ourt of jurisdiction . . . only when the suit shall have been commenced in the other court before the claim was filed in this [C]ourt."  Tecon Eng'rs, 343 F.2d at 949 (emphasis added).

[4]  In Part E of this opinion, infra, the Court will address Passamaquoddy Tribe's per se rule, and why it does not apply here.

"pending prong."  JSR at ¶ 7.  On November 1, 2011, the Court instructed Defendant to file its renewed motion by December 2, 2011 and granted the parties a final extension of the stay through March 30, 2012.  Order at ¶¶ 2, 5.  In the interim, the Court allowed the parties to conduct discovery on issues other than the successor-in-interest issue before Judge Firestone.  Id. at ¶ 1.

On December 2, 2011, the Government filed a motion under RCFC 12(c) and 12(h)(3) to renew its July 18, 2008 motion to dismiss for lack of subject matter jurisdiction or, in the alternative, under RCFC 59(a) for reconsideration of the Court's March 20, 2009 ruling denying that motion.  See Def.'s Mem. (Dec. 2, 2011), at 6, 6 n.1.  Plaintiff responded on January 3, 2012, and the Government replied on January 20, 2012.  The Court heard oral argument on February 22, 2012.  The matter is fully briefed and ready for decision.

Standards of Review

In reviewing a motion to dismiss, the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Boyle v. United States, 200 F.3d 1369, 1372 (2000).  Nevertheless, subject matter jurisdiction is a threshold issue to be considered before proceeding to the merits of a case.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  Where subject matter jurisdiction over a claim is at issue, the plaintiff must establish the Court's jurisdiction by a preponderance of the evidence.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (internal citations omitted).  However, "in determining whether a motion to dismiss should be granted, the [] Court may find it necessary to inquire into jurisdictional facts that are disputed."  Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).  If subject matter jurisdiction is lacking, the Court must dismiss the claim.  RCFC 12(h)(3).  Given that RCFC 12(c) merely is a supplemental "procedural device to determine the sufficiency of the case before proceeding any further," a party may raise an RCFC 12(h)(3) defense on an RCFC 12(c) motion.  5C Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 1367 (3d ed. 2011) (internal footnote omitted).

A motion for reconsideration under RCFC 59(a) "is addressed to the court's discretion."  Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999).  It "must be supported 'by a showing of extraordinary circumstances which justify relief.'"  Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr., 44 Fed. Cl. at 300).  "[T]he movant must show: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice."  Fru-Con Constr., 44 Fed. Cl. at 301.  "Manifest injustice" must be "clearly apparent or obvious."  Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002) (internal citation omitted).  "Because the litigation process rests on the assumption that both parties present their case

4

once, to their best advantage, a strong public policy precludes a reconsideration motion based on evidence that was readily available at the time the original motion was heard." Fru-Con Constr., 44 Fed. Cl. at 301 (internal citation and quotation omitted).

Here, the Government argues that the broad language used in Tohono O'odham to interpret Section 1500's "claim prong" applies with equal force to the statute's "pending prong." Whether characterized as a renewed motion to dismiss or as a motion for reconsideration, the Government's December 2, 2011 motion requests the Court to disregard the Tecon sequence of filing rule.[5] For a variety of reasons, Tohono O'odham does not constitute an intervening change in controlling law, and does not alter the Tecon sequence of filing rule. The Government has not advanced any valid basis to destroy subject matter jurisdiction. Therefore, the Court will apply the controlling Tecon precedent and deny the Government's motion.

## Discussion

The Government proffers the following arguments in support of its December 2, 2011 motion to dismiss: (i) Tohono O'odham overruled Tecon; (ii) Tecon was invalid *ab initio* in light of Supreme Court precedent from the 1920s; (iii) Tecon is limited to its facts, while prior Federal Circuit precedent controls; (iv) Tecon is inconsistent with the policies underlying Section 1500; and (v) Tecon does not apply in light of Passamaquoddy Tribe's *per se* approach. As shown below, none of these arguments has any merit.

A. Ambiguous Supreme Court Dicta from *Tohono O'odham* Does Not Override Longstanding Federal Circuit Precedent from *Tecon.*

1. *Tohono O'odham* Expressly Reserved Judgment As to Section 1500's Pending Prong, Thereby Rendering Any Discussion of It Dicta.

At its core, the Government's December 2, 2011 motion to dismiss hinges on the following language from the Supreme Court's opinion in Tohono O'odham, discussing the Federal Circuit opinion that the Supreme Court was reviewing:

> The [Federal Circuit panel] could not identify any purpose that § 1500 serves today, in large part because it was bound by Circuit precedent that left the statute without meaningful force. For example, the panel cited Tecon, . . . which held that § 1500 does not prohibit two identical suits from proceeding so long as the action in the CFC . . . is filed first.

---

[5] In the interest of simplicity, the Court hereinafter will refer to the Government's December 2, 2011 motion as a renewed "motion to dismiss."

131 S. Ct. at 1729 (internal quotation omitted), rev'g Tohono O'odham Nation v. United States, 559 F.3d 1284 (Fed. Cir. 2009). Perhaps this language standing alone could be interpreted as a disapproval of Tecon, as the Government argues. See, e.g., Def.'s Mem. (Jan. 20, 2012), at 4-5. However, even if so, that disapproval would be dicta unnecessary to Tohono O'odham's outcome. After all, the Supreme Court immediately followed the above-quoted language with the disclaimer that "[t]he Tecon holding is not presented in this case because the CFC action here was filed after the District Court suit." Tohono O'odham, 131 S. Ct. at 1729-30. Indeed, in her concurring opinion, Justice Sotomayor added that "the validity of the Court of Claims' holding in Tecon . . . is not presented in this case. This Court has never considered that holding." Id. at 1735 n.5 (Sotomayor, J., concurring). The above dicta from Tohono O'odham concerning Tecon is not binding on this Court.

### 2. To Supersede Otherwise Controlling Federal Circuit Precedent, Supreme Court Dicta Must State Clearly That It Is Doing So.

When Supreme Court dicta is "explicit and carefully considered" or, in other words, "stated clearly," this Court must follow it. Ins. Co. of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir. 2001); Stone Container Corp. v. United States, 229 F.3d 1345, 1349-50 (Fed. Cir. 2000); see also Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1347 (Fed. Cir. 2010) (en banc) (applying Stone Container). Here, however, the Tohono O'odham majority "stated clearly" that Tecon is *not* disturbed. Writing for herself and Justice Breyer in concurrence, Justice Sotomayor added that the Supreme Court *has never even considered* the holding in Tecon. Stone Container and its progeny simply do not compel this Court to disregard almost 50 years of Federal Circuit precedent in favor of veiled authority, which the Supreme Court purportedly issued *sub silentio*.

### 3. Only the En Banc Federal Circuit Can Overrule the Circuit's Prior Precedent, Even When Conflicting Supreme Court Dicta Is Stated Clearly.

Even when it is clearly appropriate to overrule prior Circuit precedent, the Federal Circuit must do so en banc. El-Shifa Pharma. Indus. Co. v. United States, 378 F.3d 1346, 1352 (Fed. Cir. 2004) (citing George E. Warren Corp. v. United States, 341 F.3d 1348, 1351 (Fed. Cir. 2003)). "Logic and common sense suggest that if a panel of [the Federal Circuit] lacks the authority to overrule a prior [C]ircuit decision, then this [C]ourt also must lack that authority. To conclude otherwise would be folly." Jicarilla Apache Nation v. United States, 100 Fed. Cl. 726, 734 (2011) (Allegra, J.).

Here, seemingly oblivious to blinding irony, the Government submits that "the statements in El-Shifa do not bind this Court *because they are dicta*." Def.'s Mem. (Jan. 20, 2010) at 8 (emphasis added); see also El-Shifa, 378 F.3d at 1352. The Government is

correct that El-Shifa is not binding.  However, El-Shifa remains highly persuasive in light of Federal Rule of Appellate Procedure 35, which states that en banc review "is not favored and ordinarily will not be ordered," Fed. R. App. P. 35(a), but is available "to secure or maintain uniformity of the court's decisions," id. 35(a)(1).  If various Federal Circuit panels could issue conflicting decisions without en banc review, Rule 35 would be internally unworkable, with en banc review "ordinarily" unavailable despite disunity in the court's decisions.  This Court adopts the reasoning from El-Shifa and its corollary from Jicarilla Apache.  Accordingly, the Court could not reject Tecon's sequence of filing rule even if the dicta from Tohono O'odham were stated clearly, which it is not.

           4.  <u>General   Ruminations   on   Statutory   Interpretation   Lack   Legal Significance.</u>

In Tohono O'odham, the Supreme Court also observed that "[c]ourts should not render statutes nugatory through construction."  131 S. Ct. at 1730.  The Government points to this language in its briefs with much fanfare.  See Def.'s Mem. (Jan. 20, 2012), at 4-5; Def.'s Mem. (Dec. 2, 2011), at 3-4, 8-9.  This Court agrees wholeheartedly with the aforementioned sentiment from Tohono O'odham.  However, the Supreme Court's recitation of a shibboleth for the obvious purpose of emphasis has no meaningful legal significance in the face of controlling Federal Circuit precedent.

    B.  Pre-*Tohono O'odham* Supreme Court Precedent Does Not Conflict with *Tecon*.

The Government points to two Supreme Court opinions from the 1920s, which it argues foreclose Tecon's sequence of filing rule.  See Def.'s Mem. (Dec. 2, 2011), at 9-10:

(1) In re Skinner & Eddy Corp., 265 U.S. 86 (1924), involved a contractor that filed suit in the Court of Claims but then voluntarily dismissed.  The contractor subsequently brought the same suit in state court.  Thereafter, the Government determined that it could have brought a counterclaim in the initial Court of Claims action and attempted to vacate the contractor's voluntary dismissal.  By operation of Section 154 of the Judicial Code, a predecessor to Section 1500,[6] the Supreme Court granted a writ of mandamus to prevent the Court of Claims from vacating on account of the pending state court proceedings.

(2) In Corona Coal Co. v. United States, 263 U.S. 537 (1924), a contractor lost on the pleadings in the Court of Claims.  Before pursuing an appeal to the Supreme Court, the contractor first re-filed its initial action in federal district court because the district court's limitations period was about to expire.  When the contractor proceeded with its

---

[6] For thoughtful summaries of Section 1500's Civil War-era origins and various statutory iterations, refer to Kaw Nation of Oklahoma v. United States, ___ Fed. Cl. ___, 2012 WL 639928, at *8-13 (Feb. 29, 2012) (Allegra, J.); and Schwartz, *supra* note 3, at 4, 7-9.

appeal to the Supreme Court, the Court granted the Government's motion to dismiss the appeal pursuant to Section 154.  The Court remarked, "we are not at liberty to add an exception in order to remove apparent hardship in particular cases."  Id. at 540.

The Court of Claims distinguished Skinner & Eddy and Corona Coal in its Tecon opinion:

> The cases cited by plaintiffs (and the other relevant cases) are not particularly germane to our resolution of the correct interpretation of Section 1500, with respect to the facts of this case. . . .  [Corona Coal, for example,] involved the appellate jurisdiction of the Supreme Court.  To the extent any of the cases lend themselves as support for plaintiffs' contention that subsequent filing of a similar action in another court ousts this court of jurisdiction, *there is no indication that the issue of priority was ever fully briefed, considered or decided*.  With this background, we cannot draw upon the prior caselaw for direction in this decision.

343 F.2d at 950, 950 nn. 5-7 (internal footnotes omitted) (emphasis added).  This reasoning is sensible, particularly in light of the fact that Corona Coal is only one-page long and almost 90-years old.  Moreover, Skinner & Eddy is entirely consistent with the sequence of filing rule, allowing the later-filed state court claim but not the later-initiated Court of Claims counterclaim.  Accord Nez Perce Tribe v. United States, 101 Fed. Cl. 139, 144-45 (2011) (Lettow, J.).

Additionally, it bears noting that in Keene Corp. v. United States, 508 U.S. 200 (1993),[7] the Supreme Court expressly revived Tecon and, as in Tohono O'odham, left the sequence of filing rule undisturbed.  See Keene, 508 U.S. at 209 n.4, 215-16.  In Keene, the Court also cited liberally to Corona Coal, strongly suggesting that the Court saw no inconsistency between it and Tecon.  See Keene, 508 U.S. at 210-12, 217-18.

## C. *Tecon* Is the Federal Circuit Precedent Controlling in This Case.

The Government also challenges whether Tecon even is the Federal Circuit precedent controlling in *this* case.  In its place, the Government encourages the Court to apply other legacy precedents from the Court of Claims.  See Def.'s Mem. (Dec. 2, 2011), at 12-14.  A survey of four such precedents follows:

---

[7] There are only five Supreme Court opinions involving Section 1500 or one of its predecessors:  (i) Corona Coal; (ii) Skinner & Eddy; (iii) Matson Navigation Co. v. United States, 284 U.S. 352 (1932), superseded by statute, Act of Jun. 25, 1948, ch. 646, § 1500, 62 Stat. 942; (iv) Keene; and (v) Tohono O'odham.  See Keene, 508 U.S. at 210-11, 211 n.5.

### 1. *Maguire Industries* and *Hobbs* Are Distinguishable.

(1) In Maguire Industries, Inc. v. United States, 86 F. Supp. 905 (Ct. Cl. 1949), the Government withheld disputed "excess profits" from a contractor's payments under a contract, and from a tax credit to which the contractor was entitled. First, the contractor sought a refund in the Tax Court, which dismissed the contractor's suit for lack of jurisdiction. Thereafter, the contractor filed in the Court of Claims. However, while suit in the Court of Claims was pending, the contractor appealed the Tax Court's dismissal to the D.C. Circuit. Upon the Government's motion, the Court of Claims then dismissed pursuant to Section 1500.

(2) Hobbs v. United States, 168 Ct. Cl. 646 (1964) (per curiam), involved an inventor who filed an administrative "taking and use" claim for just compensation, concerning the Government's alleged infringement upon his patent rights. The inventor subsequently filed in the Court of Claims after the agency denied his claim. While suit in the Court of Claims was pending, the inventor also appealed the administrative denial to the Fifth Circuit. The Court of Claims then dismissed pursuant to Section 1500 upon the Government's motion.

Here, Maguire Industries and Hobbs are readily distinguishable. As Judge Damich explained in Coeur d'Alene Tribe v. United States, ___ Fed. Cl. ___, 2011 WL 5822177 (Nov. 18, 2011), "it was not the subsequent filing of suit in another court that divested the Court of Claims of jurisdiction" in those cases. Id. at *7. Rather, "it was the filing of an appeal of an action that was filed and dismissed prior to the Court of Claims suit." Id. The Court adopts Judge Damich's reasoning, as Plaintiff is not appealing an administrative denial based on the same operative facts in any of the regional circuits.

### 2. *Tecon Engineers* and *Hardwick Bros. II* Are On-Point.

(3) In Tecon, 343 F.2d 943, taxpayer-plaintiffs initiated refund actions against the Government in the Court of Claims. During more than two years of litigation and approximately a year and a half of discovery, the Trial Commissioner postponed trial multiple times. Approximately two weeks before the latest date for the commencement of trial, the Trial Commissioner denied the taxpayers' request for yet another postponement. On the date that the Court of Claims affirmed the Trial Commissioner's denial, which was less than a week before the commencement of trial, the taxpayers filed in the Eastern District of Kentucky and moved to dismiss their Court of Claims actions. At oral argument on their motions to dismiss, the taxpayers contended that they would not prosecute their Court of Claims actions any further even were the Court to deny their motions. It was undisputed that either court could have exercised initial jurisdiction over the refund actions at the plaintiffs' elections. The plaintiffs readily conceded that, by filing in the Eastern District of Kentucky, and moving to dismiss in the Court of Claims, they were changing their elections mid-course. Citing to the "rule of comity," id. at 946,

the legislative history of Section 1500, id. at 946-49, and the perils of abuse were the Court to accept the plaintiffs' arguments "*reductio ad absurdum*," id. at 949, the Court of Claims ruled that "the only reasonable interpretation of the statute is that it serves to deprive this court of jurisdiction . . . only when the suit shall have been commenced in the other court before the claim was filed in this court."   Id.   The Court of Claims thus denied the taxpayers' motions and proceeded to dismiss their actions with prejudice for failure to prosecute.

(4) Hardwick Bros. Co. II v. United States, 72 F.3d 883 (Fed. Cir. 1995), involved a contractor that filed a claim in the Claims Court under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-613 (2006) (current version at 41 U.S.C. §§ 7101-7109), to recover equitable adjustments the Government had denied.   Approximately one and one-half years later, the Claims Court conducted an eight-week trial.   The trial judge thereafter fell ill and, as a result, did not issue an opinion for over eighteen months.   With the expiration of limitations looming, the contractor filed suit in the Western District of Missouri under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (2006), alleging the Government's spoliation of evidence pertaining to the Claims Court action. Less than six weeks later, before the Government had filed an answer, the contractor voluntarily dismissed its FTCA suit.   The contractor did so in light of the Federal Circuit's ruling in UNR Industries, Inc. v. United States, 962 F.2d 1013, 1023 (Fed. Cir. 1992) (en banc), aff'd in part sub nom. Keene, 508 U.S. 200, which *temporarily* overruled Tecon.   Nonetheless, the Government successfully moved to dismiss the contractor's CDA claim, arguing that the contractor's initiation of the FTCA suit divested the Claims Court of jurisdiction, which the mere dismissal of the FTCA suit could not restore.   Upon dismissal by the Claims Court, the contractor appealed to the Federal Circuit.   While that appeal was pending, the Supreme Court in Keene affirmed UNR Industries *sub nom.* but *not* the Federal Circuit's overruling of Tecon, which the Supreme Court found to be unnecessary.   See 508 U.S. at 209 n.4, 215-16.   In Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1549, 1549 n.10 (1994) (en banc), the Federal Circuit subsequently recognized the Supreme Court's revival of Tecon.[8]   Finally, faced squarely with the Tecon question anew in Hardwick Bros. II, the Federal Circuit expressly declined to limit Tecon to its facts and proceeded to reverse the Claims Court's dismissal, citing both to "judicial economy" and the Tecon precedent.   Hardwick Bros. II, 72 F.3d at 886.

---

[8]   Loveladies Harbor most prominently stood for the proposition that Section 1500 does not bar claims based on the same operative facts but seeking "distinctly different" relief.   27 F.3d at 1549, 1551-54. That ruling did not survive Tohono O'odham.   See 131 S. Ct. at 1731.   However, Tohono O'odham did *not* overrule Loveladies Harbor.   See Schwartz, *supra* note 3, at 15 n.86, 19-20 n.116.   Accordingly, the en banc recognition in Loveladies Harbor of Tecon's continued vitality remains in effect.   Furthermore, Section 1500 remains inapplicable to dual claims filed to preserve "a substantial legal right."   Loveladies Harbor, 27 F.3d at 1554-55.   One commentator has proposed a "necessarily sequential" test to identify those claims.   Schwartz, *supra* note 3, at 5 nn. 14-15, 14 n.76, 15 nn. 84-86, 19-20; see also Kaw Nation, 2012 WL 639928, at *15, 15 nn. 31-32 (discussing the same issue).

Here, the facts are most comparable to those in <u>Tecon</u>, as affirmed in <u>Hardwick Bros. II</u>. As discussed above, Plaintiff does not have a pending appeal in any of the regional circuits based on the same operative facts. <u>Tecon</u> and <u>Hardwick Bros. II</u> are more on-point and, accordingly, must control.

Having established that (i) dicta from <u>Tohono O'odham</u> does not overrule longstanding precedent from <u>Tecon</u>; (ii) pre-<u>Tohono O'odham</u> Supreme Court precedent also is consistent with <u>Tecon</u>; and (iii) <u>Tecon</u> is controlling Federal Circuit precedent in this case, the Court must deny the Government's December 2, 2011 motion to dismiss. The Court rejects the Government's facial challenge to <u>Tecon</u>, finding that the sequence of filing rule best reflects the policies underlying Section 1500. Furthermore, the Court rejects the Government's attempt to avoid <u>Tecon</u> outright, finding that <u>Passamaquoddy Tribe</u>'s *per se* approach applies only when the sequence of filing is not otherwise discernible.

D. *Tecon* Best Reflects the Policies Underlying Section 1500.

1. *Mollan v. Torrance* Compels a Sequence of Filing Rule.

The jurisdiction of a federal court "depends upon the state of things at the time of the action brought, and [] *after vesting, it cannot be ousted by subsequent events*." <u>Mollan v. Torrance</u>, 22 U.S. (9 Wheat.) 537, 539 (1824) (Marshall, C.J.) (emphasis added). Here, the Government argues that <u>Mollan</u> is limited to the context of determining federal diversity jurisdiction. <u>See</u> Def.'s Mem. (Dec. 2, 2011), at 14-17. However, the Supreme Court *already* has linked <u>Mollan</u> directly to the sequence of filing rule.

In <u>Keene</u>, the Supreme Court applied Section 1500 "by looking to the facts existing when [the petitioner] filed each of its complaints." 508 U.S. at 207 (citing <u>Mollan</u>, 22 U.S. (9 Wheat.) at 539). The Federal Circuit recently followed suit. <u>See Trusted Integration, Inc. v. United States</u>, 659 F.3d 1159, 1166 n.2 (Fed. Cir. 2011). Other judges on this Court have followed as well. <u>See, e.g.</u>, <u>Yakama Nation Hous. Auth. v. United States</u>, ___ Fed. Cl. ___, 2011 WL 6062362, at *4 (Dec. 5, 2011) (Smith, J.); <u>Coeur d'Alene</u>, 2011 WL 5822177, at *6; <u>Nez Perce II</u>, 101 Fed. Cl. at 145.

The Government *again* invites this Court to ignore the above authority *because it is mere dicta*, even citing to the language from Justice Sotomayor's <u>Tohono O'odham</u> concurrence that the Supreme Court "has never considered [the <u>Tecon</u>] holding." <u>See</u> 131 S. Ct. at 1735 n.5 (Sotomayor, J., concurring); Def.'s Mem. (Dec. 2, 2011), at 17. Of course, the Government thereafter proceeds to minimize that very language from Justice Sotomayor. <u>See</u> Def.'s Mem. (Jan. 20, 2012), at 1, 6. To summarize the Government's position, this Court should disregard clearly stated <u>Keene</u> dicta, which is copasetic with almost fifty years of Federal Circuit precedent. In its place, the Court would embrace

ambiguous Tohono O'odham dicta, which is at most inferential, sandwiched between express disavowals of the Government's position, and conflicting with longstanding Federal Circuit practice.  The Court declines this invitation.

### 2.  *Tecon* Is Consistent with the Plain Meaning of Section 1500's Text.

When the clarity of a statute is at issue, the Court must look to the plain meaning of the statutory text and avoid an interpretation that "would be grammatically indefensible."  Bush v. United States, 655 F.3d 1323, 1330 (Fed. Cir. 2011) (en banc); see also Yakama Nation, 2011 WL 6062362, at *4; Nez Perce II, 101 Fed. Cl. at 141-45. Here, the Court already adopted Judge Lettow's interpretation of Section 1500's "has pending" language, which concluded that the Tecon sequence of filing rule is wholly consistent with the grammatical structure of the statute.  United Keetoowah – TCW I, 86 Fed. Cl. at 188-89 (discussing Nez Perce Tribe v. United States I, 83 Fed. Cl. 186, 189 (2008)).  Presently, the Government urges the Court to endorse an alternative interpretation of "has pending," grounded in a competing grammatical treatise.  See Def.'s Mem. (Dec. 2, 2011), at 15 n.7.  The Court, however, will not engage in this exercise, as it already ruled on the "has pending" language.  See United Keetoowah – TCW I, 86 Fed. Cl. 183.

### 3.  The Sequence of Filing Rule Discourages Duplicative Discovery, Thereby Promoting a Policy Goal that the Supreme Court Specifically Identified in *Tohono O'odham.*

In Tohono O'odham, the Supreme Court explained that Section 1500's "purpose is clear . . . the need to save the Government from [the] burdens of redundant litigation. . . . Developing a factual record is responsible for much of the cost of litigation.  Discovery is a conspicuous example, and the preparation and examination of witnesses at trial is another."  131 S. Ct. at 1730.  Put simply, a principal purpose of Section 1500 is to protect the Government from redundant yet avoidable discovery.

Here, the Government characterizes its arguments to jettison Tecon as necessary to implement this policy goal.  See Def.'s Mem. (Jan. 20, 2012), at 4-5; Def.'s Mem. (Dec. 2, 2011), at 3-4.  Tecon, however, arose for just this reason, to spare the government from a second round of discovery in the Eastern District of Kentucky.  Indeed, the Government in Tecon argued *for* the sequence of filing rule, to protect itself from the dual-filing taxpayers.  Accord Kaw Nation, 2012 WL 639928, at *14-16; Yakama Nation, 2011 WL 6062362, at *4.  The Government's arguments to abandon Tecon for policy reasons are unconvincing.

4.   *Tecon* Is Settled Policy Best Left for Congress to Review.

Conceding the above point about its past support for <u>Tecon</u>, <u>see</u> Def.'s Mem. (Dec. 2, 2011), at 13 n.7, the Government today favors sanctions under 28 U.S.C. § 1927 and RCFC 11, instead, as mechanisms to curtail duplicative discovery resulting from "vexatious litigation tactic[s]," Def.'s Mem. (Dec. 2, 2011), at 14.   Notwithstanding the Government's change of heart, the Court would reject this solicitation to move away from <u>Tecon</u>, even if it were at liberty to do so.   Judge Allegra aptly addressed the dangers of overly dynamic Section 1500 jurisprudence in his <u>Kaw Nation</u> opinion:

> The foregoing discussion . . . illustrate[s] the considerable hazards of construing section 1500 through the policy prism of an individual case with its own idiosyncratic facts—to show that a distended interpretation that seemingly produces a sensible result in one case may yield a highly undesirable denouement in the next.   That unpredictability stems from the fact that section 1500 is part of a complex jurisdictional mosaic, making any debate over attaining a policy goal, even one so lofty as avoiding duplicative litigation, irresolvable solely by reference to a single decisional tile.

2012 WL 639928, at *16 (internal footnote omitted); <u>see also</u> Schwartz, *supra* note 3, at 6 nn. 18-19, 25 nn. 154, 156 (referring to Section 1500's "jurisdictional dance" as the "Tucker Act Shuffle").   In other words, a "reset" in Section 1500 policy may be desirable, but it is best left for Congress, not the courts, to implement this reset because Section 1500 is just one part of a broader statutory scheme that Congress designed.   <u>See also</u> Schwartz, *supra* note 3, at 15-18 (documenting recent attempts to amend or repeal Section 1500).

E.   *Passamaquoddy Tribe* Does Not Apply Where the Sequence of Filing Is Undisputed or Readily Provable.

Finally, the Government argues that this case does not implicate <u>Tecon</u>'s sequence of filing rule at all.   In support of this proposition, the Government cites to <u>Passamaquoddy Tribe</u>, 82 Fed. Cl. 256, which treated dual claims filed on the same day as *per se* "simultaneous," and thereby within the automatic ambit of Section 1500 under the doctrine from <u>County of Cook</u>, 170 F.3d 1084.   <u>See</u> Def.'s Mem. (Dec. 2, 2011), at 3, 10-11.

The Court takes this opportunity to endorse Judge Allegra's framework from <u>Kaw Nation</u>, conceptualizing <u>Passamaquoddy Tribe</u> only as "a rule of necessity, triggered when evidence is lacking as to which of the two complaints was filed first."   <u>Kaw Nation</u>, 2012 WL 639928, at *17; <u>see also</u> <u>Lan-Dale Co. v. United States</u>, 85 Fed. Cl. 431, 434

(2009) ("[Plaintiff] has at least twice declined an invitation to show that the Court of Federal Claims suit was filed before the [district court] suit, leaving the Court with no alternative but to find that the suits were filed simultaneously."). Here, it is undisputed that Plaintiff filed in the CFC first. Thus, Passamaquoddy Tribe is distinguishable.

Conclusion

When it comes to Section 1500 jurisprudence, there is dicta all the way down, from the Supreme Court, to the Federal Circuit, to this trial Court. As this opinion illustrates, Tecon's sequence of filing rule is a sensible policy wholly faithful to the statute's plain meaning. Tecon is controlling Federal Circuit precedent, which does not conflict with either Tohono O'odham or any other Supreme Court decision. Moreover, adjudicating this issue simply is not appropriate at the trial court level, and on a motion to dismiss posture, jurisprudential ambiguity must run in favor of the non-movant.

This opinion cites to similar decisions by Judges Allegra, Damich, Lettow, and Smith, who all reached the same outcome denying post-Tohono O'odham motions to dismiss by the Government. Thus far, despite the Government's regular reports of Tecon's death, the judges of this Court have responded unanimously that such reports are an exaggeration.[9] The undersigned responds no differently and, therefore, DENIES the Government's December 2, 2011 renewed motion to dismiss.

By order dated November 1, 2011, the Court extended the temporary stay of formal litigation in this case to Friday, March 30, 2012 and instructed the parties to file a JSR on or before that date. On account of this opinion, the Court extends both the temporary stay and the filing date to Monday, April 16, 2012. The parties are requested to inform the Court on that date how they wish to proceed.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

---

[9] See Bartlett's Familiar Quotations 562 (Mark Twain) (17th ed. 2002) ("The report of my death was an exaggeration.").